FILED

NOV 2 8 2011

RICHARD W. WIEKING
CLERK U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

1  BINGHAM McCUTCHEN LLP
   David M. Balabanian (SBN 37368)
2  Frank Busch (SBN 258288)
   david.balabanian@bingham.com
3  Three Embarcadero Center
   San Francisco, California  94111-4067
4  Telephone: 415.393.2000
   Facsimile: 415.393.2286
5
   Attorneys for Defendant
6  THE BANK OF NEW YORK MELLON          E-filing
   CORPORATION
7
8              UNITED STATES DISTRICT COURT
9            NORTHERN DISTRICT OF CALIFORNIA

CV 11                                     JCS
                                          5683
10
11  *In re* BANK OF NEW YORK MELLON
    CORPORATION FALSE CLAIMS ACT
12  FOREIGN EXCHANGE LITIGATION, *Ex rel.*      NOTICE OF REMOVAL OF CIVIL
    FX ANALYTICS,                               ACTION
13
                Plaintiff/Relator,
14
         v.
15
    THE BANK OF NEW YORK MELLON
16  CORPORATION, and DOES 1 through 100,
    inclusive,
17
                Defendants.
18
19
20
21
22
23
24
25
26
27
28

A/74596360.2

1    Defendant The Bank of New York Mellon Corporation ("Defendant" or "BNY

2    Mellon"), the sole named defendant in *In re Bank of New York Mellon Corporation False Claims*

3    *Act Foreign Exchange Litigation, Ex rel. FX Analytics v. The Bank of New York Mellon*

4    *Corporation, and Does 1 through 100, inclusive*, filed as Case No. RG09480749 in the Superior

5    Court of the State of California for the County of Alameda, gives notice that this case is removed

6    to the United States District Court for the Northern District of California pursuant to 28 U.S.C.

7    §§ 1332, 1441, and 1446.

8    **I.    JURISDICTION**

9    1.    For reasons set forth in greater detail below, this Court has jurisdiction

10    over this action under 28 U.S.C. §§ 1332 and 1441. Jurisdiction exists pursuant to 28 U.S.C. §§

11    1332 and 1441 because there is complete diversity between the parties and the amount in

12    controversy exceeds $75,000.

13    2.    Furthermore, BNY Mellon is a holding company that did not provide any

14    of the custodial or foreign exchange services challenged in the Second Amended Complaint

15    ("SAC"). The Bank of New York Mellon and The Bank of New York Mellon Trust Company,

16    N.A. (collectively, the "Proper Defendants") are the entities (or the successors to the entities)

17    that provided those services. The Proper Defendants would be entitled to remove this case under

18    the Edge Act, 12 U.S.C. § 632.

19    **II.    INTRADISTRICT ASSIGNMENT**

20    3.    Relator FX Analytics filed this case in the Superior Court of California,

21    County of Alameda. Therefore, either the San Francisco or the Oakland Division of the

22    Northern District of California is the proper location to which this case should be assigned. Civil

23    L.R. 3-2(c),(d); Civil L.R. 3-5(b). A case making allegations similar to those in the SAC, filed

24    by some of the same counsel who represent Relator in this proceeding, is currently pending in

25    the Northern District where it bears case number 3:11-cv-03620-WHA.

26    **III.    COMPLIANCE WITH STATUTORY REQUIREMENTS**

27    4.    In accordance with 28 U.S.C. § 1446(a), attached as Exhibit A are true and

28    correct copies of all process, pleadings and orders served upon BNY Mellon in the state court in

---

NOTICE OF REMOVAL OF CIVIL ACTION

**1**  this action.[1]

**2**  5.  Defendant BNY Mellon, the sole named defendant, was served by mail
**3**  with the SAC on October 31, 2011. Accordingly, this Notice of Removal is timely under 28
**4**  U.S.C. § 1446(b).

**5**  6.  The state court action was originally filed under seal on October 22, 2009,
**6**  but was not unsealed until October 20, 2011, when it was unsealed in part. The prohibition on
**7**  removal of diversity cases more than one year after they are originally filed does not apply here
**8**  because the case was removable when initially filed. *Ritchey v. Upjohn Drug Co.*, 139 F.3d
**9**  1313, 1316 (9th Cir. 1998).

**10**  7.  Pursuant to 28 U.S.C. § 1446(d), BNY Mellon will promptly provide
**11**  written notice of removal of this action to Plaintiff and will promptly file a copy of this Notice of
**12**  Removal with the Clerk of the Superior Court of the State of California for the County of
**13**  Alameda.

**14**  IV.  **STATEMENT OF THE GROUNDS FOR REMOVAL**

**15**  8.  BNY Mellon removes this case pursuant to 28 U.S.C. §§ 1332 and 1441
**16**  because there is complete diversity between the parties and the amount in controversy exceeds
**17**  $75,000.

**18**  9.  Relator FX Analytics is a Delaware general partnership  SAC ¶ 11. The
**19**  citizenship of a partnership is determined by looking to the citizenship of each member of the
**20**  partnership. *Carden v. Arkoma Associates*, 494 U.S. 185, 195-96 (1990). The SAC alleges a
**21**  single "owner of the partnership (the 'Partner')" who is "not distinct from" FX Analytics. SAC
**22**  ¶¶ 11-12. The Partner has been identified in media coverage as a specifically named former
**23**  employee of BNY Mellon who resided in Pennsylvania at the time the Complaint was originally
**24**  filed, and the SAC makes allegations reflecting detailed personal knowledge of the personnel and
**25**  activities of the Pennsylvania office. SAC ¶¶ 11 and 49-63. In addition, a complaint filed by

**26**  _____

**27**  [1] Some portions of the Superior Court file were not served on Defendant because they were
under seal; these portions are not included in Exhibit A.

**28**

2

A/74596360.2

1    Relator in another proceeding identifies the Partner as a former employee of the Pennsylvania
2    office. Media coverage and investigation indicate that the Partner has recently moved from
3    Pennsylvania to New Hampshire. Based on the foregoing, the Partner was a citizen of State of
4    Pennsylvania when the original Complaint was filed and is now a citizen of the State of New
5    Hampshire. The case is brought on behalf of Relator and Political Subdivisions of the State of
6    California. SAC ¶ 1; Cal. Gov. Code § 12652(c). These Political Subdivisions are: the Oakland
7    Police and Fire Retirement System Fund; the City of Los Angeles and the Los Angeles Water
8    and Power Employees' Retirement Plan; Los Angeles County and the Los Angeles County
9    Employees Retirement Association Fund; San Diego County and the San Diego County
10   Employees Retirement Association Fund; Stanislaus County and the Stanislaus County
11   Employees' Retirement Association Fund; Santa Barbara County and the Santa Barbara County
12   Employees Retirement Association Fund; Merced County and the Merced County Employees'
13   Retirement System Fund; San Luis Obispo County and the San Luis Obispo County Employees'
14   Retirement Plan; Mendocino County and the Mendocino County Employees Retirement
15   Association Defined Benefit Fund; and Tulare County and the Tulare County Employees
16   Retirement Association Fund. SAC ¶ 1. Each of these Political Subdivisions is a citizen of the
17   state of California. *Blue Ridge Insurance Co. v. Stanewich*, 142 F.3d 1145, 1147 n.1 (9th Cir.
18   1998).

19          10.    Defendant BNY Mellon is incorporated in Delaware and has its principal
20   place of business in New York, New York, and is therefore a citizen of Delaware and New York.
21   28 U.S.C. § 1332(c)(1). Therefore, there is complete diversity of citizenship between the parties.
22          11.    The amount in controversy requirement is satisfied. The complaint
23   demands treble damages based upon alleged actual damages that total tens of millions of dollars,
24   plus civil penalties adding up to tens of thousands of dollars. SAC at p. 21.
25          12.    The Complaint also names Defendants Does 1-100. Pursuant to 28 U.S.C.
26   §1441(a), the citizenship of these defendants is disregarded.
27          13.    Once the Relator names the Proper Defendants, this case is also subject to
28   removal under the Edge Act, 12 U.S.C. § 632. The Bank of New York Mellon Trust Company,

3

1   N.A. is a corporation organized under the laws of the United States, and this action involves

2   international and foreign banking, and/or international or foreign financial operations.  The Bank

3   of New York Mellon Trust Company, N.A. is the contracting party with the Los Angeles County

4   Employees' Retirement Association Fund, the Los Angeles Water and Power Employees'

5   Retirement Plan, the Merced County Employees' Retirement System Fund, and the San Diego

6   County Employees Retirement Association Fund.

7   **V.    CONCLUSION**

8          14.    By removing this case, Defendant does not waive and is not estopped from

9   raising any defenses that were available to it in state court.  *See Clark v. Wells*, 203 U.S. 164,

10  171 (1906); *Baumgart v. Fairchild Aircraft Corp.*, 981 F.2d 824, 835 (5th Cir. 1993).

11         15.    Pursuant to 28 U.S.C. § 1446(d), Defendant will promptly provide written

12  notice of the removal of this action to Relator, through its attorneys of record, Lieff, Cabraser,

13  Heimann & Bernstein, LLP.  Defendant will also promptly provide written notice of the removal

14  of this action to the parties that have intervened in the Superior Court proceeding, namely the

15  Stanislaus County Employees' Retirement Association Fund, the Los Angeles Water and Power

16  Employees' Retirement Plan, the Los Angeles County Employees Retirement Association Fund,

17  and the San Diego County Employees Retirement Association Fund.  Defendant will also

18  promptly file a copy of this Notice of Removal with the Clerk of the Superior Court of the State

19  of California for the County of Alameda.

20         16.    BNY Mellon reserves the right to amend or supplement this Notice of

21  Removal.

22  ///

23  ///

24  ///

25  ///

26  ///

27  ///

28

4

NOTICE OF REMOVAL OF CIVIL ACTION

A/74596360.2

1    WHEREFORE, pursuant to 28 U.S.C. §§ 1332, 1441, and 1446, Defendant BNY

2  Mellon removes this case from the Superior Court of the State of California for the County of

3  Alameda to the United States District Court for the Northern District of California.

4  DATED: November 28, 2011

BINGHAM McCUTCHEN LLP

5

6

7    By:

David M. Balabanian
8    Attorneys for Defendant
BANK OF NEW YORK MELLON CORPORATION
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

5

 CT Corporation

**Service of Process Transmittal**
10/31/2011
CT Log Number 519405731

**TO:**   Christopher J Soller
The Bank of New York Mellon Corporation
BNY Mellon Center, 151-1915
500 Grant Street
Pittsburgh, PA 15258

**RE:**   **Process Served in Pennsylvania**

**FOR:**   The Bank of New York Mellon Corporation (Domestic State: DE)

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | RE: Bank of New York Mellon Corporation False Claims Act Foreign Exchange Litigation, Ex rel. FX Analytics // To: The Bank of New York Mellon Corporation, et al., Dfts. |
| **DOCUMENT(S) SERVED:** | Letter, Summons, Second Amended Complaint, Demand, Proof(s) of Service, Cover Sheet(s), Addendum, ADR Information Packet, Notice(s), Order(s), Service List |
| **COURT/AGENCY:** | Alameda County Superior Court, CA
Case # RG09480749 |
| **NATURE OF ACTION:** | Violation of the state false claims act |
| **ON WHOM PROCESS WAS SERVED:** | CT Corporation System, Harrisburg, PA |
| **DATE AND HOUR OF SERVICE:** | By Certified Mail on 10/31/2011 postmarked on 10/26/2011 |
| **JURISDICTION SERVED :** | Pennsylvania |
| **APPEARANCE OR ANSWER DUE:** | Within 30 days |
| **ATTORNEY(S) / SENDER(S):** | Lexi J. Hazam
Lieff, Cabraser, Heimann & Bernstein, LLP
San Francisco Airport Office Center
840 Malcolm Road
Burlingame, CA 94010
650-697-6000 |
| **ACTION ITEMS:** | CT has retained the current log, Retain Date: 10/31/2011, Expected Purge Date: 11/05/2011
Image SOP
Email Notification, Susan McGivern susan.mcgivern@bnymellon.com
Email Notification, Kevin J Wilson kevin.j.wilson@bnymellon.com
Email Notification, Sharon L Genser sharon.genser@bnymellon.com
Email Notification, Christopher J Soller christopher.soller@bnymellon.com |
| **SIGNED:**
**PER:**
**ADDRESS:** | CT Corporation System
Sabra Dudding
116 Pine Street
3rd Floor, Suite 320
Harrisburg, PA 17101 |
| **TELEPHONE:** | 717-234-6004 |

Information displayed on this transmittal is for CT Corporation's record keeping purposes only and is provided to the recipient for quick reference. This information does not constitute a legal opinion as to the nature of action, the amount of damages, the answer date, or any information contained in the documents themselves. Recipient is responsible for interpreting said documents and for taking appropriate action. Signatures on certified mail receipts confirm receipt of package only, not contents.

LAW OFFICES

COTCHETT, PITRE & McCARTHY, LLP

SAN FRANCISCO AIRPORT OFFICE CENTER
840 MALCOLM ROAD

LOS ANGELES OFFICE
9454 WILSHIRE BOULEVARD, SUITE 907
BEVERLY HILLS, CA 90212
(310) 247-9247

BURLINGAME, CALIFORNIA 94010
TELEPHONE (650) 697-6000
FAX (650) 697-0577

WASHINGTON, DC OFFICE
1025 CONNECTICUT AVENUE NW, SUITE 1000
WASHINGTON, DC 20036
(202) 296-4515

October 26, 2011

NEW YORK OFFICE
ONE LIBERTY PLAZA, 23RD FLOOR
NEW YORK, NY 10006
(212) 682-3198

*BY Certified Mail*

CT Corporation System
116 Pine Street
Suite 320
Harrisburg, PA 17101

**Re:** *FX Analytics, Ex. Rel. v. Bank of New York Mellon Corporation*
*Case No. RG*

Dear CT Corporation System,

Please find enclosed the following documents which we are serving on you as the registered agent for Bank of New York Mellon:

1. Second Amended Complaint;
2. Summons in a Civil Case;
3. Civil Case Cover Sheet;
4. ADR Dispute Resolution Procedure Packet;
5. Notice of Intervention (Stanislaus County Employees' Retirement Association)
6. Notice of Intervention (Los Angeles Department of Water and Power Employees' Retirement Plan)
7. Notice of Intervention (Los Angeles County Employees Retirement Association AND San Diego County Employees' Retirement Association)
8. Order Designating Documents to be Unsealed and Documents to Remain Under Seal (Stanislaus County Employees' Retirement Association)
9. Order Designating Documents to be Unsealed and Documents to Remain Under Seal (Los Angeles Department of Water and Power Employees' Retirement Plan)
10. Order Designating Documents to be Unsealed and Documents to Remain Under Seal (Los Angeles County Employees Retirement Association AND San Diego County Employees' Retirement Association)
11. Proof of Service of Ex Rel. Second Amended Complaint for Violation of the State False Claims Act

LAW OFFICES
COTCHETT, PITRE & McCARTHY, LLP

If you have any questions please feel free to contact me.

Sincerely,

Steven N. Williams

Encl.



**SUM-100**

## SUMMONS
### *(CITACION JUDICIAL)*

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*

The Bank of New York Mellon Corporation, and Does 1 through 100, inclusive

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

In re Bank of New York Mellon Corporation False Claims Act Foreign Exchange Litigation, Ex rel. FX Analytics

*FOR COURT USE ONLY*
*(SOLO PARA USO DE LA CORTE)*

**ENDORSED
FILED
ALAMEDA COUNTY**

OCT 2 5 2011

CLERK OF THE SUPERIOR COURT
By Thehe Ferry, Deputy

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| The name and address of the court is:<br>*(El nombre y dirección de la corte es):* Alameda County Superior Court | CASE NUMBER:<br>*(Número del Caso):* |
|---|---|
| | RG09480749 |

Rene C. Davidson Courthouse, 1225 Fallon Street
Oakland, California 94612

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Lexi Hazam, Lieff Cabraser Heimann & Bernstein, 275 Battery St., San Francisco, CA 94111, (415) 956-1000

| DATE: October 25, 2011<br>*(Fecha)* | Pat S. Sweeten | Clerk, by<br>*(Secretario)* | *Jacha Kerry* | , Deputy<br>*(Adjunto)* |
|---|---|---|---|---|

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served

[SEAL]

1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☑ on behalf of *(specify):*

    under: ☑ CCP 416.10 (corporation)     ☐ CCP 416.60 (minor)
            ☐ CCP 416.20 (defunct corporation)    ☐ CCP 416.70 (conservatee)
            ☐ CCP 416.40 (association or partnership) ☐ CCP 416.90 (authorized person)
            ☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 (Rev. July 1, 2009)

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
www.courtinfo.ca.gov

4/5/10
3411

# CONFIDENTIAL

MC–060

| ATTORNEY (Name, state bar number, and address): | FOR COURT USE ONLY |
|---|---|
| Lexi J. Hazam (California Bar No. 224457)<br>LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP<br>275 Battery Street, 29th Floor<br>San Francisco, CA 94111<br><br>TELEPHONE NO.: 415-956-1000     FAX NO. (Optional): 415-956-1008<br>E-MAIL ADDRESS (Optional): lhazam@lchb.com<br>ATTORNEY FOR: ☑ PLAINTIFF ☐ OTHER (specify): | |

| SUPERIOR COURT OF CALIFORNIA, COUNTY OF ALAMEDA | |
|---|---|
| STREET ADDRESS: 1225 Fallon Street<br>MAILING ADDRESS: 1225 Fallon Street<br>CITY AND ZIP CODE: Oakland, CA 94612<br>BRANCH NAME: René C. Davidson / Alameda County Courthouse | |

| · PLAINTIFF: | [UNDER SEAL] | |
|---|---|---|
| DEFENDANT: | [UNDER SEAL] | |

| CONFIDENTIAL COVER SHEET–FALSE CLAIMS ACTION | CASE NUMBER:<br>RG09480749 |
|---|---|

| INSTRUCTIONS: This civil action is brought under the False Claims Act, Government Code section 12650 et seq. The documents filed in this case are under seal and are confidential pursuant to Government Code section 12652(c).<br><br>This Confidential Cover Sheet must be affixed to the caption page of the complaint and to any other paper filed in this case until the seal is lifted.<br><br>You should check with the court to determine whether papers filed in False Claims Act cases must be filed at a particular location. | Seal to expire on (date):<br>July 15, 2010<br>UNLESS:<br>(1) Motion to extend time is<br>   pending; or<br>(2) Extended by court order |
|---|---|

1. The document to which this cover sheet is affixed is:
   a. ☑ Complaint for damages for violation of the False Claims Act (Second Amended)
   b. ☐ Civil Case Cover Sheet (form 982.2(b)(1))
   c. ☐ Motion for an extension of time to intervene
   d. ☐ Affidavit or other document in support of the motion for an extension of time
   e. ☐ Order extending time to intervene (specify date order expires):
   f. ☐ Other order (describe):

   g. ☐ Notice from the Attorney General of additional prosecuting authority that may have access to the file
   h. ☐ Other (describe):

2. This Confidential Cover Sheet and the attached document must each be separately file-stamped by the clerk of the court.

Date: April 5, 2010

Page 1 of 1

Form Adopted for Mandatory Use<br>Judicial Council of California<br>MC-060 [Rev. January 1, 2007]

**CONFIDENTIAL COVER SHEET**
**FALSE CLAIMS ACTION**

Gov. Code, § 12652(c);<br>Cal. Rules of Court, rules 2.570-2.573<br>www.courtinfo.ca.gov

www.accesslaw.com



1  Richard M. Heimann (State Bar No. 063607)
   Lexi J. Hazam (State Bar No. 224457)
2  Robert L. Lieff (State Bar No. 037568) (Of Counsel)
   LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP
3  Embarcadero Center West
   275 Battery Street, 29th Floor
4  San Francisco, CA  94111-3339
   Telephone:  (415) 956-1000
5  Facsimile:  (415) 956-1008

6  Steven E. Fineman (State Bar No. 140335)
   Daniel P. Chiplock
7  LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP
   250 Hudson Street, 8th Floor
8  New York, NY  10013-1413
   Telephone:  (212) 355-9500
9  Facsimile:  (212) 355-9592

10 Philip R. Michael
   MICHAEL LAW GROUP
11 326 West 246th Street
   Riverdale, NY  10471
12 Telephone:  (917) 689-1734
   Facsimile:  (718) 601-4052
13 prmpjab@gmail.com

14 Michael P. Thornton
   Michael A. Lesser
15 THORNTON & NAUMES LLP
   100 Summer Street, 30th Floor
16 Boston, MA  02110
   Telephone:  (617) 720-1333
17 Facsimile:  (617) 720-2445

18 Attorneys for Plaintiff/Relator

19           SUPERIOR COURT OF THE STATE OF CALIFORNIA

20                      COUNTY OF ALAMEDA

21 In re BANK OF NEW YORK MELLON          Case No.  RG09480749
   CORPORATION FALSE CLAIMS ACT
22 FOREIGN EXCHANGE LITIGATION,           **_EX. REL._ SECOND AMENDED**
   _Ex rel._ FX ANALYTICS,                **COMPLAINT FOR VIOLATION OF THE**
23                                        **STATE FALSE CLAIMS ACT**
              Plaintiff/Relator,
24                                        **Cal Gov Code § 12651, _et seq._**
        v.
25                                        **DEMAND FOR JURY TRIAL**
   THE BANK OF NEW YORK MELLON
26 CORPORATION, and DOES 1 through
   100, inclusive,                        **FILED IN CAMERA AND UNDER SEAL**
27
              Defendants.
28

864392.1
─────────────────────────────────────────
        IN RE FALSE CLAIMS ACT FOREIGN EXCHANGE LITIGATION

1      Plaintiff/Relator ("Relator"), FX Analytics, for its Complaint against The Bank of New

2 York Mellon Corporation, its predecessors and subsidiaries ("Defendant(s)," "BNY Mellon,"

3 and/or "Bank," and DOES 1 though 100 (including all subsidiaries of the above entities)), alleges

4 as follows:

5 **I.**    **INTRODUCTION**

6      1.     This is an action to recover damages and civil penalties on behalf of Political

7 Subdivisions of the State of California ("State") for harm suffered by the following Political

8 Subdivisions: the Oakland Police and Fire Retirement System Fund; the City of Los Angeles and

9 the Los Angeles Water and Power Employees' Retirement Plan; Los Angeles County and the Los

10 Angeles County Employees Retirement Association Fund; San Diego County and the San Diego

11 County Employees Retirement Association Fund; Stanislaus County and the Stanislaus County

12 Employees' Retirement Association Fund; Santa Barbara County and the Santa Barbara County

13 Employees Retirement System Fund; Merced County and the Merced County Employees'

14 Retirement System Fund; San Luis Obispo County and the San Luis Obispo County Employees'

15 Retirement Plan; Mendocino County and the Mendocino County Employees Retirement

16 Association Defined Benefit Fund; and Tulare County and the Tulare County Employees

17 Retirement Association Fund (the "Subdivisions" and the "Subdivision Funds," respectively),

18 arising from false claims and statements made and presented by Defendants, their agents,

19 employees and co-conspirators, in violation of the State False Claims Act, Cal Gov Code

20 § 12651, *et seq.* (the "State False Claims Act" or the "Act").

21      2.     Defendants violated the State False Claims Act by assigning fictitious foreign

22 currency exchange ("FX") rates to the Funds' purchases and sales of foreign securities, making

23 false statements and creating false records related thereto, and conspiring to commit these

24 offenses. Defendants knowingly and intentionally created and carried out a fraudulent scheme in

25 which they charged the Subdivision Funds fictitious FX rates that were not the FX rates at which

26 Defendants actually executed requested FX transactions for the Subdivision Funds. Defendants

27 captured the difference between the actual and the fictitious FX rates, thereby damaging the

28 Subdivision Funds – pension funds with assets in excess of $59 billion dollars.

3.       This scheme dates back at least ten years, affects institutional investors nationwide, and currently yields an estimated $500 million dollars annually to the Bank. Relator estimates that the portion of the profits falsely and fraudulently generated from Defendants' business with the Subdivision Funds since at least 1999 is in excess of $30 million dollars.

4. .      Defendants concealed their fraud from the Subdivisions in order to keep monies of the Subdivision Funds to which Defendants were not entitled. Defendants accordingly breached both the Act and their fiduciary and contractual obligations to the Subdivisions.

5.       The Act provides that any person who knowingly presents, or causes to be presented, to any officer or employee, officer, or agent of the State, or a political subdivision, a false or fraudulent claim for payment or approval is liable for a per-claim civil penalty of up to $10,000 for each such claim submitted or paid, plus three times the amount of the damages, including consequential damages, sustained by the political subdivision. For purposes of the Act, "knowing" or "knowingly" means that a person possessing actual knowledge of the information acts in deliberate ignorance of the truth or falsity of the information or acts in reckless disregard of the truth or falsity of the information, and no proof of specific intent to defraud is required.

6.       The Act states that a relator may bring a civil for violations of the Act on behalf of the relator and the State of California or its political subdivisions. The complaint shall be filed under seal and shall remain so for 60 days, without service on the Defendants during that period, and cannot be so served without an Order of the Court.

7.       Based on the provisions of the Act, Relator seeks to recover compensatory damages, trebled, and civil penalties arising from the Subdivisions' payment of falsified FX rates in connection with FX transactions on behalf of their public pension funds. Defendants' conduct has included (a) false or fraudulent claims for payment or approval of false records or statements, that the Defendants knowingly presented, and caused to be presented, to an officer or employee of a political subdivision; and the Defendants' use of false or fraudulent records and statements to conceal, avoid and decrease the Defendants' obligation to pay money to the political subdivisions in connection with FX transactions on behalf of the Subdivision Funds, and (c) conspiracy to commit these offenses, all in violation of the Act.

1    8.    As described more fully below, the only constraints on the fictitious FX rates
2    charged to the Subdivision Funds have been the high (for purchases) and low (for sales) of each
3    particular day's FX rates. Defendants' wrongdoing is alleged herewith to have continued to the
4    present, and may continue into the future.

5    9.    It is the regular practice of the Defendants' FX traders and transaction desks,
6    working in conjunction with the Bank's custody department, to leverage every possible FX
7    transaction for the exclusive benefit of the Bank. Knowing the precise foreign exchange needs of
8    its custody clients, the Bank trades to satisfy its clients' obligations on the interbank market, but
9    then charges a fictitious price to the public pension fund client for the trade. The fictitious price
10   given to the client allows the Bank to keep a significant illicit profit on the trade.

11   10.   The Defendants' profits from this behavior often results in profits of hundreds of
12   thousands of dollars on a single trade. The Defendants' fraud on their custodial clients, the
13   Subdivision Funds, occurred – and continues to occur – despite the Bank's contractual and
14   statutory duties, despite the Bank's responsibilities as a fiduciary and the trust it induces the
15   public pension funds to have in the Bank, and despite repeated representations by the Bank as to
16   the benefits of its cutting-edge technology, its advanced claims processing procedures, best
17   execution practices, and the competitiveness of its FX rates.

18   **II.    PARTIES**

19   11.   Relator, a Delaware general partnership, is named FX Analytics and brings this
20   action for violations of The State False Claims Act, on behalf of itself and the Political
21   Subdivisions named herein. The owner of the partnership (the "Partner") possesses extensive
22   knowledge and experience regarding the Defendants' bank offices, businesses and personnel,
23   including personal contact with the employees and executives of BNY Mellon (Defendant(s))
24   who have committed the alleged violations of the Act, as described below. The Partner possesses
25   personal knowledge to support and establish the charges asserted in this Complaint.

26   12.   Pursuant to Section 15-201(a) of the Delaware Revised Uniform Partnership Act,
27   FX Analytics is not distinct from its partner, who has personal knowledge of the aforesaid false
28   claims, statements, concealments, and receipts.

864392.1                              - 3 -

1    13.    Defendant, The Bank of New York Mellon Corporation, is the parent corporation

2    resulting from the July 1, 2007 merger of the Bank of New York Company, Inc. and Mellon

3    Financial Corporation. By July 1, 2008, the Bank had consolidated into two banks and renamed

4    its principal bank and trust companies The Bank of New York Mellon and BNY Mellon, National

5    Association. These entities, along with many others, are primary subsidiaries of the parent

6    corporation, The Bank of New York Corporation. BNY Mellon assumes the liabilities of the

7    corporations merged into it. NY CLS Bank § 602(2). As referred to herein, therefore, general

8    references to BNY Mellon include the merged corporation as well as its constituent, individual

9    predecessor corporations and subsidiaries – unless otherwise noted.

10    14.    BNY Mellon's corporate headquarters are located at One Wall Street, New York,

11    New York, 10286. Its symbol on the New York Stock Exchange is "BK." According to its

12    website, as of the second quarter of 2009, BNY Mellon maintained $20.7 trillion under custody

13    and administration, and with $926 billion under management.

14    15.    The true names and capacities, whether individual, corporate, associate, or

15    otherwise, of Defendants DOES 1 through 100 are unknown to Relator, who therefore sues such

16    Defendants by such fictitious names, and will amend this Complaint to show the true names and

17    capacities of the DOE defendants when ascertained. Relator alleges on information and belief

18    that each Defendant designated as a "DOE" is legally responsible in some manner for the events

19    and happenings alleged in this Complaint.

20    III.    **VENUE**

21    16.    Venue is proper in this county because one or more Defendants can be found in,

22    reside in, and/or transact business in this county, and because some of the violations of Cal..Gov't

23    Code §§ 12650-12655 described herein occurred within this county. Specifically, Defendant

24    BNY Mellon has transacted business in this county by providing custodial banking services and

25    FX Services to the Oakland Police and Fire Retirement System Fund, and has perpetrated the

26    fraudulent scheme describe herein in the course of providing these services. In addition, Plaintiff

27    Oakland Police and Fire Retirement System Fund is located in this county.

28

864392.1

**- 4 -**

IN RE FALSE CLAIMS ACT FOREIGN EXCHANGE LITIGATION

IV. **DEFENDANTS' FRAUDULENT SCHEME**

A. **Background on Defendants' Relationship with the Subdivision Funds**

17. BNY Mellon's main business lines include Asset Management, Asset Servicing, Wealth Management, Broker-Dealer & Advisor Services, Issuer Services, and Treasury Services. BNY Mellon Asset Servicing is responsible for the custodial banking at issue in Relator's complaint, and the fraudulent FX fees earned through Defendants' scheme are reported as Asset Servicing income.

18. BNY Mellon serves as the custodian bank for a large number of public pension funds across the country. According to the Bank's 2008 Annual Report, it is "the largest custodian for U.S. public pension plans." In states with *qui tam* statutes, BNY Mellon is responsible, as the custodian Bank, for more than $600 billion in state and state political subdivision funds. As further alleged herein, the Bank's practice is to target these public and governmental Funds for its fraudulent FX scheme.

19. In 2008, BNY Mellon reported a record $1.5 billion in FX and other trading activity revenue – an increase of $676 million (86%) over the previous year. For the years 2002 to 2008, BNY Mellon and its predecessor Banks have reported more than $5 billion in FX trading revenue. As alleged below, the great majority of these profits came directly at the expense of public pension funds. BNY Mellon's FX revenue is a cornerstone of the Bank's annual profits and serves as a cash generator responsible for funding the annual bonuses of the entire firm.

20. BNY Mellon made public and private misrepresentations of its FX practices in order to induce the Subdivision Funds to become clients. It contended that its FX services were successful, award-winning, and skillful. Its website misleadingly explained the various FX services that it offered to its custodial clients. One mode of execution, known as "Standing Instruction," was the manner of execution that the Bank induced the Subdivision Funds, and public pension funds generally, to select. This trading method – also known as "Indirect" within the industry and described further herein – funneled all of the Funds' FX transactions to BNY Mellon for execution.

21. The Subdivisions chose BNY Mellon's "Standing Instruction" mode of execution of FX transactions because BNY Mellon misleadingly marketed it to the Subdivisions and Subdivision Funds as a cost-saving benefit. BNY Mellon's website is replete with misrepresentations concerning the Bank's FX services, which the Relator alleges to be untrue and instrumental to the scheme alleged herein:

    i.     "With 24-hour trading capability via New York, Boston, Pittsburgh, London, Brussels, Tokyo, Hong Kong, Seoul, and Tapei, The Bank of New York Mellon is one of the largest FX dealers in the world. We provide coverage for more than 100 currencies and offer a myriad of FX derivative products. Our seasoned dealers offer innovative business solutions . . ."

    ii.     "The Bank of New York Mellon Global Markets is a recognized leader in the institutional and corporate global foreign exchange markets. Our foreign exchange specialists are able to provide expert analysis and advice accompanied by a full range of products to support your global business activity."

    iii.     "Execution: Our global franchise provides you with 24 hour market coverage. Due to our standing as one of the world's leading custodial Banks, we are an active market-maker in the spot, forward and option markets."

    iv.     "Standing Instruction [Indirect Foreign Exchange] trading provide[s] a simple, flexible, and complete service solution that automates the capture of all types of custody-related foreign exchange . . . Operationally simple, *free of charge* and integrated with the client's activity on the various securities markets, [Foreign Exchange] standing instruction is designed to help clients minimize risks and costs related to the foreign exchange and concentrate on their core business."

    v.     "Standing Instruction Foreign Exchange Clients benefit from: [foreign exchange] execution according to *best execution standards* . . ."

(Emphases added).

22. To maintain the enormous illicit profits that BNY Mellon makes from its Indirect FX custodial clients, including the Subdivision Funds and other similarly positioned public

864392.1               - 6 -

1  pension funds, the Bank touts the strength of its relationship with those same pensions it defrauds

2  – largely the public pension funds that comprise the bulk of the Indirect clients:

3              i.      A Leading Provider For Government Entities: Public pension plans

4  and other government agencies seek to align themselves with a custodian who is a clear leader,

5  one who has the capabilities and experience to help them meet the numerous challenges facing

6  their organizations today including: Increased regulatory oversight, complex global investing

7  environment, pressure to grow assets while managing with existing or decreasing resources, and

8  corporate governance.

9              ii.     BNY Mellon Asset Servicing understands the unique needs of

10  public organizations and has worked with their decision-makers to professionally administer their

11  assets.

12  23.     BNY Mellon's representations have little or nothing to do with their actual

13  practices toward affected public pension funds such as the Subdivision Funds.

14  24.     Together the Subdivision Funds hold more than \$59 billion in assets. A significant

15  percentage of the Subdivision Funds' assets include international securities that necessitate FX

16  transactions. Approximately 21% of the Los Angeles County Employees Retirement Association

17  Fund is allocated to international equities and investments. Approximately 27% of the San Diego

18  County Employees Retirement Association Fund is allocated to international equities and

19  investments. Approximately 15% of the Los Angeles Water and Power Employees Retirement

20  Plan Fund is allocated to international equities and investments. Approximately 18% of the Santa

21  Barbara County Employees Retirement System Fund is allocated to international equities and

22  investments. Approximately 19.8% of the Stanislaus County Employees Retirement Association

23  Fund is allocated to international equities and investments. Approximately 15% of the Oakland

24  Police and Fire Retirement System Fund is allocated to international equities and investments.

25  Approximately 19% of the Tulare County Employees Retirement Association Fund is allocated to

26  international equities and investments. Finally, approximately 19% of the Mendocino County

27  Employees Retirement Association Fund is allocated to international equities and investments.

28

864392.1                          - 7 -

1   Combined, at present, approximately $12,486,785,000 of Subdivision money is subject, daily, to
2   Defendants' fraud.[1]

3       25.    Defendants have served as, or are, the custodial bank for the Subdivision Funds
4   enumerated herein.

5       26.    On information and belief, the Subdivision Funds' custodial agreements with
6   Defendants do not authorize the FX rates charged by Defendants in connection with the FX
7   transactions described herein, and the Subdivision Funds have not otherwise authorized the
8   Defendants to charge them FX rates related to foreign security transactions other than the actual
9   costs incurred by Defendants in connection with such transactions. The Subdivision Funds have
10  never approved the retention by the Defendants of the difference between their actual FX cost and
11  the fictitious FX rates falsely charged by Defendants and passed on to the Subdivision Funds.

12      27.    The Subdivision Funds never agreed that their master custodial agreements with
13  BNY Mellon entitled Defendants to any earnings above those specified in those agreements.
14  Nonetheless, Defendants secretly conferred upon themselves the discretion to charge the
15  Subdivision Funds fictitious FX rates and to pocket the difference from the FX rates that were
16  actually paid by Defendants in connection with purchases and sales of foreign currencies for the
17  Subdivision Funds.

18      28.    28. Governmental appropriations to the Subdivision Funds are required by statute,
19  and such appropriations (in the hundreds of millions of dollars) have been made during the course
20  of Defendants' custodianship of the Subdivision Funds.

21      29.    When money is wrongly withheld or misappropriated from the Subdivision Funds
22  through violations of the Act, the Subdivisions must pay additional money to the Subdivision
23  Funds, which otherwise would have been available for essential services to its citizens. As the
24  custodian, BNY Mellon was required to act as a fiduciary for the Subdivision Funds. BNY
25  Mellon breached this fiduciary duty.

26      30.    Over the period of time relevant to this Complaint, the Subdivisions have paid
27  millions of dollars in custodial fees to Defendants. Moreover, the Bank has effortlessly generated

28  
---
[1] Investigation continues into the San Luis Obispo County funds' international equity holdings.
864392.1                                    - 8 -

1   millions of dollars in risk-free revenue while the Subdivision Funds have struggled to meet

2   funding requirements in the face of major losses in value attributable to the economic downturn

3   of the last eighteen months. Indeed, the money lost due to BNY Mellon's fraudulent FX scheme

4   is money that will not earn compounded investment returns for the Subdivision Funds over the

5   thirty-plus year time horizon that applies to most pension plans, and each such loss will triple

6   each decade.

7           **B.       How Defendants' Fraudulent Foreign Exchange Scheme Works**

8           31.      Upon receipt of a request requiring a FX transaction, Defendants execute a trade to

9   fill the request at the FX rate available at or close to that time. Defendants thereafter watch the

10  market fluctuation in FX rates related to such transactions over the course of the day (covering a

11  24-hour period, beginning a 5:00 p.m., Eastern Time) in order to charge the client a different, less

12  favorable rate than the one at which Defendants actually settled the FX transaction. Many of the

13  transactions for which Defendants claim or state an applicable FX rate that the Subdivision Funds

14  are responsible for paying (for "buy" transactions) or for which the Subdivision Funds are entitled

15  to a credit from Defendants (for "sell" transactions) are actually feigned. Defendants falsely

16  claim to have paid a different rate than that which was required settle the trade.

17          32.      If the transaction is a "buy" of a foreign currency, Defendants will charge the

18  Subdivision Funds a higher FX rate available at another time in the day, which causes the

19  Subdivision Funds to pay more for the FX transaction than what Defendants actually paid.

20  Defendants will keep for themselves the difference between the true cost of the trade and the

21  fictitious or false FX rate Defendants claim to have paid and charge to the clients. If the

22  transaction that requires a FX transaction is instead a "sale" of a foreign currency, Defendants

23  will falsely credit the Subdivision Funds with an FX rate available at another time in the day that

24  is lower than what Defendants actually receive for the currency, and remit to the Subdivision

25  Funds an amount less than what Defendants actually have received on the behalf of the

26  Subdivision Funds.

27

28

## C. How the Bank Manipulates Pension Fund Clients

33. The great majority of FX trades are done without a built in commission or fee paid by the client in a transaction. The profit that is gained by the Bank, or the sell side, is generated by dealing at a price with the client where they are able to offset the trade in the interbank market at a profit. It is a zero sum game; whatever the Bank gains in profit in the transaction becomes a "loss" for or a cost to the client. This fact where one side's gain is the other side's cost can make the negotiating process key to overall profitability for both parties involved.

34. The method of dealing with FX transactions can be broken down into to two basic categories: "Direct" or "Indirect." In the "Direct" way of trading, clients do FX transactions themselves or contract with a third party that executes their FX trades. Generally speaking, clients that choose to deal directly with the FX department will accept a price that they negotiated with the Bank on a given transaction. That FX price will be close to where the actual FX market is trading at that time of day when the FX transaction is finalized. Thus, "Direct" clients are able to actively pursue the best price available to them at a particular time, and such clients are protected from additional FX costs caused by volatility in FX rates, whether such volatility occurs before or after the actual trade that the Direct client is assured of having occurred. For this reason, the Bank makes very modest profits on Direct trading, because the FX rate that is agreed upon between the Bank and the client must be paid by the Bank, and it has no opportunity to pretend that an FX rate that was much more costly for the client applied to the transaction in question.

35. The second way of executing foreign exchange transactions, one that is predominately used by public pension fund custody clients, such as the Subdivision Funds herein, is the "Indirect" method. Indirect foreign exchange trading at BNY Mellon is also referred to by the Bank as "non-negotiated" and "Standing Instructions" dealing.

36. The Indirect method involves the custodian, rather than the client, overseeing the trade process from start to completion. The client has little or no input in the FX transaction at any point in the process. In addition to the Bank's public descriptions above, the Indirect

1  methodology is also similarly described in the BNY Mellon's FX business plan statement
2  ("Statement") for 2010:

3    Through our standing instruction [Indirect] channel, we provide significant value-added to
4  clients by identifying trade requirements, aggregating and netting exposures, handling pre-trade
5  administration for regulated market transactions, *executing trades in accordance with best*
6  *execution practices*, assuring settlement and reporting trade details to back-end accounting
7  systems – all of which allows us to apply *wider margins with the willful acceptance of clients*.
8  (Emphases added).

9    37.    This statement is not only contradictory on its face (as the Bank's actions are
10  contrary to "best execution practices," and do not add "significant value") but shows that the FX
11  scheme alleged herein was knowing and willful. The notion of Indirect clients accepting
12  "margins" also belies BNY Mellon's representation that Indirect trading is done "free of charge,"
13  as described on Defendants' website (described *supra*).

14    38.    Profits from Indirect trading are at the heart of the Bank's decision-making
15  processes. When the Bank competes for a custody client, the FX department is consulted and
16  asked to estimate what the Bank's profits will be when and if the Bank were to execute the
17  prospective client's FX transactions. The Bank looks at what amount of international investments
18  the client presently has and how the Bank might price the deals, directly or indirectly.

19    39.    The FX department will give the custody group a conservative estimate of what
20  the FX profit potential will be with the prospective client. The custody group then incorporates
21  this estimate into their pricing structure as they make a flat-fee, all inclusive proposal (including
22  all FX costs and fees) to the prospective custodial client. The FX department shares some of its
23  profits with the custody group because it understands how valuable the stream of Indirect
24  custodial deals will be to the FX department.

25    40.    When the Bank sells its custodial services to public pension funds, it does so in a
26  way to make it much more likely that the Subdivision Funds will choose the Bank's bundled
27  services, which include the Indirect model of FX transactions. The Bank prices the overall flat-
28  rate custody contract in such a way that it would seem foolish for the Subdivisions – based on the

1   Bank's verbal and written (RFPS, contracts) representations and promises – to consider any other

2   option, *i.e.*, of taking its FX business elsewhere or paying someone else to do it. Public pension

3   funds such as the Subdivision Funds, as is well known by the Defendants who take advantage of

4   this knowledge, do not wish to employ the staff needed to directly negotiate FX transactions. The

5   Bank accordingly sells the bundled services as a way to promote efficiency and integration of

6   services, while, in reality, it only serves to facilitate the Bank's illicit FX profits. On information

7   and belief, the Subdivision Funds identified herein chose the Bank's bundled services, which

8   included Indirect FX services.

9       41.     The Indirect public pension fund clients have relied on the Bank's representations

10   that Indirect foreign exchange trading actually uses "best execution practices," or, more

11   significantly, is provided to Indirect clients, "free of charge." The duty of best execution requires

12   that a broker-dealer such as Defendants seek to obtain for its customer orders the most favorable

13   terms reasonably available under the circumstances. That is, the duty of best execution requires

14   Defendants to execute trades at the best reasonably available price.

15      42.     The Bank not only failed to practice best execution practices, but went well

16   beyond what could be considered best practices by regularly picking a falsified FX price that was

17   unrelated to the actual FX transactions that had been engaged in by the Bank for the Subdivision

18   Funds.

19      43.     Indirect clients are also known as ROD or "range of the day" clients where the

20   Bank uses the range of the day to the Bank's full advantage of its scheme of filling them at the

21   high or lows depending on whether they are buyers or sellers. The biggest variables in the Bank's

22   profitability are the amount of monies it processes and the volatility of the currency market. The

23   greater the volatility, the larger the range of falsified FX rates; the larger the range, the greater

24   ability of the Bank to price the clients at a rate that is more profitable to the Bank.

25      44.     BNY Mellon's system of executing FX trades and assigning fictitious FX rates for

26   Indirect, pension fund clients was deliberately set up to leverage the day's trading volatility in

27   favor of the Bank and against the interest of the custodial client the Funds. For instance, at the

28   beginning of the day there is a very narrow trading range for stocks and currencies when

1 | compared with the end of the day. If at the beginning of the day a BNY Mellon trader knows that

2 | he has to purchase 1,000,000 Euros for a pension fund, the trader also knows that he does not

3 | have to book that trade.into the Bank's system until 5:00 p.m. that evening. The trader has been

4 | incentivized, *i.e.*, provided a high-paying, stress-free, large bonus job, by his employer, the Bank,

5 | to wait to assign a fictitious FX rate for the trade to the Indirect client, although, in fact, the trade

6 | may have been executed by the Bank to assure it of a cost of not more than of the actual cost of

7 | the FX at 10:00 a.m.

8 | 45. BNY Mellon itself has noted that volatility in foreign currencies has contributed to

9 | an increase in its FX revenues. What it has not disclosed is that this is particularly true because

10 | the Bank has taken undue advantage of such volatility. By fixing their FX positions throughout

11 | the day at prices advantageous to the Bank, the Bank cannot lose on a transaction. At worst, the

12 | Bank breaks even. To date, all that the FX traders have thought that they need to do to shield

13 | their unlawful FX manipulations from scrutiny by their Indirect clients, including public pension

14 | funds, is to price each FX trade for the client within the range for that day.

15 | 46. If the Subdivision Funds had known of the Defendants' practices, they never

16 | would have allowed them to occur and never would have hired Defendants to serve in a position

17 | of elevated trust on behalf of the Subdivision Funds.

18 | **D. A Step-by-Step Analysis of how the Bank Does FX Transactions and Commits Fraud against its Indirect Custody Clients**

19 |

20 | 47. Indirect deals typically begin with the pension fund or its investment manager

21 | informing the Bank's Asset Servicing department that an asset trade has taken place necessitating

22 | an FX transaction to settle the trade, usually in the form of an Electronic Trade Delivery notice

(ETD).

23 | 48. The ETD / fax / e-mail trade order communication is entered into the Cash

24 | Management System ("CMS") by Asset Servicing within the Bank's custody operation (Bank of

25 | New York's equivalent system is called "GSP"). This trade order will include the (a) client

26 | name, (b) amount of foreign currency to be traded, (c) currency pair being traded (*e.g.*, buy

27 |

28 |

864392.1 | - 13 -

1 Japanese Yen and sell United States Dollars or sell Euros and buy United States Dollars),

2 (d) trade date and (e) time stamp of entry into the system.

3 49. CMS then sends the trade order to the Bank's FX Trading System, "Charlie,"

4 where it is reviewed by the Transaction Desk. At this point, the foreign exchange department of

5 the Bank is aware of the need to buy or sell the particular currency. It would be the Indirect

6 client's reasonable and bargained-for expectation, consistent with best execution practices and the

7 Bank's fiduciary duty, that the trade then would occur close in time to its delivery into the trading

8 system. However, as described further below, after the FX required is entered into Bank's FX

9 Trading System, the Bank's FX Traders watch for currency trends before executing FX trades,

10 and thereafter assign feigned or imaginary prices to the Indirect funds' trades for which the client

11 will be charged.

12 50. The FX trader will do an actual trade, in the first instance, in order to satisfy his or

13 her long and short currency positions. These trades are made based upon the volatility in the

14 market and the likely trend of the exchange rate. The trader knows that he or she must satisfy the

15 buy and sell positions by a pre-determined cut-off time. The Bank completes an FX trade, but

16 this trading is risk-free, since any market movement that goes against the Bank's positions as a

17 result of the watching and waiting, or as a result of an actual FX transaction, only comes out of

18 the Indirect client's pocket. Rarely, if ever, will the Bank's traders assign to the pension fund

19 trade the FX rate actually obtained by the Bank at the time of the actual FX trade. The Bank

20 usually uses 1:30 p.m. Eastern (New York) time as a cut-off, allowing the traders to fix their long

21 and short currency positions.

22 51. After the cut-off time and the Bank has made the actual FX transactions necessary

23 to cover the Indirect client's needs, the traders assign falsified FX rates to those transactions,

24 determined by looking back to the start of the trading day. The Defendants' FX Traders assign

25 fictitious FX rates, a process called, "locking the rates," as follows:

26         A. Higher prices to FX buy orders

27         B. Lower prices to FX sell orders

28

864392.1                - 14 -

1    52.    The only limitation on this false pricing is that the Bank is careful, with some

2    exceptions, to price the trades within the actual high and low range of the day's FX rates. This is

3    done to deceive an audit of the Indirect client's FX transactions, as such audits typically only look

4    to see if an FX transaction is priced within the range of the day on which it occurred.

5    53.    Each Indirect client with a trade in a particular currency pair for that day receives

6    the same FX rate, as determined by the Bank's cherry-picked range-of-the-day pricing, regardless

7    of when their specific trade request came in to the Bank, the size of the trade, the time the actual

8    FX trade occurred, and the actual FX rate at the time of that trade.

9    54.    Post-trade cash flow analyses are immediately done by the Bank to tabulate its

10   profits from each completed trade (after the falsified FX rate has been assigned to the public

11   pension fund client). The profit from each transaction represents the difference between the

12   falsely high (or low) price assigned to the Indirect client and the price the currency actually traded

13   for and paid (or received) by the Bank.

14   55.    A daily "Reconciliation" call between the Bank's New York and Pittsburgh

15   transaction desks is conducted each day as the Bank begins to choose FX rates to charge its

16   Indirect clients. The Pittsburgh transaction desk will call the New York transaction desk so that

17   they can synchronize their high and low ranges for each currency pair (these telephone calls are

18   made on a private, direct line, and may have been shielded from the Bank's customary policy of

19   recording transactional conversations). This call, done at approximately 2:30 p.m., is made so

20   that any discrepancies between each transaction desk's operations are avoided, thus making

21   discovery of the Bank's fraudulent scheme less likely. The fact that there was no discrepancy

22   between two separate and distinct trading systems, separated by thousands of miles, illustrates the

23   degree of the conspiratorial conduct necessary and engaged in to hide Defendants' scheme.

24   56.    Profit and loss reporting is done by each transaction desk by the maintenance of a

25   running Profit/Loss report that can be generated at any time. The FX traders review this

26   document in order to keep track of their personal Profit/Loss as well as the Bank's Profit/Loss. In

27   addition, monthly reports are also generated. Both the monthly and daily reports also show year-

28   to-date reporting.

57.    End-of-month Client Custody Reports are prepared by the Bank on or before mid-month. These reports list the pension fund's FX trades by date, amount, and price, *i.e.*, the fictitious FX rate (as reported to the custody side of the Bank by its FX traders). These reports never contain time stamps and there is nothing on the report that would lead an Indirect client to suspect that it had been defrauded on its FX trades.

58.    By not showing the specific time of day at which the actual, as compared to the feigned, FX trade occurred, the Bank does not have to reveal that a trade it knew about at 10:00 a.m., and, therefore, should have executed near that time, has instead been assigned an FX rate that only occurred in the interbank market during mid- or late afternoon.

E.    **Legacy Mellon Transaction Desk Procedures**

59.    Although the BNY/Mellon merger was effective as of July 1, 2007, the new entity has maintained the separate FX departments and each has traded throughout the day independent of the other (except for the end-of-the day reconciliation). Thus, those custody clients such as the Subdivision Funds that had previously hired BNY to be their custodian still have their trades executed by the BNY FX desk; those custody clients that had previously hired Mellon to be their custodian still have their trades executed by the Mellon FX desk.

60.    On average, the Mellon FX desk receives around 2,600 trades a day, a significant number of which are Indirect trades, a good number of which are for large dollar amounts and become the major source for the traders' illicit FX scheme. At the Mellon FX desk, Indirect transactions' volume totaled $5.375 billion in July of this year and $6.025 billion in August. The BNY FX desk processed at total of $6.580 billion in the same two months. July and August are two of the slower months of the year for foreign exchange.

61.    The Mellon FX desk in Pittsburgh is manned by Sue Pfister, Paul Park, and Phyllis Bertok. These three employees are individually responsible for specific currency pairs. Sue Pfister's primary currency is the euro (EUR). Paul Park handles Swiss Francs (CHF), British Pounds (GBP), South African Rand (ZAR), and the Scandinavian currencies. Phyllis Bertok focuses on the Canadian Dollar (CAD), Japanese Yen (JPY), Australian Dollar (AUD), New

1  Zealand Dollar (NZD), and the minor Asian currencies. As a group, the three are also responsible
2  for a variety of emerging market currencies.

3      62.    Indirect deals are processed at the Mellon FX desk in the following manner: the
4  trades are delivered in the morning and are accepted up until a cutoff of around 1 to 1:30 PM.
5  The cutoff time is enforced so the Mellon FX desk may get their illicit, feigned pricing of the
6  deals done by the end of the day. The longer a trade is held up in the system, the more time exists
7  for volatility in the market and movement in the FX rates to facilitate greater profit to the Bank
8  when the trades are eventually priced. Typically, the trading desk has a time window of at least 6
9  hours in which they will choose the worst price possible for Indirect clients, such as the Funds, in
10  each FX deal.

11      63.    As a general matter, Sue Pfister is the Mellon/Pittsburgh employee with the most
12  knowledge of the Bank's FX operations. She is the legacy Mellon representative involved in the
13  process of putting one electronic trading system in place for the two legacy banks. She knows
14  about, and, in fact, orchestrates, the fraudulent FX scheme.

15          **F.**    **Legacy Bank of New York Procedures**

16      64.    The basic elements of the fraud are the same with respect to both the Mellon FX
17  desk and the BNY FX desk. Their respective procedures, as they relate to the fraud, were in place
18  before the merger. Besides these general elements, the following specifics pertain to the Bank of
19  New York.

20      65.    BNY's electronic trading system, "GSP," is less sophisticated than Mellon's CMS
21  system. As a consequence, more persons are needed to organize BNY's Indirect flow of trades
22  from the custody department to the BNY FX desk. What CMS automates, e.g. the need for the
23  FX transaction and the parameters of the deal, has to be done manually by BNY staffers. BNY
24  does not employ a strict cut-off time for foreign exchange trades on the BNY FX desk. It will
25  accept deals past Mellon's 1:00 to 1:30 PM cut-off. A number of BNY staffers take the Indirect
26  deals and price them. FX sales desk people, spot traders, and the BNY FX desk are all involved.
27  In the afternoon, if there is remaining exposure from the Indirect deals that requires trading, Bill

28

1   Samella, the chief dealer in NYC, will walk around the BNY FX desk telling the respective spot
2   traders what they need to offset.

3      66.      It is also BNY's practice to occasionally take a deal in the New York morning and
4   price it using the range that has been observed in London time. This practice allows a much
5   longer time frame from which to review and take advantage of the volatility of an FX rate, and, as
6   a consequence, take a bigger false FX spread from the Indirect client.

7      67.      Legacy BNY has been known to give money back when it has been caught by
8   clients pricing the Indirect deals at an exorbitant FX rate. Specifically, BNY has on occasion
9   gone beyond the range of the day in pricing some deals and instead used the entire overnight
10   range as well in order to maximize profit. This practice has been challenged, on occasion, by
11   Indirect clients.

12      **G.**     **Indirect Trade Example**

13      68.      An actual trade illustrates the alleged illicit profit-taking on Indirect FX trades: On
14   October 1st of this year, the electronic pipeline from CMS showed that the Bank's clients would
15   be selling to the Bank approximately $12,500,000 United States Dollars. The Bank would be
16   selling them Canadian Dollars in return as they were obligated to pay for security transactions
17   that they had already entered into in Canada.

18      69.      The FX desk was aware of this net client exposure that would be offset that day by
19   9:30 AM. The USD/CAD had opened the New York morning at 1.0730 (where it would take
20   1.0730·CAD to equal 1 USD). The currency market fluctuated throughout the day 24/7 and the
21   USD/CAD traded lower, ultimately making a low at 9:00 a.m. of 1.0682. This rate, 1.0682, is the
22   worst possible rate one would have received if selling USD and buying CAD in the New York
23   trading session. From that low point the market traded higher and ultimately the USD gained
24   strength and made a high of 1.0847 in the afternoon.

25      70.      The FX desk sold $12,500,000 USD to the trader that covered the USD/CAD on
26   the spot desk, Pat O'Brien. O'Brien covered the position at an average rate of 1.0795. The rate
27   the clients that were selling the USD received was the very worst of the day: 1.0682. There was
28   no risk on the Bank's side of this trade. The profit of buying $12,500,000 USD/CAD at 1.0682

1    and selling the USD/CAD at 1.0795 was $134,937.50. Had the clients negotiated this trade as a

2    Direct client instead of as an Indirect client, a "normal" profit might have been 5 to 10 pips (a pip

3    representing one point in market vernacular, *i.e.*, 1.0701 to 1.0706 is 5 pips). A ten pip spread on

4    a $12,500,000 USD/CAD trade would represent a Bank profit that was $11,579 at these rates.

5    This trade was instead hyper-priced to the client at 113 basis points.

6        71.      A fraudulent profit of this size is a common occurrence at the Bank. In fact, the

7    majority of the Bank's FX profits are products of these Indirect trades. In 2008, on the Pittsburgh

8    trading desk of BNY Mellon, foreign exchange produced $417,331,504 in profit for the Bank.

9    The portion of this profit directly attributable to Indirect trades – as taken from the Indirect line

10    item on the Profit/Loss sheet for the year – was $298,055,320 or 71.4% of the total.

11        72.      For 2009, as of September 28, the Indirect foreign exchange profits accounted for

12    $189,226,774 of a total of $248,417,151 or 76.2%. These totals are available on the Bank's

13    internal trading records - the Bank's FX accounting system known as "Charlie." The deals are

14    also recorded in the CMS Internal Transaction Summary report.

15                                  **COUNT ONE**

16         **Substantive Violations of the California State False Claims Act**

17              [Presentation of False or Fraudulent Claims for Payment or Approval]

18        73.      Relator repeats and incorporates by reference the allegations made in Paragraphs 1

     through 72 of this Complaint.

19

20        74.      This is a claim for treble damages and penalties under the California State False

     Claims Act.

21

22        75.      Through the acts described above, Defendants and their agents and employees

23    knowingly presented or caused to be presented to an officer or employee of the Subdivisions false

24    or fraudulent claims for payment or approval in order to charge them false foreign exchange rates

     for foreign currency transactions

25

26        76.      The Subdivisions and the Subdivision Funds, unaware of the falsity of the claims

27    presented by Defendants and their agents and employees, paid and continue to pay Defendants for

     claims that would not be paid if the truth were known.

28

864392.1                        - 19 -

1
2

**COUNT TWO**
**Substantive Violations of the California State False Claims Act**

3

[False Records or Statements to Get
False or Fraudulent Claims Paid or Approved by the Subdivisions]

4       77.     Relator repeats and incorporates by reference the allegations made in Paragraphs 1

5    through 76 of this Complaint.

6       78.     Through the acts described above, Defendants and their agents and employees

7    knowingly made, used, or caused to be made or used, false records or statements to get false or

8    fraudulent claims paid or approved by the Subdivisions.

9       79.     The Subdivisions and the Subdivision Funds, unaware of the falsity of the records

10   and statements made or used by Defendants and their agents and employees, paid and continue to

11   pay Defendants for claims that would not be paid if the truth were known.

12

**COUNT THREE**
**Substantive Violations of the California State False Claims Act**

13

14

[False Records or Statements to Conceal,
Avoid, or Decrease an Obligation to Pay or Transmit Money to the Subdivisions]

15      80.     Relator repeats and incorporates by reference the allegations made in Paragraphs 1

16   through 79 of this Complaint.

17      81.     Through the acts described above, Defendants and their agents and employees

18   knowingly made, used, or caused to be made or used, a false record or statement to conceal,

19   avoid, or decrease an obligation to pay or transmit money to the Subdivisions.

20      82.     The Subdivisions and the Subdivision Funds, unaware of the falsity of the records

21   and statements made or used by Defendants and their agents and employees, allowed Defendants

22   to withhold funds belonging to the Subdivisions and the Subdivision Funds that the Subdivisions

23   and the Subdivision Funds would not have allowed to be withheld if the truth had been known.

24      83.     The Subdivisions and the Subdivision Funds, unaware of the falsity of the records

25   and statements made or used by Defendants, were deprived of and continue to be deprived of

26   payments owed to them by Defendants, which would not have occurred had the truth been

27   known.

28

864392.1                            - 20 -

**COUNT FOUR**
**Substantive Violations of the California State False Claims Act**

[Conspiracy]

84.    Relator repeats and incorporates by reference the allegations made in Paragraphs 1 through 83 of this Complaint.

85.    Through the acts described above, Defendants and their agents and employees conspired to defraud the Subdivisions by getting false or fraudulent claims allowed or paid by the Subdivision Funds.

86.    The Subdivisions and the Subdivision Funds, unaware of the falsity of the claims presented by Defendants and their agents and employees, paid and continue to pay Defendants for claims that would not be paid if the truth were known.

87.    The Subdivisions and the Subdivision Funds, unaware of the falsity of the records and statements made or used by Defendants, were deprived of and continue to be deprived of payments owed to them by Defendants, which would not have occurred if the truth had been known.

**WHEREFORE:**

As a direct result of Defendants' false records, statements, claims, concealments and omissions, and conspiracies to commit such offenses, the Political Subdivisions have been damaged in the amount of tens of millions of dollars in false and fraudulent foreign exchange charges or credits.

**PRAYER**

Relator prays for judgment against Defendants as follows:

1.    that Defendants cease and desist from violating the Act;

2.    that the Court enter judgment against Defendants in an amount equal to three times the amount of damages the Subdivisions and the Subdivision Funds have sustained as a result of Defendants' actions, as well as a civil penalty against each Defendant of $10,000 for each violation of the State of California False Claims Act;

1  3.  that Relator be awarded the maximum amount allowed pursuant to the California

2  False Claims Act; and

3  4.  that Relator be awarded all costs and expenses of this action, including attorneys'

4  fees; and

5  5.  that the Subdivision Funds and Relator recover all such other relief as the Court

6  deems just and proper.

7  Dated: April 5, 2010                    Respectfully submitted,

8                                          LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP

9

10                                         By: _____
                                               Lexi J. Hazam
11

12                                         Richard M. Heimann (State Bar No. 063607)
                                           *rheimann@lchb.com*
13                                         Lexi J. Hazam (State Bar No. 224457)
                                           *lhazam@lchb.com*
14                                         Robert L. Lieff (State Bar No. 037568) (Of Counsel)
                                           *rlieff@lchb.com*
15                                         LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP
                                           Embarcadero Center West
16                                         275 Battery Street, 29th Floor
                                           San Francisco, CA 94111-3339
17                                         Telephone: (415) 956-1000
                                           Facsimile: (415) 956-1008

18                                         Steven E. Fineman (State Bar No. 140335)
                                           *sfineman@lchb.com*
19                                         Daniel P. Chiplock
                                           *dchiplock@lchb.com*
20                                         LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP
                                           250 Hudson Street, 8th Floor
21                                         New York, NY 10013-1413
                                           Telephone: (212) 355-9500
22                                         Facsimile: (212) 355-9592

23                                         Philip R. Michael
                                           *prmpjab@gmail.com*
24                                         MICHAEL LAW GROUP
                                           326 West 246th Street
25                                         Riverdale, NY 10471
                                           Telephone: (917) 689-1734
26                                         Facsimile: (718) 601-4052

27

28

864392.1                                   - 22 -

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Michael P. Thornton
Michael A. Lesser
*mlesser@tenlaw.com*
THORNTON & NAUMES LLP
100 Summer Street, 30th Floor
Boston, MA 02110
Telephone: (617) 720-1333
Facsimile: (617) 720-2445

Attorneys for Plaintiff/Relator

**DEMAND FOR JURY TRIAL**

Plaintiff respectfully demands a jury trial for the alleged claims.

Dated: April 5, 2010

Respectfully submitted,

LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP

By: _____
　　　　Lexi J. Hazam

Richard M. Heimann (State Bar No. 063607)
*rheimann@lchb.com*
Lexi J. Hazam (State Bar No. 224457)
*lhazam@lchb.com*
Robert L. Lieff (State Bar No. 037568) (Of Counsel)
*rlieff@lchb.com*
LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP
Embarcadero Center West
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Telephone: (415) 956-1000
Facsimile: (415) 956-1008

Steven E. Fineman (State Bar No. 140335)
*sfineman@lchb.com*
Daniel P. Chiplock
*dchiplock@lchb.com*
LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP
250 Hudson Street, 8th Floor
New York, NY 10013-1413
Telephone: (212) 355-9500
Facsimile: (212) 355-9592

Philip R. Michael
*prmpjab@gmail.com*
MICHAEL LAW GROUP
326 West 246th Street
Riverdale, NY 10471
Telephone: (917) 689-1734
Facsimile: (718) 601-4052

Michael P. Thornton
Michael A. Lesser
*mlesser@tenlaw.com*
THORNTON & NAUMES LLP
100 Summer Street, 30th Floor
Boston, MA 02110
Telephone: (617) 720-1333
Facsimile: (617) 720-2445

Attorneys for Plaintiff/Relator

864392.1

- 24 -

1  **PROOF OF SERVICE**

2       I certify that a true and correct copy of the foregoing *Ex. Rel.* Complaint for Violation of

3  the State False Claims Act was served by certified mail the 5th day of April, 2010, upon the

4  following:

5                  Attorney General of the State of California

6

7                       By:

8                           Lexi J. Hazam

9                           Lieff, Cabraser, Heimann & Bernstein, LLP
                         Attorneys for *Qui Tam* Plaintiff

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

864392.1                      - 25 -

# CONFIDENTIAL

**MC–060**

| | |
|---|---|
| ATTORNEY *(Name, state bar number, and address)*:<br><br>Lexi J. Hazam (California Bar No. 224457)<br>LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP<br>275 Battery Street, 29th Floor<br>San Francisco, CA 94111<br><br>TELEPHONE NO.: 415-956-1000   FAX NO. *(Optional)*: 415-956-1008<br>E-MAIL ADDRESS *(Optional)*: lhazam@lchb.com<br>ATTORNEY FOR: ☑ PLAINTIFF ☐ OTHER *(specify)*: | **FOR COURT USE ONLY**<br><br><br>ENDORSED<br>FILED<br>ALAMEDA COUNTY<br><br>OCT 2 2 2009<br><br>CLERK OF THE SUPERIOR COURT<br>By   __CHARLOTTE MARIN__<br>Deputy |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF ALAMEDA
STREET ADDRESS: 1225 Fallon Street
MAILING ADDRESS: 1225 Fallon Street
CITY AND ZIP CODE: Oakland, CA 94612
BRANCH NAME: René C. Davidson / Alameda County Courthouse

| | | |
|---|---|---|
| PLAINTIFF:     **[UNDER SEAL]** | | |
| DEFENDANT:     **[UNDER SEAL]** | | |
| **CONFIDENTIAL COVER SHEET–FALSE CLAIMS ACTION** | | **CASE NUMBER:**<br>RG09480749 |

| | |
|---|---|
| **INSTRUCTIONS:** This civil action is brought under the False Claims Act, Government Code section 12650 et seq. The documents filed in this case are under seal and are confidential pursuant to Government Code section 12652(c).<br><br>This Confidential Cover Sheet must be affixed to the caption page of the complaint and to any other paper filed in this case until the seal is lifted.<br><br>You should check with the court to determine whether papers filed in False Claims Act cases must be filed at a particular location. | Seal to expire on *(date)*:<br><br>**UNLESS:**<br>(1) Motion to extend time is pending; or<br>(2) Extended by court order |

1. The document to which this cover sheet is affixed is:
   a. ☑ Complaint for damages for violation of the False Claims Act
   b. ☑ Civil Case Cover Sheet (form 982.2(b)(1))
   c. ☐ Motion for an extension of time to intervene
   d. ☐ Affidavit or other document in support of the motion for an extension of time
   e. ☐ Order extending time to intervene *(specify date order expires)*:
   f. ☐ Other order *(describe)*:


   g. ☐ Notice from the Attorney General of additional prosecuting authority that may have access to the file
   h. ☐ Other *(describe)*:

2. This *Confidential Cover Sheet* and the attached document must each be separately file-stamped by the clerk of the court.

Date: October 22, 2009

Page 1 of 1

Form Adopted for Mandatory Use<br>Judicial Council of California<br>MC-060 [Rev. January 1, 2007]

**CONFIDENTIAL COVER SHEET**
**FALSE CLAIMS ACTION**

Gov. Code, § 12652(c);<br>Cal. Rules of Court, rules 2.570-2.573<br>www.courtinfo.ca.gov

www.accesslaw.com

**CM-010**

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|
| Lexi Hazam (State Bar No. 224457)<br>LIEFF CABRASER HEIMANN & BERNSTEIN, LLP<br>275 Battery Street, 29th Floor, San Francisco, CA 94111-3339<br>TELEPHONE NO.: 415-956-1000    FAX NO.: 415-956-1008<br>ATTORNEY FOR *(Name):* Qui Tam Plaintiffs | |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF **ALAMEDA**
STREET ADDRESS: 1225 Fallon Street
MAILING ADDRESS: 1225 Fallon Street
CITY AND ZIP CODE: Oakland, CA 94612
BRANCH NAME: René C. Davidson / Alameda County Courthouse

CASE NAME:
State of California Ex Rel v. The Bank of New York Mellon Corp., et al.

| CIVIL CASE COVER SHEET | | Complex Case Designation | CASE NUMBER: |
|---|---|---|---|
| ✓ Unlimited<br>(Amount<br>demanded<br>exceeds $25,000) | ☐ Limited<br>(Amount<br>demanded is<br>$25,000 or less) | ☐ Counter    ☐ Joinder<br><br>Filed with first appearance by defendant<br>(Cal. Rules of Court, rule 3.402) | |
| | | | JUDGE:<br>DEPT: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check one box below for the case type that best describes this case:

| Auto Tort | Contract | Provisionally Complex Civil Litigation |
|---|---|---|
| ☐ Auto (22) | ☐ Breach of contract/warranty (06) | *(Cal. Rules of Court, rules 3.400–3.403)* |
| ☐ Uninsured motorist (46) | ☐ Rule 3.740 collections (09) | ☐ Antitrust/Trade regulation (03) |
| **Other PI/PD/WD (Personal Injury/Property** | ☐ Other collections (09) | ☐ Construction defect (10) |
| **Damage/Wrongful Death) Tort** | ☐ Insurance coverage (18) | ☐ Mass tort (40) |
| ☐ Asbestos (04) | ☐ Other contract (37) | ☐ Securities litigation (28) |
| ☐ Product liability (24) | **Real Property** | ☐ Environmental/Toxic tort (30) |
| ☐ Medical malpractice (45) | ☐ Eminent domain/Inverse | ☐ Insurance coverage claims arising from the |
| ☐ Other PI/PD/WD (23) | condemnation (14) | above listed provisionally complex case |
| **Non-PI/PD/WD (Other) Tort** | ☐ Wrongful eviction (33) | types (41) |
| ☐ Business tort/unfair business practice (07) | ☐ Other real property (26) | **Enforcement of Judgment** |
| ☐ Civil rights (08) | **Unlawful Detainer** | ☐ Enforcement of judgment (20) |
| ☐ Defamation (13) | ☐ Commercial (31) | **Miscellaneous Civil Complaint** |
| ☐ Fraud (16) | ☐ Residential (32) | ☐ RICO (27) |
| ☐ Intellectual property (19) | ☐ Drugs (38) | ✓ Other complaint *(not specified above)* (42) |
| ☐ Professional negligence (25) | **Judicial Review** | **Miscellaneous Civil Petition** |
| ☐ Other non-PI/PD/WD tort (35) | ☐ Asset forfeiture (05) | ☐ Partnership and corporate governance (21) |
| **Employment** | ☐ Petition re: arbitration award (11) | ☐ Other petition *(not specified above)* (43) |
| ☐ Wrongful termination (36) | ☐ Writ of mandate (02) | |
| ☐ Other employment (15) | ☐ Other judicial review (39) | |

2. This case ✓ is ☐ is not complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. ☐ Large number of separately represented parties    d. ✓ Large number of witnesses
   b. ✓ Extensive motion practice raising difficult or novel    e. ☐ Coordination with related actions pending in one or more courts
      issues that will be time-consuming to resolve       in other counties, states, or countries, or in a federal court
   c. ✓ Substantial amount of documentary evidence    f. ☐ Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply):* a.✓ monetary    b.✓ nonmonetary; declaratory or injunctive relief    c.☐ punitive
4. Number of causes of action *(specify):*
5. This case ☐ is ✓ is not a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date: October 22, 2009
Lexi Hazam
_____
(TYPE OR PRINT NAME)                                        (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>CM-010 [Rev. July 1, 2007] | **CIVIL CASE COVER SHEET** | Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;<br>Cal. Standards of Judicial Administration, std. 3.10<br>www.courtinfo.ca.gov |
|---|---|---|
| | | American LegalNet, Inc.<br>www.FormsWorkflow.com |

F. ADDENDUM TO CIVIL CASE COVER SHEET

*Unified Rules of the Superior rt of California, County of Alameda*

| Short Title: | Case Number: |
|---|---|
| State of California, Ex Rel v. The Bank of New York Mellon Corp., et al. | |

## CIVIL CASE COVER SHEET ADDENDUM

### THIS FORM IS REQUIRED IN ALL NEW UNLIMITED CIVIL CASE FILINGS IN THE SUPERIOR COURT OF CALIFORNIA, COUNTY OF ALAMEDA

| | | |
|---|---|---|
| [x] Oakland, Rene C. Davidson Alameda County Courthouse (446) | [ ] Hayward Hall of Justice (447) | |
| | [ ] Pleasanton, Gale-Schenone Hall of Justice (448) | |

| | | | | |
|---|---|---|---|---|
| **Civil Case Cover Sheet Category** | **Civil Case Cover Sheet Case Type** | | **Alameda County Case Type and Number** | |
| Auto Tort | Auto tort (22) | [ ] | 34 | Auto tort (G) |
| | | | | Is this an uninsured motorist case? [ ] yes [ ] no |
| Other PI /PD /<br>WD Tort | Asbestos (04) | [ ] | 75 | Asbestos (D) |
| | Product liability (24) | [ ] | 89 | Product liability (not asbestos or toxic tort/environmental) (G) |
| | Medical malpractice (45) | [ ] | 97 | Medical malpractice (G) |
| | Other PI/PD/WD tort (23) | [ ] | 33 | Other PI/PD/WD tort (G) |
| Non - PI /PD /<br>WD Tort | Bus tort / unfair bus. practice (07) | [·] | 79 | Bus tort / unfair bus. practice (G) |
| | Civil rights (08) | [ ] | 80 | Civil rights (G) |
| | Defamation (13) | [ ] | 84 | Defamation (G) |
| | Fraud (16) | [ ] | 24 | Fraud (G) |
| | Intellectual property (19) | [ ] | 87 | Intellectual property (G) |
| | Professional negligence (25) | [ ] | 59 | Professional negligence - non-medical (G) |
| | Other non-PI/PD/WD tort (35) | [ ] | 03 | Other non-PI/PD/WD tort (G) |
| Employment | Wrongful termination (36) | [ ] | 38 | Wrongful termination (G) |
| | Other employment (15) | [ ] | 85 | Other employment (G) |
| | | [ ] | 53 | Labor comm award confirmation |
| | | [ ] | 54 | Notice of appeal - L.C.A. |
| Contract | Breach contract / Wrnty (06) | [ ] | 04 | Breach contract / Wrnty (G) |
| | Collections (09) | [ ] | 81 | Collections (G) |
| | Insurance coverage (18) | [ ] | 86 | Ins. coverage - non-complex (G) |
| | Other contract (37) | [ ] | 98 | Other contract (G) |
| Real Property | Eminent domain / Inv Cdm (14) | [ ] | 18 | Eminent domain / Inv Cdm (G) |
| | Wrongful eviction (33) | [ ] | 17 | Wrongful eviction (G) |
| | Other real property (26) | [ ] | 36 | Other real property (G) |
| Unlawful Detainer | Commercial (31) | [ ] | 94 | Unlawful Detainer - commercial |
| | Residential (32) | [ ] | 47 | Unlawful Detainer - residential |
| | Drugs (38) | [ ] | 21 | Unlawful detainer - drugs |
| Judicial Review | Asset forfeiture (05) | [ ] | 41 | Asset forfeiture |
| | Petition re: arbitration award (11) | [ ] | 62 | Pet. re: arbitration award |
| | Writ of Mandate (02) | [ ] | 49 | Writ of mandate |
| | | | | Is this a CEQA action (Publ.Res.Code section 21000 et seq) [ ] Yes [ ] No |
| | Other judicial review (39) | [ ] | 64 | Other judicial review |
| Provisionally<br>Complex | Antitrust / Trade regulation (03) | [ ] | 77 | Antitrust / Trade regulation |
| | Construction defect (10) | [ ] | 82 | Construction defect |
| | Claims involving mass tort (40) | [ ] | 78 | Claims involving mass tort |
| | Securities litigation (28) | [ ] | 91 | Securities litigation |
| | Toxic tort / Environmental (30) | [ ] | 93 | Toxic tort / Environmental |
| | Ins covrg from cmplx case type (41) | [ ] | 95 | Ins covrg from complex case type |
| Enforcement of<br>Judgment | Enforcement of judgment (20) | [ ] | 19 | Enforcement of judgment |
| | | [ ] | 08 | Confession of judgment |
| Misc Complaint | RICO (27) | [ ] | 90 | RICO (G) |
| | Partnership / Corp. governance (21) | [ ] | 88 | Partnership / Corp. governance (G) |
| | Other complaint (42) | [x] | 68 | All other complaints (G) |
| Misc. Civil Petition | Other petition (43) | [ ] | 06 | Change of name |
| | | [ ] | 69 | Other petition |

Unlawful Detainer extra column: Is the deft. in possession of the property? [ ] Yes [ ] No



# Superior Court of California, County of Alameda
## Alternative Dispute Resolution (ADR) Information Packet

---

The person who files a civil lawsuit (plaintiff) must include the ADR Information Packet with the complaint when serving the defendant. Cross complainants must serve the ADR Information Packet on any new parties named to the action.

---

The Court *strongly encourages* the parties to use some form of ADR before proceeding to trial. You may choose ADR by:

- Indicating your preference on Case Management Form CM-110;

- Filing the Stipulation to ADR and Delay Initial Case Management Conference for 90 Days (a local form included with the information packet); or

- Agree to ADR at your Initial Case Management Conference.

**QUESTIONS?** Call (510) 891-6055. Email adrprogram@alameda.courts.ca.gov
Or visit the court's website at http://www.alameda.courts.ca.gov/adr

---

### What Are The Advantages Of Using ADR?

- *Faster* –Litigation can take years to complete but ADR usually takes weeks or months.

- *Cheaper* – Parties can save on attorneys' fees and litigation costs.

- *More control and flexibility* – Parties choose the ADR process appropriate for their case.

- *Cooperative and less stressful* – In mediation, parties cooperate to find a mutually agreeable resolution.

- *Preserve Relationships* – A mediator can help you effectively communicate your interests and point of view to the other side. This is an important benefit when you want to preserve a relationship.

### What Is The Disadvantage Of Using ADR?

- *You may go to court anyway* – If you cannot resolve your dispute using ADR, you may still have to spend time and money resolving your lawsuit through the courts.

### What ADR Options Are Available?

- *Mediation* – A neutral person (mediator) helps the parties communicate, clarify facts, identify legal issues, explore settlement options, and agree on a solution that is acceptable to all sides.

  o **Court Mediation Program:** Mediators do not charge fees for the first two hours of mediation. If parties need more time, they must pay the mediator's regular fees.

Some mediators ask for a deposit before mediation starts which is subject to a refund for unused time.

- o **Private Mediation:** This is mediation where the parties pay the mediator's regular fees and may choose a mediator outside the court's panel.

- *Arbitration* – A neutral person (arbitrator) hears arguments and evidence from each side and then decides the outcome of the dispute. Arbitration is less formal than a trial and the rules of evidence are often relaxed. Arbitration is effective when the parties want someone other than themselves to decide the outcome.

  - o **Judicial Arbitration Program** (non-binding): The judge can refer a case or the parties can agree to use judicial arbitration. The parties select an arbitrator from a list provided by the court. If the parties cannot agree on an arbitrator, one will be assigned by the court. There is no fee for the arbitrator. The arbitrator must send the decision (award of the arbitrator) to the court. The parties have the right to reject the award and proceed to trial.

  - o **Private Arbitration** (binding and non-binding) occurs when parties involved in a dispute either agree or are contractually obligated. This option takes place outside of the courts and is normally binding meaning the arbitrator's decision is final.

### Mediation Service Programs In Alameda County

Low cost mediation services are available through non-profit community organizations. Trained volunteer mediators provide these services. Contact the following organizations for more information:

**SEEDS Community Resolution Center**
1968 San Pablo Avenue, Berkeley, CA 94702-1612
Telephone: (510) 548-2377    Website: www.seedscrc.org
Their mission is to provide mediation, facilitation, training and education programs in our diverse communities – Services that Encourage Effective Dialogue and Solution-making.

**Center for Community Dispute Settlement**
291 McLeod Street, Livermore, CA 94550
Telephone: (925) 373-1035    Website: www.trivalleymediation.com
CCDS provides services in the Tri-Valley area for all of Alameda County.

*For Victim/Offender Restorative Justice Services*
**Catholic Charities of the East Bay: Oakland**
433 Jefferson Street, Oakland, CA 94607
Telephone: (510) 768-3100    Website: www.cceb.org
Mediation sessions involve the youth, victim, and family members work toward a mutually agreeable restitution agreement.

ALA ADR-001

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address) | FOR COURT USE ONLY |
|---|---|
| TELEPHONE NO.: FAX NO. (Optional): E-MAIL ADDRESS (Optional): ATTORNEY FOR (Name): | |
| SUPERIOR COURT OF CALIFORNIA, ALAMEDA COUNTY STREET ADDRESS: MAILING ADDRESS: CITY AND ZIP CODE: BRANCH NAME | |
| PLAINTIFF/PETITIONER: DEFENDANT/RESPONDENT: | |
| STIPULATION TO ATTEND ALTERNATIVE DISPUTE RESOLUTION (ADR) AND DELAY INITIAL CASE MANAGEMENT CONFERENCE FOR 90 DAYS | CASE NUMBER: |

**INSTRUCTIONS: All applicable boxes must be checked, and the specified information must be provided.**

This stipulation is effective when:

- All parties have signed and filed this stipulation with the Case Management Conference Statement at least 15 days before the initial case management conference.
- A copy of this stipulation has been received by the ADR Program Administrator, 1225 Fallon Street, Oakland, CA 94612.

1. Date complaint filed: _____. An **Initial Case Management Conference** is scheduled for:

   Date:              Time:              Department:

2. Counsel and all parties certify they have met and conferred and have selected the following ADR process (check one):

   ☐ Court mediation      ☐ Judicial arbitration

   ☐ Private mediation      ☐ Private arbitration

3. All parties agree to complete ADR within 90 days and certify that:

   a. No party to the case has requested a complex civil litigation determination hearing;
   b. All parties have been served and intend to submit to the jurisdiction of the court;
   c. All parties have agreed to a specific plan for sufficient discovery to make the ADR process meaningful;
   d. Copies of this stipulation and self-addressed stamped envelopes are provided for returning endorsed filed stamped copies to counsel and all parties;
   e. Case management statements are submitted with this stipulation;
   f. All parties will attend ADR conferences; and,
   g. The court will not allow more than 90 days to complete ADR.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date:

_____     ▶ _____

(TYPE OR PRINT NAME)             (SIGNATURE OF PLAINTIFF)

Date:

_____     ▶ _____

(TYPE OR PRINT NAME)             (SIGNATURE OF ATTORNEY FOR PLAINTIFF)

Page 1 of 2

Form Approved for Mandatory Use
Superior Court of California,
County of Alameda
ALA ADR-001 [New January 1, 2010]

STIPULATION TO ATTEND ALTERNATIVE DISPUTE RESOLUTION (ADR)
AND DELAY INITIAL CASE MANAGEMENT CONFERENCE FOR 90 DAYS

Cal. Rules of Court,
rule 3.221(a)(4)

ALA ADR-001

| PLAINTIFF/PETITIONER: | CASE NUMBER.: |
|---|---|
| DEFENDANT/RESPONDENT: | |

Date:

_____      ▶ _____
(TYPE OR PRINT NAME)                         (SIGNATURE OF DEFENDANT)

Date:

_____      ▶ _____
(TYPE OR PRINT NAME)                         (SIGNATURE OF ATTORNEY FOR DEFENDANT)

Form Approved for Mandatory Use
Superior Court of California,
County of Alameda
ALA ADR-001 [New January 1, 2010]

**STIPULATION TO ATTEND ALTERNATIVE DISPUTE RESOLUTION (ADR)
AND DELAY INITIAL CASE MANAGEMENT CONFERENCE FOR 90 DAYS**

Cal. Rules of Court,
rule 3.221(a)(4)



1  NIALL P. McCARTHY (SBN 160175)
   nmccarthy@cpmlegal.com
2  STEVEN N. WILLIAMS (SBN 175849)
   swilliams@cpmlegal.com
3  ERIC J. BUESCHER (SBN 271323)
   ebuescher@cpmlegal.com
4  COTCHETT, PITRE & McCARTHY, LLP
   840 Malcolm Road
5  Burlingame, CA 94010
   Telephone:    650-697-6000
6  Facsimile:    650-697-0577

7  *Attorneys for Los Angeles County*
   *Employees Retirement Association; and*
8  *San Diego County Employees*
   *Retirement Association*

9

F I L E D
ALAMEDA COUNTY

OCT 1 9 2011

CLERK OF THE SUPERIOR COURT
By_____
                              Deputy

10                IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

11                        IN AND FOR THE COUNTY OF ALAMEDA

12 | In re BANK OF NEW YORK MELLON         | Case No. RG09480749
   | **CORPORATION FALSE CLAIMS ACT**
13 | **FOREIGN EXCHANGE LITIGATION,** *et*
   | *al., ex rel.* **FX ANALYTICS,**      | **NOTICE OF INTERVENTION**
14 |
15 |                 Plaintiffs,
   |                                        | Judge:      Hon. Robert B. Freeman
16 |       vs.                             | Department: 20
17 | **THE BANK OF NEW YORK MELLON**       | Action Filed: November 2, 2009
   | **CORPORATION,** and DOES 1 through 100, |               (Under Seal)
18 | inclusive,                            | Trial Date:  None Set
19 |
   |                 Defendants.
20

21

22

23

24

25

26

27

28

LAW OFFICES
COTCHETT, PITRE
& McCARTHY, LLP

**NOTICE OF INTERVENTION**; Case No. RG09480749

1            <u>NOTICE OF INTERVENTION</u>

2  **TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

3      **PLEASE TAKE NOTICE** that pursuant to the California False Claims Act,

4  Government Code section 12652(c)(6)(A), Los Angeles County Employees Retirement

5  Association ("LACERA") and San Diego County Employees Retirement Association

6  ("SDCERA") hereby give notice of their decision to intervene in and to proceed with this action.

7

8                              **SEAL**

9      Concerning the submission of a proposed order indicating the documents that are to be

10 unsealed or to remain sealed as required by California Rules of Court, Rule 2.573(d), LACERA

11 and SDCERA are filing herewith the following:

12     (1)    Application Under CRD 2.573(d) and Gov. Code § 12652(c)(6)(A) for an Order

13 Designating Documents To Be Unsealed and Documents to Remain Under Seal and

14 Memorandum of Points and Authorities In Support Thereof; and

15     (2)    [Proposed] Order Designating Documents To Be Unsealed and Documents to

16 Remain Under Seal.

17 Respectfully Submitted,

18 Dated: October 14, 2011            **COTCHETT, PITRE & McCARTHY, LLP**

19

20                 By:    *Steve William / CJB*

21                            STEVEN N. WILLIAMS

22                   *Attorneys for Los Angeles County Employees Retirement Association; and San Diego County Employees Retirement Association*

23

24 Dated: October *5*, 2011         **ROBERT S. VAN DER VOLGEN Jr., Chief Counsel**

25                 By:

26                    ROBERT S. VAN DER VOLGEN Jr., Chief Counsel
                           JOHANNA M. FONTENOT, Senior Staff Counsel

27                            MICHAEL D. HERRERA, Senior Staff Counsel

28                 *Attorneys for Los Angeles County Employees Retirement Association*

**NOTICE OF INTERVENTION;** Case No. RG09480749          1



1  CARMEN A. TRUTANICH, City Attorney (SBN 86629)
   ALAN L. MANNING, Assistant City Attorney (SBN 077285)
2  MARIE McTEAGUE, Deputy City Attorney (SBN 136841)
   OFFICE OF THE LOS ANGELES CITY ATTORNEY
3  360 E. Second Street, Room 400
   Los Angeles, CA ·90012
4  Telephone:    213-978-4400
   Facsimile:    213-978-4484
5
   *Los Angeles Department of Water and Power Employees' Retirement Plan*
6

7

8          IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

9              IN AND FOR THE COUNTY OF ALAMEDA

10

   In re BANK OF NEW YORK MELLON              Case No. RG09480749
11 CORPORATION FALSE CLAIMS ACT
   FOREIGN EXCHANGE LITIGATION, *et*
12 *al., ex rel.* FX ANALYTICS,              NOTICE OF INTERVENTION

13
                    Plaintiffs,
14                                            Judge:       Hon. Robert B. Freeman
        vs.                                   Department:  20
15
16 THE BANK OF NEW YORK MELLON                Action Filed: November 2, 2009
   CORPORATION, and DOES 1 through 100,                    (Under Seal)
17 inclusive,                                 Trial Date:   None Set

18                  Defendants.

19

20

21

22

23

24

25

26

27

28

   NOTICE OF INTERVENTION; Case No. RG09480749

FILED
ALAMEDA COUNTY

OCT 1 9 2011

CLERK OF THE SUPERIOR COURT
By_____
                    Deputy

| | |
|---|---|
| 1 | **NOTICE OF INTERVENTION** |
| 2 | **TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:** |
| 3 |     **PLEASE TAKE NOTICE** that pursuant to the California False Claims Act, |
| 4 | Government Code section 12652(c)(6)(A), Los Angeles Department of Water and Power |
| 5 | Employees' Retirement Plan ("WPERP") hereby give notice of its decision to intervene in and to |
| 6 | proceed with this action. |
| 7 | |
| 8 | **SEAL** |
| 9 |     Concerning the submission of a proposed order indicating the documents that are to be |
| 10 | unsealed or to remain sealed as required by California Rules of Court, Rule 2.573(d), WPERP |
| 11 | are filing herewith the following: |
| 12 |     (1)    Application Under CRD 2.573(d) and Gov. Code § 12652(c)(6)(A) for an Order |
| 13 | Designating Documents To Be Unsealed and Documents to Remain Under Seal and |
| 14 | Memorandum of Points and Authorities In Support Thereof; and |
| 15 |     (2)    [Proposed] Order Designating Documents To Be Unsealed and Documents to |
| 16 | Remain Under Seal. |
| 17 | Respectfully Submitted, |
| 18 | Dated: October 14, 2011     **OFFICE OF THE LOS ANGELES CITY ATTORNEY** |
| | CARMEN A. TRUTANICH, City Attorney |
| 19 | ALAN L. MANNING, Assistant City Attorney |
| | MARIE McTEAGUE, Deputy City Attorney |
| 20 | |
| 21 | |
| | By: _Marie McTeague_ |
| 22 | MARIE McTEAGUE |
| 23 | *Attorneys for Los Angeles Department of Water and Power* |
| 24 | *Employees' Retirement Plan* |
| 25 | |
| 26 | |
| 27 | |
| 28 | |

**NOTICE OF INTERVENTION**; Case No. RG09480749    1



1  NIALL P. McCARTHY (SBN 160175)
   nmccarthy@cpmlegal.com
2  STEVEN N. WILLIAMS (SBN 175849)
   swilliams@cpmlegal.com
3  ERIC J. BUESCHER (SBN 271323)
   ebuescher@cpmlegal.com
4  COTCHETT, PITRE & McCARTHY, LLP
   840 Malcolm Road
5  Burlingame, CA 94010
   Telephone:    650-697-6000
6  Facsimile:    650-697-0577

7  *Attorneys Stanislaus County*
   *Employees' Retirement Association*
8

**F I L E D**
**ALAMEDA COUNTY**

OCT 1 9 2011

CLERK OF THE SUPERIOR COURT
By_____
                          Deputy

9              IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

10                      IN AND FOR THE COUNTY OF ALAMEDA

11  In re **BANK OF NEW YORK MELLON**      | Case No. RG09480749
    **CORPORATION FALSE CLAIMS ACT**
12  **FOREIGN EXCHANGE LITIGATION,** *et*
    *al., ex rel.* **FX ANALYTICS,**         **NOTICE OF INTERVENTION**
13

14                      Plaintiffs,

                                             Judge:       Hon. Robert B. Freeman
15       vs.                                 Department:   20

16  **THE BANK OF NEW YORK MELLON**        Action Filed:  November 2, 2009
    **CORPORATION,** and DOES 1 through 100,                (Under Seal)
17  inclusive,                              Trial Date:   None Set

18                      Defendants.

19

20

21

22

23

24

25

26

27

28

LAW OFFICES
COTCHETT, PITRE
& McCARTHY, LLP

**NOTICE OF INTERVENTION;** Case No. RG09480749

1                **NOTICE OF INTERVENTION**

2  **TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD**:

3       **PLEASE TAKE NOTICE** that pursuant to the California False Claims Act,

4  Government Code section 12652(c)(6)(A), Stanislaus County Employees' Retirement

5  Association ("StanCERA") hereby gives notice of its decision to intervene in and to proceed

6  with this action.

7

8                    **SEAL**

9       Concerning the submission of a proposed order indicating the documents that are to be

10  unsealed or to remain sealed as required by California Rules of Court, Rule 2.573(d), StanCERA

11  is filing herewith the following:

12      (1)     Application Under CRD 2.573(d) and Gov. Code § 12652(c)(6)(A) for an Order

13  Designating Documents To Be Unsealed and Documents to Remain Under Seal and

14  Memorandum of Points and Authorities In Support Thereof; and

15      (2)     [Proposed] Order Designating Documents To Be Unsealed and Documents to

16  Remain Under Seal.

17  Respectfully Submitted,

18  Dated: October 14, 2011          **COTCHETT, PITRE & McCARTHY, LLP**

19

20               By:                 

21                             STEVEN N. WILLIAMS

22                 *Attorneys for Stanislaus County Employees'*
                   *Retirement Association*

23

24  Dated: October 14, 2011       **FRED A. SILVA, General Counsel, StanCERA**

25

26               By:                 
                       FRED A. SILVA

27                    DAMRELL, NELSON, SCHRIMP,
                    PALLIOS, PACHER & SILVA

28

**NOTICE OF INTERVENTION**; Case No. RG09480749              1



1  NIALL P. McCARTHY (SBN 160175)
  nmccarthy@cpmlegal.com
2  STEVEN N. WILLIAMS (SBN 175849)
  swilliams@cpmlegal.com
3  ERIC J. BUESCHER (SBN 271323)
  ebuescher@cpmlegal.com
4  **COTCHETT, PITRE & McCARTHY, LLP**
  840 Malcolm Road
5  Burlingame, CA 94010
  Telephone:  650-697-6000
6  Facsimile:   650-697-0577

7  *Attorneys Stanislaus County*
  *Employees' Retirement Association*
8

**F I L E D**
**ALAMEDA COUNTY**

OCT 2 0 2011

CLERK OF THE SUPERIOR COURT
By: _____
           Deputy

9      **IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA**

10         **IN AND FOR THE COUNTY OF ALAMEDA**

| | |
|---|---|
| 11  In re **BANK OF NEW YORK MELLON CORPORATION FALSE CLAIMS ACT FOREIGN EXCHANGE LITIGATION,** *et al., ex rel.* **FX ANALYTICS,** | Case No. RG09480749 |
| 13 | **ORDER DESIGNATING DOCUMENTS TO BE UNSEALED AND DOCUMENTS TO REMAIN UNDER SEAL** |
| 14         Plaintiffs, | |
| 15    vs. | |
| 16  **THE BANK OF NEW YORK MELLON CORPORATION,** and DOES 1 through 100, inclusive, | Judge:     Hon. Robert B. Freeman <br> Department:  20 |
| 18         Defendants. | Action Filed: November 2, 2009 <br>           (Under Seal) <br> Trial Date:  None Set |

20

21

22

23

24

25

26

27

28

**ORDER DESIGNATING DOCUMENTS TO BE UNSEALED AND DOCUMENTS TO REMAIN UNDER SEAL; Case No. RG09480749**

LAW OFFICES
COTCHETT, PITRE
& McCARTHY, LLP

1    **ORDER**

2    Based upon the Notice of Intervention of Stanislaus County Employees' Retirement

3    Association and the Application under California Rule of Court 2.573(d) and Gov. Code §

4    12652(c)(6)(A), the Application for an Order Designating Documents to be Unsealed and

5    Documents to Remain Under Seal is GRANTED.

6    ~ The Court ORDERS the following documents to be UNSEALED:

7    (1)    the Second Amended Complaint;

8    (2)    the Notice of Intervention of Stanislaus County Employees Retirement

9    Association; and

10    (3)    this Order designating documents to be unsealed and documents to remain sealed.

11    The Court further ORDERS that all other contents of the Court's file in this action filed

12    through October 17, 2011 shall remain UNDER SEAL and shall not be made public or served

13    upon any person.

14

15    Dated: October _20_, 2011

16    Hon. Robert B. Freedman
     Judge of the Superior Court

17

18

19

20

21

22

23

24

25

26

27

28

**ORDER DESIGNATING DOCUMENTS TO BE UNSEALED AND
DOCUMENTS TO REMAIN UNDER SEAL; Case No. RG09480749**                    1

1  CARMEN A. TRUTANICH, City Attorney (SBN 86629)
   ALAN L. MANNING, Assistant City Attorney (SBN 077285)
2  MARIE McTEAGUE, Deputy City Attorney (SBN 136841)
   OFFICE OF THE LOS ANGELES CITY ATTORNEY
3  360 E. Second Street, Room 400
   Los Angeles, CA 90012
4  Telephone:  213-978-4400
   Facsimile:  213-978-4484
5
   *Los Angeles Department of Water and Power Employees' Retirement Plan*
6
7
8          IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA
9              IN AND FOR THE COUNTY OF ALAMEDA
10
   In re **BANK OF NEW YORK MELLON**          Case No. RG09480749
11 **CORPORATION FALSE CLAIMS ACT**
   **FOREIGN EXCHANGE LITIGATION,** *et*
12 *al., ex rel.* **FX ANALYTICS,**                       **ORDER**
                                          **DESIGNATING DOCUMENTS TO**
13                    Plaintiffs,          **BE UNSEALED AND DOCUMENTS**
                                          **TO REMAIN UNDER SEAL**
14
       vs.
15                                        Judge:      Hon. Robert B. Freeman
   **THE BANK OF NEW YORK MELLON**        Department:  20
16 **CORPORATION,** and DOES 1 through 100,
   inclusive,                             Action Filed:  November 2, 2009
17                                                      (Under Seal)
                    Defendants.           Trial Date:  None Set
18
19
20
21
22
23
24
25
26
27
28
   _____
         **ORDER DESIGNATING DOCUMENTS TO BE UNSEALED AND**
   **DOCUMENTS TO REMAIN UNDER SEAL; Case No. RG09480749**

F I L E D
ALAMEDA COUNTY

OCT 2 0 2011

CLERK OF THE SUPERIOR COURT
By _____ Deputy

| | |
|---|---|
| 1 | **ORDER** |
| 2 | Based upon the Notice of Intervention of Los Angeles Department of Water and Power |
| 3 | Employees' Retirement Plan and the Application under California Rule of Court 2.573(d) and |
| 4 | Gov. Code § 12652(c)(6)(A), the Application for an Order Designating Documents to be |
| 5 | Unsealed and Documents to Remain Under Seal is GRANTED. |
| 6 | The Court ORDERS the following documents to be UNSEALED: |
| 7 | (1) the Second Amended Complaint; |
| 8 | (2) the Notice of Los Angeles Department of Water and Power Employees' |
| 9 | Retirement Plan; and |
| 10 | (3) this Order designating documents to be unsealed and documents to remain sealed. |
| 11 | The Court further ORDERS that all other contents of the Court's file in this action filed |
| 12 | through October 17, 2011 shall remain UNDER SEAL and shall not be made public or served |
| 13 | upon any person. |
| 14 | |
| 15 | Dated: October **20**, 2011 |
| 16 | Hon. Robert B. Freedman |
| | Judge of the Superior Court |
| 17 | |
| 18 | |
| 19 | |
| 20 | |
| 21 | |
| 22 | |
| 23 | |
| 24 | |
| 25 | |
| 26 | |
| 27 | |
| 28 | **ORDER DESIGNATING DOCUMENTS TO BE UNSEALED AND**    1 |
| | **DOCUMENTS TO REMAIN UNDER SEAL**; Case No. RG09480749 |

1   NIALL P. McCARTHY (SBN 160175)
    nmccarthy@cpmlegal.com
2   STEVEN N. WILLIAMS (SBN 175849)
    swilliams@cpmlegal.com
3   ERIC J. BUESCHER (SBN 271323)
    ebuescher@cpmlegal.com
4   COTCHETT, PITRE & McCARTHY, LLP
    840 Malcolm Road
5   Burlingame, CA 94010
    Telephone:   650-697-6000
6   Facsimile:   650-697-0577

7   *Attorneys for Los Angeles County*
    *Employees Retirement Association; and*
8   *San Diego County Employees*
    *Retirement Association*

9

**F I L E D**
**ALAMEDA COUNTY**

OCT 2 0 2011

CLERK OF THE SUPERIOR COURT
By_____ Deputy



10       IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

11            IN AND FOR THE COUNTY OF ALAMEDA

12   In re **BANK OF NEW YORK MELLON**     Case No. RG09480749
    **CORPORATION FALSE CLAIMS ACT**
13   **FOREIGN EXCHANGE LITIGATION,** *et*
    *al., ex rel.* **FX ANALYTICS,**
14                           **ORDER**
                           **DESIGNATING DOCUMENTS TO**
15            Plaintiffs,       **BE UNSEALED AND DOCUMENTS**
                           **TO REMAIN UNDER SEAL**
16     vs.
                         Judge:      Hon. Robert B. Freeman
17   **THE BANK OF NEW YORK MELLON**   Department:   20
    **CORPORATION,** and DOES 1 through 100,
18   inclusive,                Action Filed: November 2, 2009
19                                (Under Seal)
           Defendants.      Trial Date:   None Set
20

21

22

23

24

25

26

27

28

          **ORDER DESIGNATING DOCUMENTS TO BE UNSEALED AND**
    **DOCUMENTS TO REMAIN UNDER SEAL; Case No. RG09480749**

LAW OFFICES
COTCHETT, PITRE
& MCCARTHY, LLP

## ORDER

Based upon the Notice of Intervention of Los Angeles County Employees Retirement Association and San Diego County Employees Retirement Association and the Application under California Rule of Court 2.573(d) and Gov. Code § 12652(c)(6)(A), the Application for an Order Designating Documents to be Unsealed and Documents to Remain Under Seal is GRANTED.

The Court ORDERS the following documents to be UNSEALED:

(1)     the Second Amended Complaint;

(2)     the Notice of Intervention of Los Angeles County Employees Retirement Association and San Diego County Employees Retirement Association; and

(3)     this Order designating documents to be unsealed and documents to remain sealed.

The Court further ORDERS that all other contents of the Court's file in this action filed through October 17, 2011 shall remain UNDER SEAL and shall not be made public or served upon any person.

Dated: October **10**, 2011

_____
Hon. Robert B. Freedman
Judge of the Superior Court

. **ORDER DESIGNATING DOCUMENTS TO BE UNSEALED AND DOCUMENTS TO REMAIN UNDER SEAL**; Case No. RG09480749          1

# CONFIDENTIAL

**MC-060**

| ATTORNEY (Name, state bar number, and address): | FOR COURT USE ONLY |
|---|---|
| Lexi J. Hazam (California Bar No. 224457)<br>LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP<br>275 Battery Street, 29th Floor<br>San Francisco, CA 94111 | |

TELEPHONE NO.: 415-956-1000     FAX NO. (Optional): 415-956-1008

E-MAIL ADDRESS (Optional): lhazam@lchb.com

ATTORNEY FOR: [✓] PLAINTIFF [ ] OTHER (specify):

---

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF ALAMEDA**

STREET ADDRESS: 1225 Fallon Street

MAILING ADDRESS: 1225 Fallon Street

CITY AND ZIP CODE: Oakland, CA 94612

BRANCH NAME: René C. Davidson / Alameda County Courthouse

PLAINTIFF:     [UNDER SEAL]

DEFENDANT:     [UNDER SEAL]

| | CASE NUMBER: |
|---|---|
| **CONFIDENTIAL COVER SHEET—FALSE CLAIMS ACTION** | RG09480749 |

---

| INSTRUCTIONS: This civil action is brought under the False Claims Act, Government Code section 12650 et seq. The documents filed in this case are under seal and are confidential pursuant to Government Code section 12652(c).<br><br>This Confidential Cover Sheet must be affixed to the caption page of the complaint and to any other paper filed in this case until the seal is lifted.<br><br>You should check with the court to determine whether papers filed in False Claims Act cases must be filed at a particular location. | Seal to expire on (date):<br>July 15, 2010<br>UNLESS:<br>(1) Motion to extend time is pending; or<br>(2) Extended by court order |
|---|---|

1. The document to which this cover sheet is affixed is:
   a. [ ] Complaint for damages for violation of the False Claims Act
   b. [ ] Civil Case Cover Sheet (form 982.2(b)(1))
   c. [ ] Motion for an extension of time to intervene
   d. [ ] Affidavit or other document in support of the motion for an extension of time
   e. [ ] Order extending time to intervene (specify date order expires):
   f. [✓] Other order (describe):

   Order Granting Plaintiff/Relator's Application to Amend Complaint

   g. [ ] Notice from the Attorney General of additional prosecuting authority that may have access to the file
   h. [ ] Other (describe):

2. This Confidential Cover Sheet and the attached document must each be separately file-stamped by the clerk of the court.

Date: April 5, 2010

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>MC-060 [Rev. January 1, 2007] | **CONFIDENTIAL COVER SHEET**<br>**FALSE CLAIMS ACTION** | Gov. Code, § 12652(c);<br>Cal. Rules of Court, rules 2.570-2.573<br>www.courtinfo.ca.gov |
|---|---|---|

www.accesslaw.com

1 | Richard M. Heimann (State Bar No. 063607)
Lexi J. Hazam (State Bar No. 224457)
2 | Robert L. Lieff (State Bar No. 037568) (Of Counsel)
LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP
3 | Embarcadero Center West
275 Battery Street, 29th Floor
4 | San Francisco, CA 94111-3339
Telephone: (415) 956-1000
5 | Facsimile: (415) 956-1008

6 | Steven E. Fineman (State Bar No. 140335)
Daniel P. Chiplock
7 | LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP
250 Hudson Street, 8th Floor
8 | New York, NY 10013-1413
Telephone: (212) 355-9500
9 | Facsimile: (212) 355-9592

10 | Philip R. Michael
MICHAEL LAW GROUP
11 | 326 West 246th Street
Riverdale, NY 10471
12 | Telephone: (917) 689-1734
Facsimile: (718) 601-4052
13 | prmpjab@gmail.com

14 | Michael P. Thornton
Michael A. Lesser
15 | THORNTON & NAUMES LLP
100 Summer Street, 30th Floor
16 | Boston, MA 02110
Telephone: (617) 720-1333
17 | Facsimile: (617) 720-2445

18 | Attorneys for Plaintiff/Relator

19 | SUPERIOR COURT OF THE STATE OF CALIFORNIA

20 | COUNTY OF ALAMEDA

21 | THE CITY OF OAKLAND and the | Case No. RG09480749
OAKLAND POLICE AND FIRE
22 | RETIREMENT SYSTEM FUND et al., *Ex* | Assigned to: Hon. Robert B. Freedman
*rel.* FX ANALYTICS, | Dept. 20
23 |
Plaintiff/Relator, | **PROOF OF SERVICE OF *EX. REL.***
24 | | **SECOND AMENDED COMPLAINT FOR**
v. | **VIOLATION OF THE STATE FALSE**
25 | | **CLAIMS ACT**
THE BANK OF NEW YORK MELLON |
26 | CORPORATION, and DOES 1 through | Complaint filed: November 2, 2009 (under seal)
100, inclusive, | Trial Date: None
27 |
Defendants. |
28 |

864642.1

PROOF OF SERVICE VIA U.S. MAIL

1      I am a citizen of the United States and employed in San Francisco County, California. I

2 am over the age of eighteen years and not a party to the within-entitled action. My business

3 address is 275 Battery Street, 29th Floor, San Francisco, California, 94111-3339.

4      On April 5, 2010, I served the attached document described as *EX. REL.* SECOND

5 AMENDED COMPLAINT FOR VIOLATION OF THE STATE FALSE CLAIMS ACT on the

6 interested parties in this action BY MAIL, by placing true copies enclosed in a sealed envelope

7 addressed to each addressee as listed below.

8      I am readily familiar with Lieff, Cabraser, Heimann & Bernstein, LLP's practice for

9 collection and processing of documents for mailing with the United States Postal Service, and that

10 practice is that the documents are deposited with the United States Postal Service with postage

11 fully prepaid the same day as the day of collection in the ordinary course of business.

12      On April 5, 2010, I served copies the following documents entitled:

13          **1)**    ***EX. REL.* SECOND AMENDED COMPLAINT FOR VIOLATION**

14              **OF THE STATE FALSE CLAIMS ACT**

15          **2)**    **and this PROOF OF SERVICE VIA U.S. MAIL**

16 via U.S. Mail on:

17                  Jeffrey L. Simpton
                 Deputy Attorney General

18                  Office of the Attorney General
                 1300 I Street, Suite 125

19                  Sacramento, CA 95814

20 COPIES TO:

21                  Please see attached service list.

22

23      I declare under penalty of perjury that the foregoing is true and correct. Executed in San

24 Francisco, California on April 5, 2010.

25

26

27                            Anthony McDaniel

28

864642.1                - 1 -

1

## SERVICE LIST

2   John R. Russo
  Barbara J. Parker

3   Tracy A. Chriss
  Oakland City Attorney's Office

4   1 Frank H. Ogawa Plaza, 6th Floor
  Oakland, CA 94612

5
  Fred A. Silva

6   Clinton P. Walker
  Damrell, Nelson, Schrimp,

7     Pallios, Pacher & Silva
  1601 I Street, Fifth Floor

8   Modesto, CA 95354

9   Carmen A. Trutanich
  Alan L. Manning

10   Brian I. Cheng
  Office of the City Attorney

11   360 E. Second Street, Suite 400
  Los Angeles, CA 90012

12
  Jeanine B. Nadel

13   County Counsel
  County of Mendocino Administration Center

14   501 Lo Gap Road, Room 1030
  Ukiah, CA 95482

15
  James N. Fincer

16   County Counsel
  County of Merced

17   222 M Street, Room 309
  Merced, CA 95340

18
  John Sansone

19   County Counsel
  County of San Diego

20   County Administration Center
  1600 Pacific Highway, Room 355

21   San Diego, CA 92101

22   Johanna M. Fontenot
  Senior Staff Counsel

23   LACERA
  300 N. Lake Avenue, Suite 620

24   Pasadena, CA 91101

25   Larry G. Raskin
  Supervising Deputy Attorney General

26   California Attorney General
  P.O. Box 944255

27   Sacramento, CA 94244-2550

28

Michael A. Lesser
Thornton & Naumes, LLP
100 Summer Street, 30th Floor
Boston, MA 02110

Philip R. Michael
Michael Law Group
405 Lexington Avenue, 7th Floor
New York, NY 10174-0700

Warren J. Jensen
County Counsel
County of San Luis Obispo
County Government Center, Room D320
1055 Monterey Street
San Luis Obispo, CA 93408

Kathleen Bates-Lange
County Counsel
Judith D. Chapman
Deputy County Counsel
County of Tulare
2900 West Burrell Avenue
Visalia, CA 93291

Alan A. Blakeboro
Counsel for SBCERS
Reicker, Pfau, Pyle & McRoy, LLP
1421 State Street, Suite B
P.O. Box 1470
Santa Barbara, CA 93101

864642.1

SERVICE LIST



**CERTIFIED MAIL**

7011 1150 0001 8628 1459

**COTCHETT, PITRE & McCARTHY, LLP**
SAN FRANCISCO AIRPORT OFFICE CENTER
840 MALCOLM ROAD
BURLINGAME, CA 94010

Bank of New York Mellon
C/o CT Corporation Systems
116 Pine Street
Suite 320
Harrisburg, PA 17101

**RETURN RECEIPT**
**REQUESTED**

| | |
|---|---|
| 1 | **BINGHAM McCUTCHEN LLP**<br>David M. Balabanian (SBN 37368) |
| 2 | Three Embarcadero Center<br>San Francisco, California 94111-4067 |
| 3 | Telephone: 415.393.2000<br>Facsimile: 415.393.2286 |
| 4 | |
| | Attorneys for Defendant |
| 5 | THE BANK OF NEW YORK MELLON<br>CORPORATION |
| 6 | |
| 7 | |

8                    UNITED STATES DISTRICT COURT

9                  NORTHERN DISTRICT OF CALIFORNIA

10

| | |
|---|---|
| 11 | *In re* BANK OF NEW YORK MELLON<br>CORPORATION FALSE CLAIMS ACT | No. |
| 12 | FOREIGN EXCHANGE LITIGATION, *Ex rel.*<br>FX ANALYTICS, | NOTICE OF REMOVAL OF CIVIL<br>ACTION |
| 13 | | |
| | Plaintiff/Relator, | |
| 14 | | |
| | v. | |
| 15 | | |
| | THE BANK OF NEW YORK MELLON | |
| 16 | CORPORATION, and DOES 1 through 100,<br>inclusive, | |
| 17 | | |
| | Defendants. | |
| 18 | | |

19

20

21

22

23

24

25

26

27

28

A/74594239.1/0067588-0000356641

A/74596360.1/0067588-0000356641

1        Defendant The Bank of New York Mellon Corporation ("Defendant" or "BNY

2   Mellon"), the sole named defendant in *In re Bank of New York Mellon Corporation False Claims*

3   *Act Foreign Exchange Litigation, Ex rel. FX Analytics v. The Bank of New York Mellon*

4   *Corporation, and Does 1 through 100, inclusive*, filed as Case No. RG09480749 in the Superior

5   Court of the State of California for the County of Alameda, gives notice that this case is removed

6   to the United States District Court for the Northern District of California pursuant to 28 U.S.C.

7   §§ 1332, 1441, and 1446.

8   **I.      JURISDICTION**

9        1.      For reasons set forth in greater detail below, this Court has jurisdiction

10  over this action under 28 U.S.C. §§ 1332 and 1441. Jurisdiction exists pursuant to 28 U.S.C. §§

11  1331 and 1441 because there is complete diversity between the parties and the amount in

12  controversy exceeds $75,000.

13       2.      Furthermore, the Relator erroneously named BNY Mellon, a holding

14  company, as the defendant, when it should have named The Bank of New York Mellon and The

15  Bank of New York Mellon Trust Company, N.A. (collectively, the "Proper Defendants") as

16  Defendants, as they are contracting parties and/or provided the foreign exchange services

17  challenged in the Second Amended Complaint ("SAC"). The Proper Defendants would be

18  entitled to remove this case under the Edge Act, 12 U.S.C. § 632.

19  **II.     INTRADISTRICT ASSIGNMENT**

20       3.      Relator FX Analytics filed this case in the Superior Court of California,

21  County of Alameda. Therefore, either the San Francisco or the Oakland Division of the

22  Northern District of California is the proper location to which this case should be assigned. Civil

23  L.R. 3-2(c),(d); Civil L.R. 3-5(b). A case making allegations similar to those in the SAC, filed

24  by some of the same counsel who represent Relator in this proceeding, is currently pending in

25  the Northern District where it bears case number 3:11-cv-03620-WHA.

26  **III.    COMPLIANCE WITH STATUTORY REQUIREMENTS**

27       4.      In accordance with 28 U.S.C. § 1446(a), attached as Exhibit A are true and

28  correct copies of all process, pleadings and orders served upon BNY Mellon in the state court in
A/74594239.1/0067588-0000356641

NOTICE OF REMOVAL OF CIVIL ACTION

A/74596360.1/0067588-0000356641

1  this action. The action was originally filed in state court under seal. Exhibit A includes only

2  those portions of the state court suit that were unsealed pursuant to the state court's October 20,

3  2011 order.

4      5.      Defendant BNY Mellon, the sole named defendant, was served by mail

5  with the SAC on October 31, 2011. Accordingly, this Notice of Removal is timely under 28

6  U.S.C. § 1446(b).

7      6.      The state court action was originally filed under seal on October 22, 2009,

8  but was not unsealed until October 20, 2011, when it was unsealed in part. The prohibition on

9  removal of diversity cases more than one year after they are originally filed does not apply here

10  because the case was removable when initially filed. *Ritchey v. Upjohn Drug Co.*, 139 F.3d

11  1313, 1316 (9th Cir. 1998).

12      7.      Pursuant to 28 U.S.C. § 1446(d), BNY Mellon will promptly provide

13  written notice of removal of this action to Plaintiffs and will promptly file a copy of this Notice

14  of Removal with the Clerk of the Superior Court of California in and for the County of Alameda.

15  **IV.    STATEMENT OF THE GROUNDS FOR REMOVAL**

16      8.      BNY Mellon removes this case pursuant to 28 U.S.C. §§ 1332 and 1441

17  because there is complete diversity between the parties and the amount in controversy exceeds

18  $75,000.

19      9.      Relator FX Analytics is a Delaware general partnership and is not distinct

20  from the owner of the partnership (the "Partner"). SAC ¶¶ 11-12. The Partner has been

21  identified in media coverage as a former employee of BNY Mellon who resided in Pennsylvania

22  at the time the Complaint was originally filed, and the SAC makes allegations reflecting detailed

23  personal knowledge of the personnel and activities of the Pennsylvania office. SAC ¶¶ 11 and

24  49-63. In addition, a complaint filed by Relator in another proceeding identifies the Partner as a

25  former employee of the Pennsylvania office. Media coverage and investigation indicate that the

26  Partner has recently moved from Pennsylvania to New Hampshire. Based on the foregoing, the

27  Partner was a citizen of State of Pennsylvania when the original Complaint was filed and is now

28  a citizen of the State of New Hampshire. The case is brought on behalf of Relator and Political

A/74594239.1/0067588-0000356641                2

1   Subdivisions of the State of California. SAC ¶ 1; Cal. Gov. Code § 12652(c). These Political

2   Subdivisions are: the Oakland Police and Fire Retirement System Fund; the City of Los Angeles

3   and the Los Angeles Water and Power Employees' Retirement Plan; the Los Angeles County

4   and the Los Angeles County Employees Retirement Association Fund; San Diego County and

5   the San Diego County Employees Retirement Association Fund; Stanislaus County and the

6   Stanislaus County Employees' Retirement Association Fund; Santa Barbara County and the

7   Santa Barbara County Employees Retirement Association Fund; Merced County and the Merced

8   County Employees' Retirement System Fund; San Luis Obispo County and the San Luis Obispo

9   County Employees' Retirement Plan; Mendocino County and the Mendocino County Employees

10  Retirement Association Defined Benefit Fund; and Tulare County and the Tulare County

11  Employees Retirement Association Fund. SAC ¶ 1. Each of these Political Subdivisions is a

12  citizen of the state of California. *Moor v. County of Alameda*, 411 U.S. 693, 721 (1973).

13          10.     Defendant BNY Mellon is incorporated in Delaware and has its principal

14  place of business in New York, New York, and is therefore a citizen of Delaware and New York.

15  Therefore, there is complete diversity of citizenship between the parties.

16          11.     The amount in controversy requirement is satisfied. The complaint

17  demands treble damages based upon alleged actual damages that total tens of millions of dollars,

18  plus civil penalties adding up to tens of thousands of dollars. SAC at p. 21.

19          12.     The Complaint also names Defendants Does 1-100. Pursuant to 28 U.S.C.

20  §1441(a), the citizenship of these defendants is disregarded.

21          13.     Once the Plaintiffs name the Proper Defendants, this case is also subject to

22  removal under the Edge Act. The Bank of New York Mellon Trust Company, N.A. is a

23  corporation organized under the laws of the United States, and this action involves international

24  and foreign banking, and/or international or foreign financial operations. The Bank of New York

25  Mellon Trust Company, N.A. is the contracting party with the Los Angeles County Employees'

26  Retirement Association, the Los Angeles Water and Power Employees' Retirement Plan, the

27  Merced County Employees' Retirement System Fund, and the San Diego County Employees

28  Retirement Association.

A/74594239.1/0067588-0000356641                     3

NOTICE OF REMOVAL OF CIVIL ACTION

1    V.    **CONCLUSION**

2          14.    By removing this case, Defendant does not waive and is not estopped from

3    raising any defenses that were available to it in state court. *See Clark v. Wells*, 203 U.S. 164,

4    171 (1906); *Baumgart v. Fairchild Aircraft Corp.*, 981 F.2d 824, 835 (5th Cir. 1993).

5          15.    Pursuant to 28 U.S.C. § 1446(d), Defendant will promptly provide written

6    notice of the removal of this action to Relator, through its attorneys of record, Lieff, Cabraser,

7    Heimann & Bernstein, LLP. Defendant will also promptly provide written notice of the removal

8    of this action to the parties that have intervened in the Superior Court proceeding, namely the

9    Stanislaus County Employees' Retirement Association, the Los Angeles Department of Water

10   and Power Employees' Retirement Plan, the Los Angeles County Employees Retirement

11   Association, and the San Diego County Employees Retirement Association. Defendant will also

12   promptly file a copy of this Notice of Removal with the Clerk of the Superior Court of California

13   in and for the County of Alameda.

14         16.    BNY Mellon reserves the right to amend or supplement this Notice of

15   Removal.

16         WHEREFORE, pursuant to 28 U.S.C. §§ 1332, 1441, and 1446, Defendant BNY

17   Mellon removes this case from the Superior Court of the State of California in and for the

18   County of Alameda to the United States District Court for the Northern District of California.

19   DATED: November 16, 2011

                                    BINGHAM McCUTCHEN LLP
20

21

22                                  By:_____
                                    David M. Balabanian
23                                  Attorneys for Defendant
                                    BANK OF NEW YORK MELLON CORPORATION
24

25

26

27

28
     A/74594239.1/0067588-0000356641                4

1  BINGHAM MCCUTCHEN LLP
   David M. Balabanian (SBN 37368)
2  david.balabanian@bingham.com
   Three Embarcadero Center
3  San Francisco, CA 94111-4067
   Telephone: 415.393.2000
4  Facsimile: 415.393.2286

5  Attorneys for Defendant
   THE BANK OF NEW YORK MELLON
6  CORPORATION

7

8                  UNITED STATES DISTRICT COURT

9                  NORTHERN DISTRICT OF CALIFORNIA

10

11  *In re* BANK OF NEW YORK MELLON          No.
    CORPORATION FALSE CLAIMS ACT
12  FOREIGN EXCHANGE LITIGATION, *Ex rel.*   CERTIFICATION OF INTERESTED
    FX ANALYTICS,                            PARTIES FOR DEFENDANT, THE
13                                           BANK OF NEW YORK MELLON
                Plaintiff,                   CORPORATION
14       v.

15  THE BANK OF NEW YORK MELLON
    CORPORATION, and DOES 1 through 100,
16  inclusive,

17              Defendant.

18

19          Defendant, The Bank of New York Mellon Corporation, submits the following

20  statement of interested parties pursuant to Northern District Civil Local Rule 3-16. The

21  undersigned certifies that the following parties are known to have a financial interest in the

22  subject matter in controversy: The Bank of New York Mellon and The Bank of New York

23  Mellon Trust Company, N.A. Aside from these entities, the named parties to the action, the

24  Political Subdivisions named in paragraph 2 of the Second Amended Complaint, and the

25  Intervenors named in paragraph 15 of the Notice of Removal, Defendant knows of no interested

26  parties under Civil L.R. 3-16.

27

28
    A/74594426.1/0067588-0000356641

NOTICE OF FILING OF NOTICE OF NOTICE OF REMOVAL IN SUPERIOR COURT

1    DATED: November 16, 2011

2
                                           Bingham McCutchen LLP
3

4

5                                    By:_____
                                              David M. Balabanian
6                                           Attorneys for Defendant
                                        THE BANK OF NEW YORK MELLON
7                                               CORPORATION

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28
     A/74594426.1/0067588-0000356641              2

1   BINGHAM MCCUTCHEN LLP
    David M. Balabanian (SBN 37368)
2   david.balabanian@bingham.com
    Three Embarcadero Center
3   San Francisco, CA 94111-4067
    Telephone: 415.393.2000
4   Facsimile: 415.393.2286

5   Attorneys for Defendant
    THE BANK OF NEW YORK MELLON
6   CORPORATION

7

8                        UNITED STATES DISTRICT COURT

9                       NORTHERN DISTRICT OF CALIFORNIA

10

11  *In re* BANK OF NEW YORK MELLON          No.
    CORPORATION FALSE CLAIMS ACT
12  FOREIGN EXCHANGE LITIGATION, *Ex rel.*    CORPORATE DISCLOSURE
    FX ANALYTICS,                             STATEMENT FOR DEFENDANT, THE
13                                            BANK OF NEW YORK MELLON
                    Plaintiff,                CORPORATION
14      v.

15  THE BANK OF NEW YORK MELLON
    CORPORATION, and DOES 1 through 100,
16  inclusive,

17                  Defendant.

18  _____

19          Defendant, The Bank of New York Mellon Corporation, submits the following

20  statement of its corporate interests and affiliations pursuant to Rule 7.1 of the Federal Rules of

21  Civil Procedure. The undersigned certifies that

22          1. The Bank of New York Mellon Corporation is a publicly held corporation

23  whose stock trades on the New York Stock Exchange under the symbol BK.

24          2. The Bank of New York Mellon Corporation has no corporate parent, and no

25  publicly held corporation owns 10% or more of its stock.

26          3. The Bank of New York Mellon Corporation is the parent corporation of The

27  Bank of New York Mellon and The Bank of New York Mellon Trust Company, National

28  Association and owns 100% of the stock of said entities.
    A/74594425.1/0067588-0000356641

    NOTICE OF FILING OF NOTICE OF NOTICE OF REMOVAL IN SUPERIOR COURT

1    4. The Bank of New York Company, Inc. was a publicly held corporation that

2    merged with Mellon Financial Corporation to form The Bank of New York Mellon Corporation

3    as of July 1, 2007. The Bank of New York was a wholly owned subsidiary of The Bank of New

4    York Company, Inc.

5

6    DATED: November 16, 2011

7                                      Bingham McCutchen LLP

8

9

10                          By:_____
                                      David M. Balabanian
11                                    Attorneys for Defendant
                                      THE BANK OF NEW YORK MELLON
12                                    CORPORATION

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28
A/74594425.1/0067588-0000356641                2

NOTICE OF FILING OF NOTICE OF NOTICE OF REMOVAL IN SUPERIOR COURT

1     BINGHAM MCCUTCHEN LLP
        David M. Balabanian (SBN 37368)
2     Three Embarcadero Center
        San Francisco, CA 94111-4067
3     Telephone: 415.393.2000
        Facsimile: 415.393.2286
4     Email: david.balabanian@bingham.com

5     Attorneys for Defendant
        THE BANK OF NEW YORK MELLON
6     CORPORATION

7

8                   SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                          COUNTY OF ALAMEDA

10

11     *In re* BANK OF NEW YORK MELLON           No. RG09480749
        CORPORATION FALSE CLAIMS ACT
12     FOREIGN EXCHANGE LITIGATION, *Ex rel.*     NOTICE TO ADVERSE PARTIES OF
        FX ANALYTICS,                             REMOVAL OF ACTION TO FEDERAL
13                               COURT
                Plaintiff,
14
            v.
15
        THE BANK OF NEW YORK MELLON
16     CORPORATION, and DOES 1 through 100,
        inclusive,
17
                Defendant.
18

19
               Please take notice that Defendant, The Bank of New York Mellon Corporation,
20
    removed this action to the United States District Court for the Northern District of California on
21
    November 16, 2011. A conformed copy of the Notice of Removal of Civil Action is attached as
22
    Exhibit A.
23

24

25

26

27

28
    A/74594422.1/0067588-0000356641

1    DATED: November 16, 2011

2
                                          Bingham McCutchen LLP
3

4

5                                         By:_____
                                                   David M. Balabanian
6                                                Attorneys for Defendant
                                            THE BANK OF NEW YORK MELLON
7                                                   CORPORATION

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1    BINGHAM MCCUTCHEN LLP
     David M. Balabanian (SBN 37368)
2    Three Embarcadero Center
     San Francisco, CA 94111-4067
3    Telephone: 415.393.2000
     Facsimile: 415.393.2286
4    Email: david.balabanian@bingham.com

5    Attorneys for Defendant
     THE BANK OF NEW YORK MELLON
6    CORPORATION

7

8                SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                          COUNTY OF ALAMEDA

10

11   *In re* BANK OF NEW YORK MELLON              No. RG09480749
     CORPORATION FALSE CLAIMS ACT
12   FOREIGN EXCHANGE LITIGATION, *Ex rel.*       NOTICE OF REMOVAL OF ACTION
     FX ANALYTICS,                                TO FEDERAL COURT
13
                 Plaintiff,
14
          v.
15
     THE BANK OF NEW YORK MELLON
16   CORPORATION, and DOES 1 through 100,
     inclusive,
17
                 Defendant.
18

19          Please take notice that Defendant, The Bank of New York Mellon Corporation,

20   removed this action to the United States District Court for the Northern District of California on

21   November 16, 2011. A conformed copy of the Notice of Removal of Civil Action is attached as

22   Exhibit A.

23

24

25

26

27

28
     A/74594421.1/0067588-0000356641

NOTICE OF REMOVAL OF ACTION TO FEDERAL COURT

1    DATED: November 16, 2011

2

3                                    Bingham McCutchen LLP

4

5                                    By:_____
                                          David M. Balabanian
6                                         Attorneys for Defendant
                                     THE BANK OF NEW YORK MELLON
7                                              CORPORATION

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28
     A/74594421.1/0067588-0000356641              2

1  BINGHAM MCCUTCHEN LLP
   David M. Balabanian (SBN 37368)
2  david.balabanian@bingham.com
   Three Embarcadero Center
3  San Francisco, CA 94111-4067
   Telephone: 415.393.2000
4  Facsimile: 415.393.2286

5  Attorneys for Defendant
   THE BANK OF NEW YORK MELLON
6  CORPORATION

7

8                    UNITED STATES DISTRICT COURT

9                   NORTHERN DISTRICT OF CALIFORNIA

10

11  In re BANK OF NEW YORK MELLON          No.
    CORPORATION FALSE CLAIMS ACT
12  FOREIGN EXCHANGE LITIGATION, Ex rel.   NOTICE OF FILING OF NOTICE OF
    FX ANALYTICS,                          REMOVAL IN SUPERIOR COURT
13
            Plaintiff,
14       v.

15  THE BANK OF NEW YORK MELLON
    CORPORATION, and DOES 1 through 100,
16  inclusive,

17          Defendant.

18

19          Please take notice that Defendant, The Bank of New York Mellon Corporation,

20  filed its Notice of Removal of Action to Federal Court in the Superior Court of the County of

21  Alameda on November 16, 2011 as required by 28 U.S.C. § 1446(d). A conformed copy of the

22  Notice of Removal of Action to Federal Court is attached as Exhibit A.

23

24

25

26

27

28
    A/74594424.1/0067588-0000356641

NOTICE OF FILING OF NOTICE OF NOTICE OF REMOVAL IN SUPERIOR COURT

1    DATED: November 16, 2011

2
                                        Bingham McCutchen LLP
3

4

5                                  By:_____
                                            David M. Balabanian
6                                         Attorneys for Defendant
                                       THE BANK OF NEW YORK MELLON
7                                             CORPORATION

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

NOTICE OF FILING OF NOTICE OF NOTICE OF REMOVAL IN SUPERIOR COURT

 CT Corporation

**Service of Process Transmittal**
10/31/2011
CT Log Number 519405731

**TO:** Christopher J Soller
The Bank of New York Mellon Corporation
BNY Mellon Center, 151-1915
500 Grant Street
Pittsburgh, PA 15258

**RE:** **Process Served in Pennsylvania**

**FOR:** The Bank of New York Mellon Corporation (Domestic State: DE)

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | RE: Bank of New York Mellon Corporation False Claims Act Foreign Exchange Litigation, Ex rel. FX Analytics // To: The Bank of New York Mellon Corporation, et al., Dfts. |
| **DOCUMENT(S) SERVED:** | Letter, Summons, Second Amended Complaint, Demand, Proof(s) of Service, Cover Sheet(s), Addendum, ADR Information Packet, Notice(s), Order(s), Service List |
| **COURT/AGENCY:** | Alameda County Superior Court, CA<br>Case # RG09480749 |
| **NATURE OF ACTION:** | Violation of the state false claims act |
| **ON WHOM PROCESS WAS SERVED:** | CT Corporation System, Harrisburg, PA |
| **DATE AND HOUR OF SERVICE:** | By Certified Mail on 10/31/2011 postmarked on 10/26/2011 |
| **JURISDICTION SERVED :** | Pennsylvania |
| **APPEARANCE OR ANSWER DUE:** | Within 30 days |
| **ATTORNEY(S) / SENDER(S):** | Lexi J. Hazam<br>Lieff, Cabraser, Heimann & Bernstein, LLP<br>San Francisco Airport Office Center<br>840 Malcolm Road<br>Burlingame, CA 94010<br>650-697-6000 |
| **ACTION ITEMS:** | CT has retained the current log, Retain Date: 10/31/2011, Expected Purge Date: 11/05/2011<br>Image SOP<br>Email Notification, Susan McGivern susan.mcgivern@bnymellon.com<br>Email Notification, Kevin J Wilson kevin.j.wilson@bnymellon.com<br>Email Notification, Sharon L Genser sharon.genser@bnymellon.com<br>Email Notification, Christopher J Soller christopher.soller@bnymellon.com |
| **SIGNED:**<br>**PER:**<br>**ADDRESS:**<br><br>**TELEPHONE:** | CT Corporation System<br>Sabra Dudding<br>116 Pine Street<br>3rd Floor, Suite 320<br>Harrisburg, PA 17101<br>717-234-6004 |

Information displayed on this transmittal is for CT Corporation's record keeping purposes only and is provided to the recipient for quick reference. This information does not constitute a legal opinion as to the nature of action, the amount of damages, the answer date, or any information contained in the documents themselves. Recipient is responsible for interpreting said documents and for taking appropriate action. Signatures on certified mail receipts confirm receipt of package only, not contents.

LAW OFFICES
COTCHETT, PITRE & McCARTHY, LLP
SAN FRANCISCO AIRPORT OFFICE CENTER
840 MALCOLM ROAD
BURLINGAME, CALIFORNIA 94010
TELEPHONE (650) 697-6000
FAX (650) 697-0577

LOS ANGELES OFFICE
9454 WILSHIRE BOULEVARD, SUITE 907
BEVERLY HILLS, CA 90212
(310) 247-9247

WASHINGTON, DC OFFICE
1025 CONNECTICUT AVENUE NW, SUITE 1000
WASHINGTON, DC 20036
(202) 296-4515

October 26, 2011

NEW YORK OFFICE
ONE LIBERTY PLAZA, 23RD FLOOR
NEW YORK, NY 10006
(212) 682-3198

*BY Certified Mail*

CT Corporation System
116 Pine Street
Suite 320
Harrisburg, PA 17101

        **Re:** *FX Analytics, Ex. Rel. v. Bank of New York Mellon Corporation*
                *Case No. RG*

Dear CT Corporation System,

      Please find enclosed the following documents which we are serving on you as the registered agent for Bank of New York Mellon:

1.   Second Amended Complaint;
2.   Summons in a Civil Case;
3.   Civil Case Cover Sheet;
4.   ADR Dispute Resolution Procedure Packet;
5.   Notice of Intervention (Stanislaus County Employees' Retirement Association)
6.   Notice of Intervention (Los Angeles Department of Water and Power Employees' Retirement Plan)
7.   Notice of Intervention (Los Angeles County Employees Retirement Association AND San Diego County Employees' Retirement Association)
8.   Order Designating Documents to be Unsealed and Documents to Remain Under Seal (Stanislaus County Employees' Retirement Association)
9.   Order Designating Documents to be Unsealed and Documents to Remain Under Seal (Los Angeles Department of Water and Power Employees' Retirement Plan)
10.  Order Designating Documents to be Unsealed and Documents to Remain Under Seal (Los Angeles County Employees Retirement Association AND San Diego County Employees' Retirement Association)
11.  Proof of Service of Ex Rel. Second Amended Complaint for Violation of the State False Claims Act

**LAW OFFICES**
COTCHETT, PITRE & McCARTHY, LLP

If you have any questions please feel free to contact me.

Sincerely,

Steven N. Williams

Encl.



**SUM-100**

## SUMMONS
### (CITACION JUDICIAL)

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*

The Bank of New York Mellon Corporation, and Does 1 through 100, inclusive

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

In re Bank of New York Mellon Corporation False Claims Act Foreign Exchange Litigation, Ex rel. FX Analytics

<div style="border:1px solid">
FOR COURT USE ONLY<br>
(SOLO PARA USO DE LA CORTE)

**ENDORSED**
**FILED**
**ALAMEDA COUNTY**

OCT 2 5 2011

CLERK OF THE SUPERIOR COURT
By **Thahn Ferry** Deputy
</div>

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.
*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| | |
|---|---|
| The name and address of the court is:<br>*(El nombre y dirección de la corte es):*  Alameda County Superior Court<br><br>Rene C. Davidson Courthouse, 1225 Fallon Street<br>Oakland, California 94612 | CASE NUMBER:<br>*(Número del Caso):*<br><br>RG09480749 |

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Lexi Hazam, Lieff Cabraser Heimann & Bernstein, 275 Battery St., San Francisco, CA 94111, (415) 956-1000

| DATE: October 25, 2011<br>*(Fecha)* | Pat S. Sweeten<br>Clerk, by *(Secretario)* | *Jacha Kerry*<br> | , Deputy<br>*(Adjunto)* |
|---|---|---|---|

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

| [SEAL] | **NOTICE TO THE PERSON SERVED:** You are served |
|---|---|
| | 1. ☐ as an individual defendant. |
| | 2. ☐ as the person sued under the fictitious name of *(specify):* |
| | 3. ☑ on behalf of *(specify):* |
| | under: ☑ CCP 416.10 (corporation)  ☐ CCP 416.60 (minor) |
| | ☐ CCP 416.20 (defunct corporation)  ☐ CCP 416.70 (conservatee) |
| | ☐ CCP 416.40 (association or partnership)  ☐ CCP 416.90 (authorized person) |
| | ☐ other *(specify):* |
| | 4. ☐ by personal delivery on *(date):* |

Page 1 of 1

| | | |
|---|---|---|
| Form Adopted for Mandatory Use<br>Judicial Council of California<br>SUM-100 [Rev July 1, 2009] | **SUMMONS** | Code of Civil Procedure §§ 412.20, 465<br>www.courtinfo.ca.gov |

4/5/10
3411

# CONFIDENTIAL

**MC–060**

| ATTORNEY (Name, state bar number, and address): | FOR COURT USE ONLY |
|---|---|
| Lexi J. Hazam (California Bar No. 224457)<br>LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP<br>275 Battery Street, 29th Floor<br>San Francisco, CA 94111 | |

TELEPHONE NO.: 415-956-1000     FAX NO. (Optional): 415-956-1008

E-MAIL ADDRESS (Optional): lhazam@lchb.com

ATTORNEY FOR: [✓] PLAINTIFF    [ ] OTHER (specify):

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF ALAMEDA**

STREET ADDRESS: 1225 Fallon Street

MAILING ADDRESS: 1225 Fallon Street

CITY AND ZIP CODE: Oakland, CA 94612

BRANCH NAME: René C. Davidson / Alameda County Courthouse

· PLAINTIFF:     **[UNDER SEAL]**

DEFENDANT:     **[UNDER SEAL]**

| **CONFIDENTIAL COVER SHEET–FALSE CLAIMS ACTION** | CASE NUMBER:<br>RG09480749 |
|---|---|

| **INSTRUCTIONS:** This civil action is brought under the False Claims Act, Government Code section 12650 et seq. The documents filed in this case are under seal and are confidential pursuant to Government Code section 12652(c).<br><br>This Confidential Cover Sheet must be affixed to the caption page of the complaint and to any other paper filed in this case until the seal is lifted.<br><br>You should check with the court to determine whether papers filed in False Claims Act cases must be filed at a particular location. | Seal to expire on (date):<br>July 15, 2010<br>**UNLESS:**<br>(1) Motion to extend time is pending; or<br>(2) Extended by court order |
|---|---|

1. The document to which this cover sheet is affixed is:

   a. [✓] Complaint for damages for violation of the False Claims Act   (Second Amended)

   b. [ ] Civil Case Cover Sheet (form 982.2(b)(1))

   c. [ ] Motion for an extension of time to intervene

   d. [ ] Affidavit or other document in support of the motion for an extension of time

   e. [ ] Order extending time to intervene (specify date order expires):

   f. [ ] Other order (describe):

   g. [ ] Notice from the Attorney General of additional prosecuting authority that may have access to the file

   h. [ ] Other (describe):

2. This Confidential Cover Sheet and the attached document must each be separately file-stamped by the clerk of the court.

Date: April 5, 2010

Page 1 of 1

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>MC-060 [Rev. January 1, 2007] | **CONFIDENTIAL COVER SHEET<br>FALSE CLAIMS ACTION** | Gov. Code, § 12652(c);<br>Cal. Rules of Court, rules 2.570-2.573<br>www.courtinfo.ca.gov |
|---|---|---|

www.accesslaw.com



1   Richard M. Heimann (State Bar No. 063607)
    Lexi J. Hazam (State Bar No. 224457)
2   Robert L. Lieff (State Bar No. 037568) (Of Counsel)
    LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP
3   Embarcadero Center West
    275 Battery Street, 29th Floor
4   San Francisco, CA  94111-3339
    Telephone: (415) 956-1000
5   Facsimile:  (415) 956-1008

6   Steven E. Fineman (State Bar No. 140335)
    Daniel P. Chiplock
7   LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP
    250 Hudson Street, 8th Floor
8   New York, NY  10013-1413
    Telephone: (212) 355-9500
9   Facsimile:  (212) 355-9592

10  Philip R. Michael
    MICHAEL LAW GROUP
11  326 West 246th Street
    Riverdale, NY  10471
12  Telephone: (917) 689-1734
    Facsimile:  (718) 601-4052
13  prmpjab@gmail.com

14  Michael P. Thornton
    Michael A. Lesser
15  THORNTON & NAUMES LLP
    100 Summer Street, 30th Floor
16  Boston, MA  02110
    Telephone: (617) 720-1333
17  Facsimile:  (617) 720-2445

18  Attorneys for Plaintiff/Relator

FILED
ALAMEDA COUNTY

APR 0 5 2010

CLERK OF THE SUPERIOR COURT
By _____
                                    Deputy

19              SUPERIOR COURT OF THE STATE OF CALIFORNIA

20                          COUNTY OF ALAMEDA

21  In re BANK OF NEW YORK MELLON          Case No. RG09480749
    CORPORATION FALSE CLAIMS ACT
22  FOREIGN EXCHANGE LITIGATION,          *EX. REL.* SECOND AMENDED
    *Ex rel.* FX ANALYTICS,               COMPLAINT FOR VIOLATION OF THE
23                                         STATE FALSE CLAIMS ACT
                  Plaintiff/Relator,
24                                         Cal Gov Code § 12651, *et seq.*
              v.
25                                         DEMAND FOR JURY TRIAL
    THE BANK OF NEW YORK MELLON
26  CORPORATION, and DOES 1 through
    100, inclusive,                        FILED IN CAMERA AND UNDER SEAL
27
                  Defendants.
28

864392.1

1    Plaintiff/Relator ("Relator"), FX Analytics, for its Complaint against The Bank of New
2    York Mellon Corporation, its predecessors and subsidiaries ("Defendant(s)," "BNY Mellon,"
3    and/or "Bank," and DOES 1 though 100 (including all subsidiaries of the above entities)), alleges
4    as follows:

5    **I.    INTRODUCTION**

6        1.    This is an action to recover damages and civil penalties on behalf of Political
7    Subdivisions of the State of California ("State") for harm suffered by the following Political
8    Subdivisions: the Oakland Police and Fire Retirement System Fund; the City of Los Angeles and
9    the Los Angeles Water and Power Employees' Retirement Plan; Los Angeles County and the Los
10   Angeles County Employees Retirement Association Fund; San Diego County and the San Diego
11   County Employees Retirement Association Fund; Stanislaus County and the Stanislaus County
12   Employees' Retirement Association Fund; Santa Barbara County and the Santa Barbara County
13   Employees Retirement System Fund; Merced County and the Merced County Employees'
14   Retirement System Fund; San Luis Obispo County and the San Luis Obispo County Employees'
15   Retirement Plan; Mendocino County and the Mendocino County Employees Retirement
16   Association Defined Benefit Fund; and Tulare County and the Tulare County Employees
17   Retirement Association Fund (the "Subdivisions" and the "Subdivision Funds," respectively),
18   arising from false claims and statements made and presented by Defendants, their agents,
19   employees and co-conspirators, in violation of the State False Claims Act, Cal Gov Code
20   § 12651, *et seq.* (the "State False Claims Act" or the "Act").

21       2.    Defendants violated the State False Claims Act by assigning fictitious foreign
22   currency exchange ("FX") rates to the Funds' purchases and sales of foreign securities, making
23   false statements and creating false records related thereto, and conspiring to commit these
24   offenses. Defendants knowingly and intentionally created and carried out a fraudulent scheme in
25   which they charged the Subdivision Funds fictitious FX rates that were not the FX rates at which
26   Defendants actually executed requested FX transactions for the Subdivision Funds. Defendants
27   captured the difference between the actual and the fictitious FX rates, thereby damaging the
28   Subdivision Funds – pension funds with assets in excess of $59 billion dollars.

3. This scheme dates back at least ten years, affects institutional investors nationwide, and currently yields an estimated $500 million dollars annually to the Bank. Relator estimates that the portion of the profits falsely and fraudulently generated from Defendants' business with the Subdivision Funds since at least 1999 is in excess of $30 million dollars.

4. Defendants concealed their fraud from the Subdivisions in order to keep monies of the Subdivision Funds to which Defendants were not entitled. Defendants accordingly breached both the Act and their fiduciary and contractual obligations to the Subdivisions.

5. The Act provides that any person who knowingly presents, or causes to be presented, to any officer or employee, officer, or agent of the State, or a political subdivision, a false or fraudulent claim for payment or approval is liable for a per-claim civil penalty of up to $10,000 for each such claim submitted or paid, plus three times the amount of the damages, including consequential damages, sustained by the political subdivision. For purposes of the Act, "knowing" or "knowingly" means that a person possessing actual knowledge of the information acts in deliberate ignorance of the truth or falsity of the information or acts in reckless disregard of the truth or falsity of the information, and no proof of specific intent to defraud is required.

6. The Act states that a relator may bring a civil for violations of the Act on behalf of the relator and the State of California or its political subdivisions. The complaint shall be filed under seal and shall remain so for 60 days, without service on the Defendants during that period, and cannot be so served without an Order of the Court.

7. Based on the provisions of the Act, Relator seeks to recover compensatory damages, trebled, and civil penalties arising from the Subdivisions' payment of falsified FX rates in connection with FX transactions on behalf of their public pension funds. Defendants' conduct has included (a) false or fraudulent claims for payment or approval of false records or statements, that the Defendants knowingly presented, and caused to be presented, to an officer or employee of a political subdivision; and the Defendants' use of false or fraudulent records and statements to conceal, avoid and decrease the Defendants' obligation to pay money to the political subdivisions in connection with FX transactions on behalf of the Subdivision Funds, and (c) conspiracy to commit these offenses, all in violation of the Act.

1    8.    As described more fully below, the only constraints on the fictitious FX rates
2    charged to the Subdivision Funds have been the high (for purchases) and low (for sales) of each
3    particular day's FX rates. Defendants' wrongdoing is alleged herewith to have continued to the
4    present, and may continue into the future.

5    9.    It is the regular practice of the Defendants' FX traders and transaction desks,
6    working in conjunction with the Bank's custody department, to leverage every possible FX
7    transaction for the exclusive benefit of the Bank. Knowing the precise foreign exchange needs of
8    its custody clients, the Bank trades to satisfy its clients' obligations on the interbank market, but
9    then charges a fictitious price to the public pension fund client for the trade. The fictitious price
10    given to the client allows the Bank to keep a significant illicit profit on the trade.

11    10.    The Defendants' profits from this behavior often results in profits of hundreds of
12    thousands of dollars on a single trade. The Defendants' fraud on their custodial clients, the
13    Subdivision Funds, occurred – and continues to occur – despite the Bank's contractual and
14    statutory duties, despite the Bank's responsibilities as a fiduciary and the trust it induces the
15    public pension funds to have in the Bank, and despite repeated representations by the Bank as to
16    the benefits of its cutting-edge technology, its advanced claims processing procedures, best
17    execution practices, and the competitiveness of its FX rates.

18    **II.    PARTIES**

19    11.    Relator, a Delaware general partnership, is named FX Analytics and brings this
20    action for violations of The State False Claims Act, on behalf of itself and the Political
21    Subdivisions named herein. The owner of the partnership (the "Partner") possesses extensive
22    knowledge and experience regarding the Defendants' bank offices, businesses and personnel,
23    including personal contact with the employees and executives of BNY Mellon (Defendant(s))
24    who have committed the alleged violations of the Act, as described below. The Partner possesses
25    personal knowledge to support and establish the charges asserted in this Complaint.

26    12.    Pursuant to Section 15-201(a) of the Delaware Revised Uniform Partnership Act,
27    FX Analytics is not distinct from its partner, who has personal knowledge of the aforesaid false
28    claims, statements, concealments, and receipts.

864392.1                                  - 3 -

1    13.    Defendant, The Bank of New York Mellon Corporation, is the parent corporation

2    resulting from the July 1, 2007 merger of the Bank of New York Company, Inc. and Mellon

3    Financial Corporation. By July 1, 2008, the Bank had consolidated into two banks and renamed

4    its principal bank and trust companies The Bank of New York Mellon and BNY Mellon, National

5    Association. These entities, along with many others, are primary subsidiaries of the parent

6    corporation, The Bank of New York Corporation. BNY Mellon assumes the liabilities of the

7    corporations merged into it. NY CLS Bank § 602(2). As referred to herein, therefore, general

8    references to BNY Mellon include the merged corporation as well as its constituent, individual

9    predecessor corporations and subsidiaries – unless otherwise noted.

10    14.    BNY Mellon's corporate headquarters are located at One Wall Street, New York,

11    New York, 10286. Its symbol on the New York Stock Exchange is "BK." According to its

12    website, as of the second quarter of 2009, BNY Mellon maintained $20.7 trillion under custody

13    and administration, and with $926 billion under management.

14    15.    The true names and capacities, whether individual, corporate, associate, or

15    otherwise, of Defendants DOES 1 through 100 are unknown to Relator, who therefore sues such

16    Defendants by such fictitious names, and will amend this Complaint to show the true names and

17    capacities of the DOE defendants when ascertained. Relator alleges on information and belief

18    that each Defendant designated as a "DOE" is legally responsible in some manner for the events

19    and happenings alleged in this Complaint.

20    **III.    VENUE**

21    16.    Venue is proper in this county because one or more Defendants can be found in,

22    reside in, and/or transact business in this county, and because some of the violations of Cal. Gov't

23    Code §§ 12650-12655 described herein occurred within this county. Specifically, Defendant

24    BNY Mellon has transacted business in this county by providing custodial banking services and

25    FX Services to the Oakland Police and Fire Retirement System Fund, and has perpetrated the

26    fraudulent scheme describe herein in the course of providing these services. In addition, Plaintiff

27    Oakland Police and Fire Retirement System Fund is located in this county.

28

864392.1                                          - 4 -

## IV. DEFENDANTS' FRAUDULENT SCHEME

### A. Background on Defendants' Relationship with the Subdivision Funds

17. BNY Mellon's main business lines include Asset Management, Asset Servicing, Wealth Management, Broker-Dealer & Advisor Services, Issuer Services, and Treasury Services. BNY Mellon Asset Servicing is responsible for the custodial banking at issue in Relator's complaint, and the fraudulent FX fees earned through Defendants' scheme are reported as Asset Servicing income.

18. BNY Mellon serves as the custodian bank for a large number of public pension funds across the country. According to the Bank's 2008 Annual Report, it is "the largest custodian for U.S. public pension plans." In states with *qui tam* statutes, BNY Mellon is responsible, as the custodian Bank, for more than $600 billion in state and state political subdivision funds. As further alleged herein, the Bank's practice is to target these public and governmental Funds for its fraudulent FX scheme.

19. In 2008, BNY Mellon reported a record $1.5 billion in FX and other trading activity revenue – an increase of $676 million (86%) over the previous year. For the years 2002 to 2008, BNY Mellon and its predecessor Banks have reported more than $5 billion in FX trading revenue. As alleged below, the great majority of these profits came directly at the expense of public pension funds. BNY Mellon's FX revenue is a cornerstone of the Bank's annual profits and serves as a cash generator responsible for funding the annual bonuses of the entire firm.

20. BNY Mellon made public and private misrepresentations of its FX practices in order to induce the Subdivision Funds to become clients. It contended that its FX services were successful, award-winning, and skillful. Its website misleadingly explained the various FX services that it offered to its custodial clients. One mode of execution, known as "Standing Instruction," was the manner of execution that the Bank induced the Subdivision Funds, and public pension funds generally, to select. This trading method – also known as "Indirect" within the industry and described further herein – funneled all of the Funds' FX transactions to BNY Mellon for execution.

1    21.    The Subdivisions chose BNY Mellon's "Standing Instruction" mode of execution
2    of FX transactions because BNY Mellon misleadingly marketed it to the Subdivisions and
3    Subdivision Funds as a cost-saving benefit. BNY Mellon's website is replete with
4    misrepresentations concerning the Bank's FX services, which the Relator alleges to be untrue and
5    instrumental to the scheme alleged herein:

6            i.    "With 24-hour trading capability via New York, Boston, Pittsburgh,
7    London, Brussels, Tokyo, Hong Kong, Seoul, and Tapei, The Bank of New York Mellon is one
8    of the largest FX dealers in the world. We provide coverage for more than 100 currencies and
9    offer a myriad of FX derivative products. Our seasoned dealers offer innovative business
10   solutions . . ."

11           ii.    "The Bank of New York Mellon Global Markets is a recognized
12   leader in the institutional and corporate global foreign exchange markets. Our foreign exchange
13   specialists are able to provide expert analysis and advice accompanied by a full range of products
14   to support your global business activity."

15           iii.    "Execution: Our global franchise provides you with 24 hour market
16   coverage. Due to our standing as one of the world's leading custodial Banks, we are an active
17   market-maker in the spot, forward and option markets."

18           iv.    "Standing Instruction [Indirect Foreign Exchange] trading
19   provide[s] a simple, flexible, and complete service solution that automates the capture of all types
20   of custody-related foreign exchange . . . Operationally simple, *free of charge* and integrated with
21   the client's activity on the various securities markets, [Foreign Exchange] standing instruction is
22   designed to help clients minimize risks and costs related to the foreign exchange and concentrate
23   on their core business."

24           v.    "Standing Instruction Foreign Exchange Clients benefit from:
25   [foreign exchange] execution according to *best execution standards* . . ."

26           (Emphases added).

27   22.    To maintain the enormous illicit profits that BNY Mellon makes from its Indirect
28   FX custodial clients, including the Subdivision Funds and other similarly positioned public

864392.1                            - 6 -
IN RE FALSE CLAIMS ACT FOREIGN EXCHANGE LITIGATION

1  pension funds, the Bank touts the strength of its relationship with those same pensions it defrauds
2  – largely the public pension funds that comprise the bulk of the Indirect clients:

3          i.      A Leading Provider For Government Entities: Public pension plans
4  and other government agencies seek to align themselves with a custodian who is a clear leader,
5  one who has the capabilities and experience to help them meet the numerous challenges facing
6  their organizations today including: Increased regulatory oversight, complex global investing
7  environment, pressure to grow assets while managing with existing or decreasing resources, and
8  corporate governance.

9          ii.     BNY Mellon Asset Servicing understands the unique needs of
10 public organizations and has worked with their decision-makers to professionally administer their
11 assets.

12     23.    BNY Mellon's representations have little or nothing to do with their actual
13 practices toward affected public pension funds such as the Subdivision Funds.

14     24.    Together the Subdivision Funds hold more than $59 billion in assets. A significant
15 percentage of the Subdivision Funds' assets include international securities that necessitate FX
16 transactions. Approximately 21% of the Los Angeles County Employees Retirement Association
17 Fund is allocated to international equities and investments. Approximately 27% of the San Diego
18 County Employees Retirement Association Fund is allocated to international equities and
19 investments. Approximately 15% of the Los Angeles Water and Power Employees Retirement
20 Plan Fund is allocated to international equities and investments. Approximately 18% of the Santa
21 Barbara County Employees Retirement System Fund is allocated to international equities and
22 investments. Approximately 19.8% of the Stanislaus County Employees Retirement Association
23 Fund is allocated to international equities and investments. Approximately 15% of the Oakland
24 Police and Fire Retirement System Fund is allocated to international equities and investments.
25 Approximately 19% of the Tulare County Employees Retirement Association Fund is allocated to
26 international equities and investments. Finally, approximately 19% of the Mendocino County
27 Employees Retirement Association Fund is allocated to international equities and investments.

28

864392.1                                      - 7 -

1  Combined, at present, approximately $12,486,785,000 of Subdivision money is subject, daily, to
2  Defendants' fraud.[1]

3  25.  Defendants have served as, or are, the custodial bank for the Subdivision Funds
4  enumerated herein.

5  26.  On information and belief, the Subdivision Funds' custodial agreements with
6  Defendants do not authorize the FX rates charged by Defendants in connection with the FX
7  transactions described herein, and the Subdivision Funds have not otherwise authorized the
8  Defendants to charge them FX rates related to foreign security transactions other than the actual
9  costs incurred by Defendants in connection with such transactions. The Subdivision Funds have
10  never approved the retention by the Defendants of the difference between their actual FX cost and
11  the fictitious FX rates falsely charged by Defendants and passed on to the Subdivision Funds.

12  27.  The Subdivision Funds never agreed that their master custodial agreements with
13  BNY Mellon entitled Defendants to any earnings above those specified in those agreements.
14  Nonetheless, Defendants secretly conferred upon themselves the discretion to charge the
15  Subdivision Funds fictitious FX rates and to pocket the difference from the FX rates that were
16  actually paid by Defendants in connection with purchases and sales of foreign currencies for the
17  Subdivision Funds.

18  28.  28. Governmental appropriations to the Subdivision Funds are required by statute,
19  and such appropriations (in the hundreds of millions of dollars) have been made during the course
20  of Defendants' custodianship of the Subdivision Funds.

21  29.  When money is wrongly withheld or misappropriated from the Subdivision Funds
22  through violations of the Act, the Subdivisions must pay additional money to the Subdivision
23  Funds, which otherwise would have been available for essential services to its citizens. As the
24  custodian, BNY Mellon was required to act as a fiduciary for the Subdivision Funds. BNY
25  Mellon breached this fiduciary duty.

26  30.  Over the period of time relevant to this Complaint, the Subdivisions have paid
27  millions of dollars in custodial fees to Defendants. Moreover, the Bank has effortlessly generated

28
---
[1] Investigation continues into the San Luis Obispo County funds' international equity holdings.
864392.1                                    - 8 -

1  millions of dollars in risk-free revenue while the Subdivision Funds have struggled to meet
2  funding requirements in the face of major losses in value attributable to the economic downturn
3  of the last eighteen months. Indeed, the money lost due to BNY Mellon's fraudulent FX scheme
4  is money that will not earn compounded investment returns for the Subdivision Funds over the
5  thirty-plus year time horizon that applies to most pension plans, and each such loss will triple
6  each decade.

7  **B.  How Defendants' Fraudulent Foreign Exchange Scheme Works**

8       31.     Upon receipt of a request requiring a FX transaction, Defendants execute a trade to
9  fill the request at the FX rate available at or close to that time. Defendants thereafter watch the
10 market fluctuation in FX rates related to such transactions over the course of the day (covering a
11 24-hour period, beginning a 5:00 p.m., Eastern Time) in order to charge the client a different, less
12 favorable rate than the one at which Defendants actually settled the FX transaction. Many of the
13 transactions for which Defendants claim or state an applicable FX rate that the Subdivision Funds
14 are responsible for paying (for "buy" transactions) or for which the Subdivision Funds are entitled
15 to a credit from Defendants (for "sell" transactions) are actually feigned. Defendants falsely
16 claim to have paid a different rate than that which was required settle the trade.

17      32.     If the transaction is a "buy" of a foreign currency, Defendants will charge the
18 Subdivision Funds a higher FX rate available at another time in the day, which causes the
19 Subdivision Funds to pay more for the FX transaction than what Defendants actually paid.
20 Defendants will keep for themselves the difference between the true cost of the trade and the
21 fictitious or false FX rate Defendants claim to have paid and charge to the clients. If the
22 transaction that requires a FX transaction is instead a "sale" of a foreign currency, Defendants
23 will falsely credit the Subdivision Funds with an FX rate available at another time in the day that
24 is lower than what Defendants actually receive for the currency, and remit to the Subdivision
25 Funds an amount less than what Defendants actually have received on the behalf of the
26 Subdivision Funds.

27
28

## C. How the Bank Manipulates Pension Fund Clients

33.     The great majority of FX trades are done without a built in commission or fee paid by the client in a transaction. The profit that is gained by the Bank, or the sell side, is generated by dealing at a price with the client where they are able to offset the trade in the interbank market at a profit. It is a zero sum game; whatever the Bank gains in profit in the transaction becomes a "loss" for or a cost to the client. This fact where one side's gain is the other side's cost can make the negotiating process key to overall profitability for both parties involved.

34.     The method of dealing with FX transactions can be broken down into to two basic categories: "Direct" or "Indirect." In the "Direct" way of trading, clients do FX transactions themselves or contract with a third party that executes their FX trades. Generally speaking, clients that choose to deal directly with the FX department will accept a price that they negotiated with the Bank on a given transaction. That FX price will be close to where the actual FX market is trading at that time of day when the FX transaction is finalized. Thus, "Direct" clients are able to actively pursue the best price available to them at a particular time, and such clients are protected from additional FX costs caused by volatility in FX rates, whether such volatility occurs before or after the actual trade that the Direct client is assured of having occurred. For this reason, the Bank makes very modest profits on Direct trading, because the FX rate that is agreed upon between the Bank and the client must be paid by the Bank, and it has no opportunity to pretend that an FX rate that was much more costly for the client applied to the transaction in question.

35.     The second way of executing foreign exchange transactions, one that is predominately used by public pension fund custody clients, such as the Subdivision Funds herein, is the "Indirect" method. Indirect foreign exchange trading at BNY Mellon is also referred to by the Bank as "non-negotiated" and "Standing Instructions" dealing.

36.     The Indirect method involves the custodian, rather than the client, overseeing the trade process from start to completion. The client has little or no input in the FX transaction at any point in the process. In addition to the Bank's public descriptions above, the Indirect

1   methodology is also similarly described in the BNY Mellon's FX business plan statement
2   ("Statement") for 2010:

3        Through our standing instruction [Indirect] channel, we provide significant value-added to
4   clients by identifying trade requirements, aggregating and netting exposures, handling pre-trade
5   administration for regulated market transactions, *executing trades in accordance with best*
6   *execution practices*, assuring settlement and reporting trade details to back-end accounting
7   systems – all of which allows us to apply *wider margins with the willful acceptance of clients*.
8   (Emphases added).

9      37.   This statement is not only contradictory on its face (as the Bank's actions are
10   contrary to "best execution practices," and do not add "significant value") but shows that the FX
11   scheme alleged herein was knowing and willful. The notion of Indirect clients accepting
12   "margins" also belies BNY Mellon's representation that Indirect trading is done "free of charge,"
13   as described on Defendants' website (described *supra*).

14      38.   Profits from Indirect trading are at the heart of the Bank's decision-making
15   processes. When the Bank competes for a custody client, the FX department is consulted and
16   asked to estimate what the Bank's profits will be when and if the Bank were to execute the
17   prospective client's FX transactions. The Bank looks at what amount of international investments
18   the client presently has and how the Bank might price the deals, directly or indirectly.

19      39.   The FX department will give the custody group a conservative estimate of what
20   the FX profit potential will be with the prospective client. The custody group then incorporates
21   this estimate into their pricing structure as they make a flat-fee, all inclusive proposal (including
22   all FX costs and fees) to the prospective custodial client. The FX department shares some of its
23   profits with the custody group because it understands how valuable the stream of Indirect
24   custodial deals will be to the FX department.

25      40.   When the Bank sells its custodial services to public pension funds, it does so in a
26   way to make it much more likely that the Subdivision Funds will choose the Bank's bundled
27   services, which include the Indirect model of FX transactions. The Bank prices the overall flat-
28   rate custody contract in such a way that it would seem foolish for the Subdivisions – based on the

1   Bank's verbal and written (RFPS, contracts) representations and promises – to consider any other
2   option, *i.e.*, of taking its FX business elsewhere or paying someone else to do it. Public pension
3   funds such as the Subdivision Funds, as is well known by the Defendants who take advantage of
4   this knowledge, do not wish to employ the staff needed to directly negotiate FX transactions. The
5   Bank accordingly sells the bundled services as a way to promote efficiency and integration of
6   services, while, in reality, it only serves to facilitate the Bank's illicit FX profits. On information
7   and belief, the Subdivision Funds identified herein chose the Bank's bundled services, which
8   included Indirect FX services.

9       41.     The Indirect public pension fund clients have relied on the Bank's representations
10  that Indirect foreign exchange trading actually uses "best execution practices," or, more
11  significantly, is provided to Indirect clients, "free of charge." The duty of best execution requires
12  that a broker-dealer such as Defendants seek to obtain for its customer orders the most favorable
13  terms reasonably available under the circumstances. That is, the duty of best execution requires
14  Defendants to execute trades at the best reasonably available price.

15      42.     The Bank not only failed to practice best execution practices, but went well
16  beyond what could be considered best practices by regularly picking a falsified FX price that was
17  unrelated to the actual FX transactions that had been engaged in by the Bank for the Subdivision
18  Funds.

19      43.     Indirect clients are also known as ROD or "range of the day" clients where the
20  Bank uses the range of the day to the Bank's full advantage of its scheme of filling them at the
21  high or lows depending on whether they are buyers or sellers. The biggest variables in the Bank's
22  profitability are the amount of monies it processes and the volatility of the currency market. The
23  greater the volatility, the larger the range of falsified FX rates; the larger the range, the greater
24  ability of the Bank to price the clients at a rate that is more profitable to the Bank.

25      44.     BNY Mellon's system of executing FX trades and assigning fictitious FX rates for
26  Indirect, pension fund clients was deliberately set up to leverage the day's trading volatility in
27  favor of the Bank and against the interest of the custodial client the Funds. For instance, at the
28  beginning of the day there is a very narrow trading range for stocks and currencies when

864392.1                                        - 12 - .

1   compared with the end of the day. If at the beginning of the day a BNY Mellon trader knows that

2   he has to purchase 1,000,000 Euros for a pension fund, the trader also knows that he does not

3   have to book that trade into the Bank's system until 5:00 p.m. that evening. The trader has been

4   incentivized, *i.e.*, provided a high-paying, stress-free, large bonus job, by his employer, the Bank,

5   to wait to assign a fictitious FX rate for the trade to the Indirect client, although, in fact, the trade

6   may have been executed by the Bank to assure it of a cost of not more than of the actual cost of

7   the FX at 10:00 a.m.

8       45.   BNY Mellon itself has noted that volatility in foreign currencies has contributed to

9   an increase in its FX revenues. What it has not disclosed is that this is particularly true because

10  the Bank has taken undue advantage of such volatility. By fixing their FX positions throughout

11  the day at prices advantageous to the Bank, the Bank cannot lose on a transaction. At worst, the

12  Bank breaks even. To date, all that the FX traders have thought that they need to do to shield

13  their unlawful FX manipulations from scrutiny by their Indirect clients, including public pension

14  funds, is to price each FX trade for the client within the range for that day.

15      46.   If the Subdivision Funds had known of the Defendants' practices, they never

16  would have allowed them to occur and never would have hired Defendants to serve in a position

17  of elevated trust on behalf of the Subdivision Funds.

18      **D.   A Step-by-Step Analysis of how the Bank Does FX Transactions and Commits
         Fraud against its Indirect Custody Clients**

19

20      47.   Indirect deals typically begin with the pension fund or its investment manager

21  informing the Bank's Asset Servicing department that an asset trade has taken place necessitating

22  an FX transaction to settle the trade, usually in the form of an Electronic Trade Delivery notice

23  (ETD).

24      48.   The ETD / fax / e-mail trade order communication is entered into the Cash

25  Management System ("CMS") by Asset Servicing within the Bank's custody operation (Bank of

26  New York's equivalent system is called "GSP"). This trade order will include the (a) client

27  name, (b) amount of foreign currency to be traded, (c) currency pair being traded (*e.g.*, buy

28

1  Japanese Yen and sell United States Dollars or sell Euros and buy United States Dollars),

2  (d) trade date and (e) time stamp of entry into the system.

3      49.    CMS then sends the trade order to the Bank's FX Trading System, "Charlie,"

4  where it is reviewed by the Transaction Desk. At this point, the foreign exchange department of

5  the Bank is aware of the need to buy or sell the particular currency. It would be the Indirect

6  client's reasonable and bargained-for expectation, consistent with best execution practices and the

7  Bank's fiduciary duty, that the trade then would occur close in time to its delivery into the trading

8  system. However, as described further below, after the FX required is entered into Bank's FX

9  Trading System, the Bank's FX Traders watch for currency trends before executing FX trades,

10  and thereafter assign feigned or imaginary prices to the Indirect funds' trades for which the client

11  will be charged.

12      50.    The FX trader will do an actual trade, in the first instance, in order to satisfy his or

13  her long and short currency positions. These trades are made based upon the volatility in the

14  market and the likely trend of the exchange rate. The trader knows that he or she must satisfy the

15  buy and sell positions by a pre-determined cut-off time. The Bank completes an FX trade, but

16  this trading is risk-free, since any market movement that goes against the Bank's positions as a

17  result of the watching and waiting, or as a result of an actual FX transaction, only comes out of

18  the Indirect client's pocket. Rarely, if ever, will the Bank's traders assign to the pension fund

19  trade the FX rate actually obtained by the Bank at the time of the actual FX trade. The Bank

20  usually uses 1:30 p.m. Eastern (New York) time as a cut-off, allowing the traders to fix their long

21  and short currency positions.

22      51.    After the cut-off time and the Bank has made the actual FX transactions necessary

23  to cover the Indirect client's needs, the traders assign falsified FX rates to those transactions,

24  determined by looking back to the start of the trading day. The Defendants' FX Traders assign

25  fictitious FX rates, a process called, "locking the rates," as follows:

26          A.    Higher prices to FX buy orders

27          B.    Lower prices to FX sell orders

28

864392.1

- 14 -

1    52.    The only limitation on this false pricing is that the Bank is careful, with some

2  exceptions, to price the trades within the actual high and low range of the day's FX rates. This is

3  done to deceive an audit of the Indirect client's FX transactions, as such audits typically only look

4  to see if an FX transaction is priced within the range of the day on which it occurred.

5    53.    Each Indirect client with a trade in a particular currency pair for that day receives

6  the same FX rate, as determined by the Bank's cherry-picked range-of-the-day pricing, regardless

7  of when their specific trade request came in to the Bank, the size of the trade, the time the actual

8  FX trade occurred, and the actual FX rate at the time of that trade.

9    54.    Post-trade cash flow analyses are immediately done by the Bank to tabulate its

10  profits from each completed trade (after the falsified FX rate has been assigned to the public

11  pension fund client). The profit from each transaction represents the difference between the

12  falsely high (or low) price assigned to the Indirect client and the price the currency actually traded

13  for and paid (or received) by the Bank.

14    55.    A daily "Reconciliation" call between the Bank's New York and Pittsburgh

15  transaction desks is conducted each day as the Bank begins to choose FX rates to charge its

16  Indirect clients. The Pittsburgh transaction desk will call the New York transaction desk so that

17  they can synchronize their high and low ranges for each currency pair (these telephone calls are

18  made on a private, direct line, and may have been shielded from the Bank's customary policy of

19  recording transactional conversations). This call, done at approximately 2:30 p.m., is made so

20  that any discrepancies between each transaction desk's operations are avoided, thus making

21  discovery of the Bank's fraudulent scheme less likely. The fact that there was no discrepancy

22  between two separate and distinct trading systems, separated by thousands of miles, illustrates the

23  degree of the conspiratorial conduct necessary and engaged in to hide Defendants' scheme.

24    56.    Profit and loss reporting is done by each transaction desk by the maintenance of a

25  running Profit/Loss report that can be generated at any time. The FX traders review this

26  document in order to keep track of their personal Profit/Loss as well as the Bank's Profit/Loss. In

27  addition, monthly reports are also generated. Both the monthly and daily reports also show year-

28  to-date reporting.

1       57.    End-of-month Client Custody Reports are prepared by the Bank on or before mid-

2   month. These reports list the pension fund's FX trades by date, amount, and price, *i.e.*, the

3   fictitious FX rate (as reported to the custody side of the Bank by its FX traders). These reports

4   never contain time stamps and there is nothing on the report that would lead an Indirect client to

5   suspect that it had been defrauded on its FX trades.

6       58.    By not showing the specific time of day at which the actual, as compared to the

7   feigned, FX trade occurred, the Bank does not have to reveal that a trade it knew about at 10:00

8   a.m., and, therefore, should have executed near that time, has instead been assigned an FX rate

9   that only occurred in the interbank market during mid- or late afternoon.

10  ### E.    Legacy Mellon Transaction Desk Procedures

11      59.    Although the BNY/Mellon merger was effective as of July 1, 2007, the new entity

12  has maintained the separate FX departments and each has traded throughout the day independent

13  of the other (except for the end-of-the day reconciliation). Thus, those custody clients such as the

14  Subdivision Funds that had previously hired BNY to be their custodian still have their trades

15  executed by the BNY FX desk; those custody clients that had previously hired Mellon to be their

16  custodian still have their trades executed by the Mellon FX desk.

17      60.    On average, the Mellon FX desk receives around 2,600 trades a day, a significant

18  number of which are Indirect trades, a good number of which are for large dollar amounts and

19  become the major source for the traders' illicit FX scheme. At the Mellon FX desk, Indirect

20  transactions' volume totaled $5.375 billion in July of this year and $6.025 billion in August. The

21  BNY FX desk processed at total of $6.580 billion in the same two months. July and August are

22  two of the slower months of the year for foreign exchange.

23      61.    The Mellon FX desk in Pittsburgh is manned by Sue Pfister, Paul Park, and Phyllis

24  Bertok. These three employees are individually responsible for specific currency pairs. Sue

25  Pfister's primary currency is the euro (EUR). Paul Park handles Swiss Francs (CHF), British

26  Pounds (GBP), South African Rand (ZAR), and the Scandinavian currencies. Phyllis Bertok

27  focuses on the Canadian Dollar (CAD), Japanese Yen (JPY), Australian Dollar (AUD), New

28

1 | Zealand Dollar (NZD), and the minor Asian currencies. As a group, the three are also responsible

2 | for a variety of emerging market currencies.

3 | 62. Indirect deals are processed at the Mellon FX desk in the following manner: the

4 | trades are delivered in the morning and are accepted up until a cutoff of around 1 to 1:30 PM.

5 | The cutoff time is enforced so the Mellon FX desk may get their illicit, feigned pricing of the

6 | deals done by the end of the day. The longer a trade is held up in the system, the more time exists

7 | for volatility in the market and movement in the FX rates to facilitate greater profit to the Bank

8 | when the trades are eventually priced. Typically, the trading desk has a time window of at least 6

9 | hours in which they will choose the worst price possible for Indirect clients, such as the Funds, in

10 | each FX deal.

11 | 63. As a general matter, Sue Pfister is the Mellon/Pittsburgh employee with the most

12 | knowledge of the Bank's FX operations. She is the legacy Mellon representative involved in the

13 | process of putting one electronic trading system in place for the two legacy banks. She knows

14 | about, and, in fact, orchestrates, the fraudulent FX scheme.

15 | **F.** **Legacy Bank of New York Procedures**

16 | 64. The basic elements of the fraud are the same with respect to both the Mellon FX

17 | desk and the BNY FX desk. Their respective procedures, as they relate to the fraud, were in place

18 | before the merger. Besides these general elements, the following specifics pertain to the Bank of

19 | New York.

20 | 65. BNY's electronic trading system, "GSP," is less sophisticated than Mellon's CMS

21 | system. As a consequence, more persons are needed to organize BNY's Indirect flow of trades

22 | from the custody department to the BNY FX desk. What CMS automates, *e.g.* the need for the

23 | FX transaction and the parameters of the deal, has to be done manually by BNY staffers. BNY

24 | does not employ a strict cut-off time for foreign exchange trades on the BNY FX desk. It will

25 | accept deals past Mellon's 1:00 to 1:30 PM cut-off. A number of BNY staffers take the Indirect

26 | deals and price them. FX sales desk people, spot traders, and the BNY FX desk are all involved.

27 | In the afternoon, if there is remaining exposure from the Indirect deals that requires trading, Bill

28 |

1     Samella, the chief dealer in NYC, will walk around the BNY FX desk telling the respective spot

2     traders what they need to offset.

3        66.     It is also BNY's practice to occasionally take a deal in the New York morning and

4     price it using the range that has been observed in London time. This practice allows a much

5     longer time frame from which to review and take advantage of the volatility of an FX rate, and, as

6     a consequence, take a bigger false FX spread from the Indirect client.

7        67.     Legacy BNY has been known to give money back when it has been caught by

8     clients pricing the Indirect deals at an exorbitant FX rate. Specifically, BNY has on occasion

9     gone beyond the range of the day in pricing some deals and instead used the entire overnight

10     range as well in order to maximize profit. This practice has been challenged, on occasion, by

11     Indirect clients.

12        **G.**     **Indirect Trade Example**

13        68.     An actual trade illustrates the alleged illicit profit-taking on Indirect FX trades: On

14     October 1st of this year, the electronic pipeline from CMS showed that the Bank's clients would

15     be selling to the Bank approximately $12,500,000 United States Dollars. The Bank would be

16     selling them Canadian Dollars in return as they were obligated to pay for security transactions

17     that they had already entered into in Canada.

18        69.     The FX desk was aware of this net client exposure that would be offset that day by

19     9:30 AM. The USD/CAD had opened the New York morning at 1.0730 (where it would take

20     1.0730·CAD to equal 1 USD). The currency market fluctuated throughout the day 24/7 and the

21     USD/CAD traded lower, ultimately making a low at 9:00 a.m. of 1.0682. This rate, 1.0682, is the

22     worst possible rate one would have received if selling USD and buying CAD in the New York

23     trading session. From that low point the market traded higher and ultimately the USD gained

24     strength and made a high of 1.0847 in the afternoon.

25        70.     The FX desk sold $12,500,000 USD to the trader that covered the USD/CAD on

26     the spot desk, Pat O'Brien. O'Brien covered the position at an average rate of 1.0795. The rate

27     the clients that were selling the USD received was the very worst of the day: 1.0682. There was

28     no risk on the Bank's side of this trade. The profit of buying $12,500,000 USD/CAD at 1.0682

1   and selling the USD/CAD at 1.0795 was $134,937.50. Had the clients negotiated this trade as a

2   Direct client instead of as an Indirect client, a "normal" profit might have been 5 to 10 pips (a pip

3   representing one point in market vernacular, *i.e.*, 1.0701 to 1.0706 is 5 pips). A ten pip spread on

4   a $12,500,000 USD/CAD trade would represent a Bank profit that was $11,579 at these rates.

5   This trade was instead hyper-priced to the client at 113 basis points.

6          71.     A fraudulent profit of this size is a common occurrence at the Bank. In fact, the

7   majority of the Bank's FX profits are products of these Indirect trades. In 2008, on the Pittsburgh

8   trading desk of BNY Mellon, foreign exchange produced $417,331,504 in profit for the Bank.

9   The portion of this profit directly attributable to Indirect trades – as taken from the Indirect line

10  item on the Profit/Loss sheet for the year – was $298,055,320 or 71.4% of the total.

11         72.     For 2009, as of September 28, the Indirect foreign exchange profits accounted for

12  $189,226,774 of a total of $248,417,151 or 76.2%. These totals are available on the Bank's

13  internal trading records - the Bank's FX accounting system known as "Charlie." The deals are

14  also recorded in the CMS Internal Transaction Summary report.

15                                        **COUNT ONE**
                      **Substantive Violations of the California State False Claims Act**
16
                     [Presentation of False or Fraudulent Claims for Payment or Approval]
17
                73.     Relator repeats and incorporates by reference the allegations made in Paragraphs 1
18
      through 72 of this Complaint.
19
                74.     This is a claim for treble damages and penalties under the California State False
20
      Claims Act.
21
                75.     Through the acts described above, Defendants and their agents and employees
22
      knowingly presented or caused to be presented to an officer or employee of the Subdivisions false
23
      or fraudulent claims for payment or approval in order to charge them false foreign exchange rates
24
      for foreign currency transactions
25
                76.     The Subdivisions and the Subdivision Funds, unaware of the falsity of the claims
26
      presented by Defendants and their agents and employees, paid and continue to pay Defendants for
27
      claims that would not be paid if the truth were known.
28

864392.1                                    - 19 -

**COUNT TWO**
**Substantive Violations of the California State False Claims Act**

[False Records or Statements to Get
False or Fraudulent Claims Paid or Approved by the Subdivisions]

77.     Relator repeats and incorporates by reference the allegations made in Paragraphs 1 through 76 of this Complaint.

78.     Through the acts described above, Defendants and their agents and employees knowingly made, used, or caused to be made or used, false records or statements to get false or fraudulent claims paid or approved by the Subdivisions.

79.     The Subdivisions and the Subdivision Funds, unaware of the falsity of the records and statements made or used by Defendants and their agents and employees, paid and continue to pay Defendants for claims that would not be paid if the truth were known.

**COUNT THREE**
**Substantive Violations of the California State False Claims Act**

[False Records or Statements to Conceal,
Avoid, or Decrease an Obligation to Pay or Transmit Money to the Subdivisions]

80.     Relator repeats and incorporates by reference the allegations made in Paragraphs 1 through 79 of this Complaint.

81.     Through the acts described above, Defendants and their agents and employees knowingly made, used, or caused to be made or used, a false record or statement to conceal, avoid, or decrease an obligation to pay or transmit money to the Subdivisions.

82.     The Subdivisions and the Subdivision Funds, unaware of the falsity of the records and statements made or used by Defendants and their agents and employees, allowed Defendants to withhold funds belonging to the Subdivisions and the Subdivision Funds that the Subdivisions and the Subdivision Funds would not have allowed to be withheld if the truth had been known.

83.     The Subdivisions and the Subdivision Funds, unaware of the falsity of the records and statements made or used by Defendants, were deprived of and continue to be deprived of payments owed to them by Defendants, which would not have occurred had the truth been known.

1

2

3

<div align="center">

**COUNT FOUR**
**Substantive Violations of the California State False Claims Act**

[Conspiracy]

</div>

84.     Relator repeats and incorporates by reference the allegations made in Paragraphs 1

4

through 83 of this Complaint.

5

85.     Through the acts described above, Defendants and their agents and employees

6

conspired to defraud the Subdivisions by getting false or fraudulent claims allowed or paid by the

7

Subdivision Funds.

8

86.     The Subdivisions and the Subdivision Funds, unaware of the falsity of the claims

9

presented by Defendants and their agents and employees, paid and continue to pay Defendants for

10

claims that would not be paid if the truth were known.

11

87.     The Subdivisions and the Subdivision Funds, unaware of the falsity of the records

12

and statements made or used by Defendants, were deprived of and continue to be deprived of

13

payments owed to them by Defendants, which would not have occurred if the truth had been

14

known.

15

**WHEREFORE:**

16

As a direct result of Defendants' false records, statements, claims, concealments and

17

omissions, and conspiracies to commit such offenses, the Political Subdivisions have been

18

damaged in the amount of tens of millions of dollars in false and fraudulent foreign exchange

19

charges or credits.

20

<div align="center">

**PRAYER**

</div>

21

Relator prays for judgment against Defendants as follows:

22

1.     that Defendants cease and desist from violating the Act;

23

2.     that the Court enter judgment against Defendants in an amount equal to three times

24

the amount of damages the Subdivisions and the Subdivision Funds have sustained as a result of

25

Defendants' actions, as well as a civil penalty against each Defendant of $10,000 for each

26

violation of the State of California False Claims Act;

27

28

864392.1                                          - 21 -

1    3.    that Relator be awarded the maximum amount allowed pursuant to the California

2    False Claims Act; and

3    4.    that Relator be awarded all costs and expenses of this action, including attorneys'

4    fees; and

5    5.    that the Subdivision Funds and Relator recover all such other relief as the Court

6    deems just and proper.

7    Dated: April 5, 2010                    Respectfully submitted,

8                                            LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP

9

10                                           By: _____

11                                                    Lexi J. Hazam

12                                           Richard M. Heimann (State Bar No. 063607)
                                             rheimann@lchb.com
13                                           Lexi J. Hazam (State Bar No. 224457)
                                             lhazam@lchb.com
14                                           Robert L. Lieff (State Bar No. 037568) (Of Counsel)
                                             rlieff@lchb.com
15                                           LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP
                                             Embarcadero Center West
16                                           275 Battery Street, 29th Floor
                                             San Francisco, CA 94111-3339
17                                           Telephone: (415) 956-1000
                                             Facsimile: (415) 956-1008

18                                           Steven E. Fineman (State Bar No. 140335)
                                             sfineman@lchb.com
19                                           Daniel P. Chiplock
                                             dchiplock@lchb.com
20                                           LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP
                                             250 Hudson Street, 8th Floor
21                                           New York, NY 10013-1413
                                             Telephone: (212) 355-9500
22                                           Facsimile: (212) 355-9592

23                                           Philip R. Michael
                                             prmpjab@gmail.com
24                                           MICHAEL LAW GROUP
                                             326 West 246th Street
25                                           Riverdale, NY 10471
                                             Telephone: (917) 689-1734
26                                           Facsimile: (718) 601-4052

27

28

864392.1                                        - 22 -

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Michael P. Thornton
Michael A. Lesser
*mlesser@tenlaw.com*
THORNTON & NAUMES LLP
100 Summer Street, 30th Floor
Boston, MA 02110
Telephone: (617) 720-1333
Facsimile: (617) 720-2445

Attorneys for Plaintiff/Relator

864392.1

- 23 -

1

## DEMAND FOR JURY TRIAL

2        Plaintiff respectfully demands a jury trial for the alleged claims.

3    Dated: April 5, 2010                    Respectfully submitted,

4                                            LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP

5

6                                            By: _____
                                                    Lexi J. Hazam
7

8                                            Richard M. Heimann (State Bar No. 063607)
                                             rheimann@lchb.com
9                                            Lexi J. Hazam (State Bar No. 224457)
                                             lhazam@lchb.com
10                                           Robert L. Lieff (State Bar No. 037568) (Of Counsel)
                                             rlieff@lchb.com
11                                           LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP
                                             Embarcadero Center West
12                                           275 Battery Street, 29th Floor
                                             San Francisco, CA  94111-3339
13                                           Telephone:  (415) 956-1000
                                             Facsimile:  (415) 956-1008
14
                                             Steven E. Fineman (State Bar No. 140335)
15                                           sfineman@lchb.com
                                             Daniel P. Chiplock
16                                           dchiplock@lchb.com
                                             LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP
17                                           250 Hudson Street, 8th Floor
                                             New York, NY  10013-1413
18                                           Telephone:  (212) 355-9500
                                             Facsimile:  (212) 355-9592
19
                                             Philip R. Michael
20                                           prmpjab@gmail.com
                                             MICHAEL LAW GROUP
21                                           326 West 246th Street
                                             Riverdale, NY  10471
22                                           Telephone:  (917) 689-1734
                                             Facsimile:  (718) 601-4052
23
                                             Michael P. Thornton
24                                           Michael A. Lesser
                                             mlesser@tenlaw.com
25                                           THORNTON & NAUMES LLP
                                             100 Summer Street, 30th Floor
26                                           Boston, MA  02110
                                             Telephone:  (617) 720-1333
27                                           Facsimile:  (617) 720-2445

28                                           Attorneys for Plaintiff/Relator

1

## PROOF OF SERVICE

2      I certify that a true and correct copy of the foregoing *Ex. Rel.* Complaint for Violation of

3  the State False Claims Act was served by certified mail the 5th day of April, 2010, upon the

4  following:

5                     Attorney General of the State of California

6

7                    By:

8                       Lexi J. Hazam

9                     Lieff, Cabraser, Heimann & Bernstein, LLP
Attorneys for *Qui Tam* Plaintiff

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

864392.1

# CONFIDENTIAL

MC—060

| ATTORNEY (Name, state bar number, and address): | FOR COURT USE ONLY |
|---|---|
| Lexi J. Hazam (California Bar No. 224457)<br>LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP<br>275 Battery Street, 29th Floor<br>San Francisco, CA 94111 | ENDORSED<br>FILED<br>ALAMEDA COUNTY |

TELEPHONE NO.: 415-956-1000    FAX NO. (Optional): 415-956-1008

E-MAIL ADDRESS (Optional): lhazam@lchb.com

ATTORNEY FOR: [✓] PLAINTIFF [ ] OTHER (specify):

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF ALAMEDA**

STREET ADDRESS: 1225 Fallon Street

MAILING ADDRESS: 1225 Fallon Street

CITY AND ZIP CODE: Oakland, CA 94612

BRANCH NAME: René C. Davidson / Alameda County Courthouse

OCT 2 2 2009

CLERK OF THE SUPERIOR COURT

By CHARLOTTE MARIN

Deputy

| PLAINTIFF: | [UNDER SEAL] |
|---|---|
| DEFENDANT: | [UNDER SEAL] |

| **CONFIDENTIAL COVER SHEET—FALSE CLAIMS ACTION** | CASE NUMBER:<br>RG09480749 |
|---|---|

---

**INSTRUCTIONS:** This civil action is brought under the False Claims Act, Government Code section 12650 et seq. The documents filed in this case are under seal and are confidential pursuant to Government Code section 12652(c).

This Confidential Cover Sheet must be affixed to the caption page of the complaint and to any other paper filed in this case until the seal is lifted.

You should check with the court to determine whether papers filed in False Claims Act cases must be filed at a particular location.

Seal to expire on (date):

**UNLESS:**
(1) Motion to extend time is pending; or
(2) Extended by court order

---

1. The document to which this cover sheet is affixed is:
   a. [✓] Complaint for damages for violation of the False Claims Act
   b. [✓] *Civil Case Cover Sheet* (form 982.2(b)(1))
   c. [ ] Motion for an extension of time to intervene
   d. [ ] Affidavit or other document in support of the motion for an extension of time
   e. [ ] Order extending time to intervene *(specify date order expires)*:
   f. [ ] Other order *(describe)*:

   g. [ ] Notice from the Attorney General of additional prosecuting authority that may have access to the file
   h. [ ] Other *(describe)*:

2. This *Confidential Cover Sheet* and the attached document must each be separately file-stamped by the clerk of the court.

Date: October 22, 2009

Page 1 of 1

Form Adopted for Mandatory Use<br>Judicial Council of California<br>MC-060 [Rev. January 1, 2007]

**CONFIDENTIAL COVER SHEET
FALSE CLAIMS ACTION**

Gov. Code, § 12652(c);
Cal. Rules of Court, rules 2.570-2.573
www.courtinfo.ca.gov

www.accesslaw.com

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|
| Lexi Hazam (State Bar No. 224457)<br>LIEFF CABRASER HEIMANN & BERNSTEIN, LLP<br>275 Battery Street, 29th Floor, San Francisco, CA 94111-3339<br>TELEPHONE NO: 415-956-1000 FAX NO: 415-956-1008<br>ATTORNEY FOR *(Name):* Qui Tam Plaintiffs | |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF **ALAMEDA**
STREET ADDRESS: 1225 Fallon Street
MAILING ADDRESS: 1225 Fallon Street
CITY AND ZIP CODE: Oakland, CA 94612
BRANCH NAME: René C. Davidson / Alameda County Courthouse

CASE NAME:
State of California Ex Rel v. The Bank of New York Mellon Corp., et al.

| CIVIL CASE COVER SHEET | | Complex Case Designation | CASE NUMBER: |
|---|---|---|---|
| ✓ Unlimited<br>(Amount<br>demanded<br>exceeds $25,000) | ☐ Limited<br>(Amount<br>demanded is<br>$25,000 or less) | ☐ Counter ☐ Joinder<br>Filed with first appearance by defendant<br>(Cal. Rules of Court, rule 3.402). | |
| | | | JUDGE:<br>DEPT: |

Items 1–6 below must be completed (see instructions on page 2).

1. Check one box below for the case type that best describes this case:

**Auto Tort**
☐ Auto (22)
☐ Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
☐ Asbestos (04)
☐ Product liability (24)
☐ Medical malpractice (45)
☐ Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
☐ Business tort/unfair business practice (07)
☐ Civil rights (08)
☐ Defamation (13)
☐ Fraud (16)
☐ Intellectual property (19)
☐ Professional negligence (25)
☐ Other non-PI/PD/WD tort (35)

**Employment**
☐ Wrongful termination (36)
☐ Other employment (15)

**Contract**
☐ Breach of contract/warranty (06)
☐ Rule 3.740 collections (09)
☐ Other collections (09)
☐ Insurance coverage (18)
☐ Other contract (37)

**Real Property**
☐ Eminent domain/Inverse condemnation (14)
☐ Wrongful eviction (33)
☐ Other real property (26)

**Unlawful Detainer**
☐ Commercial (31)
☐ Residential (32)
☐ Drugs (38)

**Judicial Review**
☐ Asset forfeiture (05)
☐ Petition re: arbitration award (11)
☐ Writ of mandate (02)
☐ Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
☐ Antitrust/Trade regulation (03)
☐ Construction defect (10)
☐ Mass tort (40)
☐ Securities litigation (28)
☐ Environmental/Toxic tort (30)
☐ Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
☐ Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
☐ RICO (27)
✓ Other complaint *(not specified above)* (42)

**Miscellaneous Civil Petition**
☐ Partnership and corporate governance (21)
☐ Other petition *(not specified above)* (43)

2. This case ✓ is ☐ is not complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. ☐ Large number of separately represented parties
   b. ✓ Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. ✓ Substantial amount of documentary evidence
   d. ✓ Large number of witnesses
   e. ☐ Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. ☐ Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply):* a. ✓ monetary b. ✓ nonmonetary; declaratory or injunctive relief c. ☐ punitive
4. Number of causes of action *(specify):*
5. This case ☐ is ✓ is not a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date: October 22, 2009
Lexi Hazam
(TYPE OR PRINT NAME) ▶ [signature] (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

**CIVIL CASE COVER SHEET**

Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;
Cal. Standards of Judicial Administration, std. 3.10
www.courtinfo.ca.gov
American LegalNet, Inc.
www.FormsWorkflow.com

F. ADDENDUM TO CIVIL CASE COVER SHEET

*Unified Rules of the Superior Court of California, County of Alameda*

| Short Title: | Case Number: |
|---|---|
| State of California, Ex Rel v. The Bank of New York Mellon Corp., et al. | |

## CIVIL CASE COVER SHEET ADDENDUM

### THIS FORM IS REQUIRED IN ALL NEW UNLIMITED CIVIL CASE FILINGS IN THE SUPERIOR COURT OF CALIFORNIA, COUNTY OF ALAMEDA

[x] Oakland, Rene C. Davidson Alameda County Courthouse (446)     [ ] Hayward Hall of Justice (447)

[ ] Pleasanton, Gale-Schenone Hall of Justice (448)

| Case Category | Civil Case Cover Sheet Case Type | | Alameda County Case Type/Number |
|---|---|---|---|
| Auto Tort | Auto tort (22) | [ ] 34 | Auto tort (G) |
| | | | Is this an uninsured motorist case? [ ] yes [ ] no |
| Other PI /PD / WD Tort | Asbestos (04) | [ ] 75 | Asbestos (D) |
| | Product liability (24) | [ ] 89 | Product liability (not asbestos or toxic tort/environmental) (G) |
| | Medical malpractice (45) | [ ] 97 | Medical malpractice (G) |
| | Other PI/PD/WD tort (23) | [ ] 33 | Other PI/PD/WD tort (G) |
| Non - PI /PD / WD Tort | Bus tort / unfair bus. practice (07) | [ . ] 79 | Bus tort / unfair bus. practice (G) |
| | Civil rights (08) | [ ] 80 | Civil rights (G) |
| | Defamation (13) | [ ] 84 | Defamation (G) |
| | Fraud (16) | [ ] 24 | Fraud (G) |
| | Intellectual property (19) | [ ] 87 | Intellectual property (G) |
| | Professional negligence (25) | [ ] 59 | Professional negligence - non-medical (G) |
| | Other non-PI/PD/WD tort (35) | [ ] 03 | Other non-PI/PD/WD tort (G) |
| Employment | Wrongful termination (36) | [ ] 38 | Wrongful termination (G) |
| | Other employment (15) | [ ] 85 | Other employment (G) |
| | | [ ] 53 | Labor comm award confirmation |
| | | [ ] 54 | Notice of appeal - L.C.A. |
| Contract | Breach contract / Wrnty (06) | [ ] 04 | Breach contract / Wrnty (G) |
| | Collections (09) | [ ] 81 | Collections (G) |
| | Insurance coverage (18) | [ ] 86 | Ins. coverage - non-complex (G) |
| | Other contract (37) | [ ] 98 | Other contract (G) |
| Real Property | Eminent domain / Inv Cdm (14) | [ ] 18 | Eminent domain / Inv Cdm (G) |
| | Wrongful eviction (33) | [ ] 17 | Wrongful eviction (G) |
| | Other real property (26) | [ ] 36 | Other real property (G) |
| Unlawful Detainer | Commercial (31) | [ ] 94 | Unlawful Detainer - commercial    Is the deft. in possession |
| | Residential (32) | [ ] 47 | Unlawful Detainer - residential    of the property? |
| | Drugs (38) | [ ] 21 | Unlawful detainer - drugs    [ ] Yes [ ] No |
| Judicial Review | Asset forfeiture (05) | [ ] 41 | Asset forfeiture |
| | Petition re: arbitration award (11) | [ ] 62 | Pet. re: arbitration award |
| | Writ of Mandate (02) | [ ] 49 | Writ of mandate |
| | | | Is this a CEQA action (Publ.Res.Code section 21000 et seq) [ ] Yes [ ] No |
| | Other judicial review (39) | [ ] 64 | Other judicial review |
| Provisionally Complex | Antitrust / Trade regulation (03) | [ ] 77 | Antitrust / Trade regulation |
| | Construction defect (10) | [ ] 82 | Construction defect |
| | Claims involving mass tort (40) | [ ] 78 | Claims involving mass tort |
| | Securities litigation (28) | [ ] 91 | Securities litigation |
| | Toxic tort / Environmental (30) | [ ] 93 | Toxic tort / Environmental |
| | Ins covrg from cmptx case type (41) | [ ] 95 | Ins covrg from complex case type |
| Enforcement of Judgment | Enforcement of judgment (20) | [ ] 19 | Enforcement of judgment |
| | | [ ] 08 | Confession of judgment |
| Misc Complaint | RICO (27) | [ ] 90 | RICO (G) |
| | Partnership / Corp. governance (21) | [ ] 88 | Partnership / Corp. governance (G) |
| | Other complaint (42) | [x] 68 | All other complaints (G) |
| Misc. Civil Petition | Other petition (43) | [ ] 06 | Change of name |
| | | [ ] 69 | Other petition |

202-19 (5/1/00)

A-13



# Superior Court of California, County of Alameda
## Alternative Dispute Resolution (ADR) Information Packet

The person who files a civil lawsuit (plaintiff) must include the ADR Information Packet with the complaint when serving the defendant. Cross complainants must serve the ADR Information Packet on any new parties named to the action.

> The Court *strongly encourages* the parties to use some form of ADR before proceeding to trial.  You may choose ADR by:
>
> - Indicating your preference on Case Management Form CM-110;
>
> - Filing the Stipulation to ADR and Delay Initial Case Management Conference for 90 Days (a local form included with the information packet); or
>
> - Agree to ADR at your Initial Case Management Conference.
>
> **QUESTIONS?**  Call (510) 891-6055. Email adrprogram@alameda.courts.ca.gov
> Or visit the court's website at http://www.alameda.courts.ca.gov/adr

### What Are The Advantages Of Using ADR?

- *Faster* –Litigation can take years to complete but ADR usually takes weeks or months.

- *Cheaper* – Parties can save on attorneys' fees and litigation costs.

- *More control and flexibility* – Parties choose the ADR process appropriate for their case.

- *Cooperative and less stressful* – In mediation, parties cooperate to find a mutually agreeable resolution.

- *Preserve Relationships* – A mediator can help you effectively communicate your interests and point of view to the other side. This is an important benefit when you want to preserve a relationship.

### What Is The Disadvantage Of Using ADR?

- *You may go to court anyway* – If you cannot resolve your dispute using ADR, you may still have to spend time and money resolving your lawsuit through the courts.

### What ADR Options Are Available?

- *Mediation* – A neutral person (mediator) helps the parties communicate, clarify facts, identify legal issues, explore settlement options, and agree on a solution that is acceptable to all sides.

  o **Court Mediation Program**: Mediators do not charge fees for the first two hours of mediation.  If parties need more time, they must pay the mediator's regular fees.

Some mediators ask for a deposit before mediation starts which is subject to a refund for unused time.

o   **Private Mediation:** This is mediation where the parties pay the mediator's regular fees and may choose a mediator outside the court's panel.

- *Arbitration* – A neutral person (arbitrator) hears arguments and evidence from each side and then decides the outcome of the dispute. Arbitration is less formal than a trial and the rules of evidence are often relaxed. Arbitration is effective when the parties want someone other than themselves to decide the outcome.

o   **Judicial Arbitration Program** (non-binding): The judge can refer a case or the parties can agree to use judicial arbitration. The parties select an arbitrator from a list provided by the court. If the parties cannot agree on an arbitrator, one will be assigned by the court. There is no fee for the arbitrator. The arbitrator must send the decision (award of the arbitrator) to the court. The parties have the right to reject the award and proceed to trial.

o   **Private Arbitration** (binding and non-binding) occurs when parties involved in a dispute either agree or are contractually obligated. This option takes place outside of the courts and is normally binding meaning the arbitrator's decision is final.

### Mediation Service Programs In Alameda County

Low cost mediation services are available through non-profit community organizations. Trained volunteer mediators provide these services. Contact the following organizations for more information:

**SEEDS Community Resolution Center**
1968 San Pablo Avenue, Berkeley, CA 94702-1612
Telephone: (510) 548-2377     Website: www.seedscrc.org
Their mission is to provide mediation, facilitation, training and education programs in our diverse communities – Services that Encourage Effective Dialogue and Solution-making.

**Center for Community Dispute Settlement**
291 McLeod Street, Livermore, CA 94550
Telephone: (925) 373-1035     Website: www.trivalleymediation.com
CCDS provides services in the Tri-Valley area for all of Alameda County.

*For Victim/Offender Restorative Justice Services*
**Catholic Charities of the East Bay: Oakland**
433 Jefferson Street, Oakland, CA 94607
Telephone: (510) 768-3100     Website: www.cceb.org
Mediation sessions involve the youth, victim, and family members work toward a mutually agreeable restitution agreement.

**ALA ADR-001**

| | |
|---|---|
| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address)* | **FOR COURT USE ONLY** |

TELEPHONE NO.:          FAX NO. *(Optional)*:
E-MAIL ADDRESS *(Optional)*:
ATTORNEY FOR *(Name)*:

**SUPERIOR COURT OF CALIFORNIA, ALAMEDA COUNTY**

STREET ADDRESS:
MAILING ADDRESS:
CITY AND ZIP CODE:
BRANCH NAME

PLAINTIFF/PETITIONER:

DEFENDANT/RESPONDENT:

| | |
|---|---|
| **STIPULATION TO ATTEND ALTERNATIVE DISPUTE RESOLUTION (ADR) AND DELAY INITIAL CASE MANAGEMENT CONFERENCE FOR 90 DAYS** | **CASE NUMBER:** |

**INSTRUCTIONS: All applicable boxes must be checked, and the specified information must be provided.**

This stipulation is effective when:

- All parties have signed and filed this stipulation with the Case Management Conference Statement at least 15 days before the initial case management conference.
- A copy of this stipulation has been received by the ADR Program Administrator, 1225 Fallon Street, Oakland, CA 94612.

1. Date complaint filed: _____. An **Initial Case Management Conference** is scheduled for:

   Date:            Time:            Department:

2. Counsel and all parties certify they have met and conferred and have selected the following ADR process *(check one)*:

   ☐ Court mediation      ☐ Judicial arbitration

   ☐ Private mediation     ☐ Private arbitration

3. All parties agree to complete ADR within 90 days and certify that:

   a. No party to the case has requested a complex civil litigation determination hearing;
   b. All parties have been served and intend to submit to the jurisdiction of the court;
   c. All parties have agreed to a specific plan for sufficient discovery to make the ADR process meaningful;
   d. Copies of this stipulation and self-addressed stamped envelopes are provided for returning endorsed filed stamped copies to counsel and all parties;
   e. Case management statements are submitted with this stipulation;
   f. All parties will attend ADR conferences; and,
   g. The court will not allow more than 90 days to complete ADR.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date:

_____    ▶ _____
    (TYPE OR PRINT NAME)               (SIGNATURE OF PLAINTIFF)

Date:

_____    ▶ _____
    (TYPE OR PRINT NAME)               (SIGNATURE OF ATTORNEY FOR PLAINTIFF)

Page 1 of 2

| | | |
|---|---|---|
| Form Approved for Mandatory Use<br>Superior Court of California,<br>County of Alameda<br>ALA ADR-001 [New January 1, 2010] | **STIPULATION TO ATTEND ALTERNATIVE DISPUTE RESOLUTION (ADR)<br>AND DELAY INITIAL CASE MANAGEMENT CONFERENCE FOR 90 DAYS** | Cal. Rules of Court,<br>rule 3.221(a)(4) |

**ALA ADR-001**

| | CASE NUMBER.: |
|---|---|
| PLAINTIFF/PETITIONER: | |
| DEFENDANT/RESPONDENT: | |

Date:

▶

_____     _____
(TYPE OR PRINT NAME)                    (SIGNATURE OF DEFENDANT)

Date:

▶

_____     _____
(TYPE OR PRINT NAME)                    (SIGNATURE OF ATTORNEY FOR DEFENDANT)

Form Approved for Mandatory Use
Superior Court of California,
County of Alameda
ALA ADR-001 [New January 1, 2010]

**STIPULATION TO ATTEND ALTERNATIVE DISPUTE RESOLUTION (ADR)
AND DELAY INITIAL CASE MANAGEMENT CONFERENCE FOR 90 DAYS**

Cal. Rules of Court,
rule 3.221(e)(4)



1  NIALL P. McCARTHY (SBN 160175)
   nmccarthy@cpmlegal.com
2  STEVEN N. WILLIAMS (SBN 175849)
   swilliams@cpmlegal.com
3  ERIC J. BUESCHER (SBN 271323)
   ebuescher@cpmlegal.com
4  COTCHETT, PITRE & McCARTHY, LLP
   840 Malcolm Road
5  Burlingame, CA 94010
   Telephone:     650-697-6000
6  Facsimile:     650-697-0577

7  Attorneys for Los Angeles County
   Employees Retirement Association; and
8  San Diego County Employees
   Retirement Association
9

F I L E D
ALAMEDA COUNTY

OCT 1 9 2011

CLERK OF THE SUPERIOR COURT
By_____
                              Deputy

10          IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

11              IN AND FOR THE COUNTY OF ALAMEDA

12  In re BANK OF NEW YORK MELLON          Case No. RG09480749
    CORPORATION FALSE CLAIMS ACT
13  FOREIGN EXCHANGE LITIGATION, et
    al., ex rel. FX ANALYTICS,             NOTICE OF INTERVENTION
14
                    Plaintiffs,
15
                                           Judge:       Hon. Robert B. Freeman
16          vs.                            Department:   20

17  THE BANK OF NEW YORK MELLON            Action Filed:  November 2, 2009
    CORPORATION, and DOES 1 through 100,                   (Under Seal)
18  inclusive,                             Trial Date:   None Set

19                  Defendants.

20

21

22

23

24

25

26

27

28

LAW OFFICES
COTCHETT, PITRE
& McCARTHY, LLP     NOTICE OF INTERVENTION; Case No. RG09480749

1                              **NOTICE OF INTERVENTION**

2 **TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

3      **PLEASE TAKE NOTICE** that pursuant to the California False Claims Act,

4 Government Code section 12652(c)(6)(A), Los Angeles County Employees Retirement

5 Association ("LACERA") and San Diego County Employees Retirement Association

6 ("SDCERA") hereby give notice of their decision to intervene in and to proceed with this action.

7

8                                   **SEAL**

9      Concerning the submission of a proposed order indicating the documents that are to be

10 unsealed or to remain sealed as required by California Rules of Court, Rule 2.573(d), LACERA

11 and SDCERA are filing herewith the following:

12      (1)      Application Under CRD 2.573(d) and Gov. Code § 12652(c)(6)(A) for an Order

13 Designating Documents To Be Unsealed and Documents to Remain Under Seal and

14 Memorandum of Points and Authorities In Support Thereof; and

15      (2)      [Proposed] Order Designating Documents To Be Unsealed and Documents to

16 Remain Under Seal.

17 Respectfully Submitted,

18 Dated: October 14, 2011             **COTCHETT, PITRE & McCARTHY, LLP**

19

20                    By:     *Steve William* / GJB

21                               STEVEN N. WILLIAMS

22                   *Attorneys for Los Angeles County Employees Retirement Association; and San Diego County Employees Retirement Association*

23

24 Dated: October ∕5, 2011           **ROBERT S. VAN DER VOLGEN Jr., Chief Counsel**

25                    By:

26                     ROBERT S. VAN DER VOLGEN Jr., Chief Counsel

27                     JOHANNA M. FONTENOT, Senior Staff Counsel
                      MICHAEL D. HERRERA, Senior Staff Counsel

28                   *Attorneys for Los Angeles County Employees Retirement Association*

**NOTICE OF INTERVENTION**; Case No. RG09480749                1



1   CARMEN A. TRUTANICH, City Attorney (SBN 86629)
    ALAN L. MANNING, Assistant City Attorney (SBN 077285)
2   MARIE McTEAGUE, Deputy City Attorney (SBN 136841)
    OFFICE OF THE LOS ANGELES CITY ATTORNEY
3   360 E. Second Street, Room 400
    Los Angeles, CA ·90012
4   Telephone:   213-978-4400
    Facsimile:   213-978-4484
5
    *Los Angeles Department of Water and Power Employees' Retirement Plan*
6

7

8              IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                  IN AND FOR THE COUNTY OF ALAMEDA

10
    In re **BANK OF NEW YORK MELLON**          Case No. RG09480749
11  **CORPORATION FALSE CLAIMS ACT**
    **FOREIGN EXCHANGE LITIGATION,** *et*
12  *al., ex rel.* **FX ANALYTICS,**
                                               **NOTICE OF INTERVENTION**
13                Plaintiffs,

14         vs.                                 Judge:        Hon. Robert B. Freeman
                                               Department:   20
15
    **THE BANK OF NEW YORK MELLON**            Action Filed: November 2, 2009
16  **CORPORATION,** and DOES 1 through 100,                 (Under Seal)
    inclusive,                                 Trial Date:   None Set
17
18                Defendants.

19

20

21

22

23

24

25

26

27

28
    **NOTICE OF INTERVENTION**; Case No. RG09480749

FILED
ALAMEDA COUNTY

OCT·1 9 2011

CLERK OF THE SUPERIOR COURT
By
                              Deputy

1                              **NOTICE OF INTERVENTION**

2  **TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

3      **PLEASE TAKE NOTICE** that pursuant to the California False Claims Act,

4  Government Code section 12652(c)(6)(A), Los Angeles Department of Water and Power

5  Employees' Retirement Plan ("WPERP") hereby give notice of its decision to intervene in and to

6  proceed with this action.

7

8                                  **SEAL**

9      Concerning the submission of a proposed order indicating the documents that are to be

10  unsealed or to remain sealed as required by California Rules of Court, Rule 2.573(d), WPERP

11  are filing herewith the following:

12      (1)     Application Under CRD 2.573(d) and Gov. Code § 12652(c)(6)(A) for an Order

13  Designating Documents To Be Unsealed and Documents to Remain Under Seal and

14  Memorandum of Points and Authorities In Support Thereof; and

15      (2)     [Proposed] Order Designating Documents To Be Unsealed and Documents to

16  Remain Under Seal.

17  Respectfully Submitted,

18  Dated: October 14, 2011         **OFFICE OF THE LOS ANGELES CITY ATTORNEY**
                                     CARMEN A. TRUTANICH, City Attorney

19                               ALAN L. MANNING, Assistant City Attorney
                               MARIE McTEAGUE, Deputy City Attorney

20

21

22                      By:    *[signature]*
                             MARIE McTEAGUE

23                      *Attorneys for Los Angeles Department of Water and Power*

24                      *Employees' Retirement Plan*

25

26

27

28

---

**NOTICE OF INTERVENTION**; Case No. RG09480749                 1



1  NIALL P. McCARTHY (SBN 160175)
   nmccarthy@cpmlegal.com
2  STEVEN N. WILLIAMS (SBN 175849)
   swilliams@cpmlegal.com
3  ERIC J. BUESCHER (SBN 271323)
   ebuescher@cpmlegal.com
4  **COTCHETT, PITRE & McCARTHY, LLP**
   840 Malcolm Road
5  Burlingame, CA 94010
   Telephone:   650-697-6000
6  Facsimile:   650-697-0577

7  *Attorneys Stanislaus County*
   *Employees' Retirement Association*
8

**F I L E D**
**ALAMEDA COUNTY**

OCT 1 9 2011

CLERK OF THE SUPERIOR COURT
By_____
                          Deputy

9         **IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA**

10              **IN AND FOR THE COUNTY OF ALAMEDA**

11  In re **BANK OF NEW YORK MELLON**      Case No. RG09480749
    **CORPORATION FALSE CLAIMS ACT**
12  **FOREIGN EXCHANGE LITIGATION,** *et*
    *al., ex rel.* **FX ANALYTICS,**        **NOTICE OF INTERVENTION**
13

14                     Plaintiffs,
                                           Judge:        Hon. Robert B. Freeman
15         vs.                             Department:   20

16  **THE BANK OF NEW YORK MELLON**
    **CORPORATION,** and DOES 1 through 100,  Action Filed: November 2, 2009
17  inclusive,                                             (Under Seal)
                                           Trial Date:   None Set
18                     Defendants.
19
20
21
22
23
24
25
26
27
28

LAW OFFICES
COTCHETT, PITRE
& McCARTHY, LLP

**NOTICE OF INTERVENTION; Case No. RG09480749**

1    **NOTICE OF INTERVENTION**

2    **TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

3        **PLEASE TAKE NOTICE** that pursuant to the California False Claims Act,

4    Government Code section 12652(c)(6)(A), Stanislaus County Employees' Retirement

5    Association ("StanCERA") hereby gives notice of its decision to intervene in and to proceed

6    with this action.

7

8                          **SEAL**

9        Concerning the submission of a proposed order indicating the documents that are to be

10   unsealed or to remain sealed as required by California Rules of Court, Rule 2.573(d), StanCERA

11   is filing herewith the following:

12       (1)     Application Under CRD 2.573(d) and Gov. Code § 12652(c)(6)(A) for an Order

13   Designating Documents To Be Unsealed and Documents to Remain Under Seal and

14   Memorandum of Points and Authorities In Support Thereof; and

15       (2)     [Proposed] Order Designating Documents To Be Unsealed and Documents to

16   Remain Under Seal.

17   Respectfully Submitted,

18   Dated: October 14, 2011              **COTCHETT, PITRE & McCARTHY, LLP**

19

20                        By:     _____
                                        STEVEN N. WILLIAMS
21

22                                *Attorneys for Stanislaus County Employees'*
                                  *Retirement Association*
23

     Dated: October 14, 2011             **FRED A. SILVA, General Counsel, StanCERA**
24

25

26                        By:     _____
                                        FRED A. SILVA
27                                DAMRELL, NELSON, SCHRIMP,
                                  PALLIOS, PACHER & SILVA
28

LAW OFFICES     **NOTICE OF INTERVENTION;** Case No. RG09480749                              1
COTCHETT, PITRE
& McCARTHY, LLP



1    NIALL P. McCARTHY (SBN 160175)
     nmccarthy@cpmlegal.com
2    STEVEN N. WILLIAMS (SBN 175849)
     swilliams@cpmlegal.com
3    ERIC J. BUESCHER (SBN 271323)
     ebuescher@cpmlegal.com
4    COTCHETT, PITRE & McCARTHY, LLP
     840 Malcolm Road
5    Burlingame, CA 94010
     Telephone:     650-697-6000
6    Facsimile:     650-697-0577

7    *Attorneys Stanislaus County*
     *Employees' Retirement Association*

8

**FILED**
**ALAMEDA COUNTY**

**OCT 2 0 2011**

CLERK OF THE SUPERIOR COURT
By: _____
                              Deputy

9            IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

10                IN AND FOR THE COUNTY OF ALAMEDA

11   In re **BANK OF NEW YORK MELLON**          Case No. RG09480749
     **CORPORATION FALSE CLAIMS ACT**
12   **FOREIGN EXCHANGE LITIGATION**, *et*
     *al., ex rel.* **FX ANALYTICS**,                       **ORDER**
13                                            **DESIGNATING DOCUMENTS TO**
                                              **BE UNSEALED AND DOCUMENTS**
14                Plaintiffs,                 **TO REMAIN UNDER SEAL**

15        vs.

16   **THE BANK OF NEW YORK MELLON**         Judge:      Hon. Robert B. Freeman
     **CORPORATION**, and DOES 1 through 100,  Department:  20
17   inclusive,
                                             Action Filed: November 2, 2009
18                Defendants.                              (Under Seal)
                                             Trial Date:   None Set
19

20

21

22

23

24

25

26

27

28

**LAW OFFICES**
**COTCHETT, PITRE**
**& McCARTHY, LLP**

**ORDER DESIGNATING DOCUMENTS TO BE UNSEALED AND**
**DOCUMENTS TO REMAIN UNDER SEAL; Case No. RG09480749**

1
**ORDER**

2      Based upon the Notice of Intervention of Stanislaus County Employees' Retirement

3   Association and the Application under California Rule of Court 2.573(d) and Gov. Code §

4   12652(c)(6)(A), the Application for an Order Designating Documents to be Unsealed and

5   Documents to Remain Under Seal is GRANTED.

6      - The Court ORDERS the following documents to be UNSEALED:

7          (1)     the Second Amended Complaint;

8          (2)     the Notice of Intervention of Stanislaus County Employees Retirement

9                  Association; and

10         (3)     this Order designating documents to be unsealed and documents to remain sealed.

11         The Court further ORDERS that all other contents of the Court's file in this action filed

12   through October 17, 2011 shall remain UNDER SEAL and shall not be made public or served

13   upon any person.

14

15   Dated: October __, 2011

16                                          Hon. Robert B. Freedman
                                            Judge of the Superior Court
17

18

19

20

21

22

23

24

25

26

27

28

_____
**ORDER DESIGNATING DOCUMENTS TO BE UNSEALED AND**                    1
**DOCUMENTS TO REMAIN UNDER SEAL;** Case No. RG09480749

1  CARMEN A. TRUTANICH, City Attorney (SBN 86629)
   ALAN L. MANNING, Assistant City Attorney (SBN 077285)
2  MARIE McTEAGUE, Deputy City Attorney (SBN 136841)
   OFFICE OF THE LOS ANGELES CITY ATTORNEY
3  360 E. Second Street, Room 400
   Los Angeles, CA  90012
4  Telephone:    213-978-4400
   Facsimile:    213-978-4484
5
   *Los Angeles Department of Water and Power Employees' Retirement Plan*
6

**F I L E D**
**ALAMEDA COUNTY**

OCT 2 0 2011

CLERK OF THE SUPERIOR COURT
By _____
Deputy

7

8              IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                   IN AND FOR THE COUNTY OF ALAMEDA

10

11  | In re **BANK OF NEW YORK MELLON CORPORATION FALSE CLAIMS ACT FOREIGN EXCHANGE LITIGATION,** *et al., ex rel.* **FX ANALYTICS,** | Case No. RG09480749 |

12

13                                              **ORDER DESIGNATING DOCUMENTS TO**
                    Plaintiffs,               **BE UNSEALED AND DOCUMENTS**
14                                            **TO REMAIN UNDER SEAL**

15       vs.
                                              Judge:        Hon. Robert B. Freeman
16  **THE BANK OF NEW YORK MELLON**           Department:   20
    **CORPORATION,** and DOES 1 through 100,
17  inclusive,                                Action Filed: November 2, 2009
                                                            (Under Seal)
18                  Defendants.               Trial Date:   None Set

19

20

21

22

23

24

25

26

27

28

**ORDER DESIGNATING DOCUMENTS TO BE UNSEALED AND**
**DOCUMENTS TO REMAIN UNDER SEAL; Case No. RG09480749**

1                          _____ | **ORDER**

2        Based upon the Notice of Intervention of Los Angeles Department of Water and Power

3 Employees' Retirement Plan and the Application under California Rule of Court 2.573(d) and

4 Gov. Code § 12652(c)(6)(A), the Application for an Order Designating Documents to be

5 Unsealed and Documents to Remain Under Seal is GRANTED.

6        The Court ORDERS the following documents to be UNSEALED:

7        (1)      the Second Amended Complaint;

8        (2)      the Notice of Los Angeles Department of Water and Power Employees'

9                Retirement Plan; and

10        (3)      this Order designating documents to be unsealed and documents to remain sealed.

11        The Court further ORDERS that all other contents of the Court's file in this action filed

12 through October 17, 2011 shall remain UNDER SEAL and shall not be made public or served

13 upon any person.

14

15 Dated: October **20**, 2011

16                                  Hon. Robert B. Freedman

                                   Judge of the Superior Court

17

18

19

20

21

22

23

24

25

26

27

28

            **ORDER DESIGNATING DOCUMENTS TO BE UNSEALED AND**     1
     **DOCUMENTS TO REMAIN UNDER SEAL; Case No. RG09480749**



1  NIALL P. McCARTHY (SBN 160175)
   nmccarthy@cpmlegal.com
2  STEVEN N. WILLIAMS (SBN 175849)
   swilliams@cpmlegal.com
3  ERIC J. BUESCHER (SBN 271323)
   ebuescher@cpmlegal.com
4  COTCHETT, PITRE & McCARTHY, LLP
   840 Malcolm Road
5  Burlingame, CA 94010
   Telephone:    650-697-6000
6  Facsimile:    650-697-0577

7  *Attorneys for Los Angeles County*
   *Employees Retirement Association; and*
8  *San Diego County Employees*
   *Retirement Association*

9

10

11

                            IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

                                    IN AND FOR THE COUNTY OF ALAMEDA

12  In re **BANK OF NEW YORK MELLON**          Case No. RG09480749
    **CORPORATION FALSE CLAIMS ACT**
13  **FOREIGN EXCHANGE LITIGATION,** *et*
    *al., ex rel.* **FX ANALYTICS,**                       **ORDER**
14                                              **DESIGNATING DOCUMENTS TO**
                                                **BE UNSEALED AND DOCUMENTS**
15                    Plaintiffs,               **TO REMAIN UNDER SEAL**

16          vs.                                 Judge:       Hon. Robert B. Freeman
                                                Department:  20
17  **THE BANK OF NEW YORK MELLON**
    **CORPORATION,** and DOES 1 through 100,    Action Filed: November 2, 2009
18  inclusive,                                               (Under Seal)
                                                Trial Date:  None Set
19                    Defendants.

20

21

22

23

24

25

26

27

28
─────────────────────────────────────────────────────────────
LAW OFFICES        **ORDER DESIGNATING DOCUMENTS TO BE UNSEALED AND**
COTCHETT, PITRE   **DOCUMENTS TO REMAIN UNDER SEAL; Case No. RG09480749 /**
& McCARTHY, LLP

FILED
ALAMEDA COUNTY

OCT 2 0 2011

CLERK OF THE SUPERIOR COURT
By_____
                        Deputy

1    <u>ORDER</u>

2        Based upon the Notice of Intervention of Los Angeles County Employees Retirement

3    Association and San Diego County Employees Retirement Association and the Application

4    under California Rule of Court 2.573(d) and Gov. Code § 12652(c)(6)(A), the Application for an

5    Order Designating Documents to be Unsealed and Documents to Remain Under Seal is

6    GRANTED.

7        The Court ORDERS the following documents to be UNSEALED:

8        (1)    the Second Amended Complaint;

9        (2)    the Notice of Intervention of Los Angeles County Employees Retirement

10              Association and San Diego County Employees Retirement Association; and

11       (3)    this Order designating documents to be unsealed and documents to remain sealed.

12       The Court further ORDERS that all other contents of the Court's file in this action filed

13   through October 17, 2011 shall remain UNDER SEAL and shall not be made public or served

14   upon any person.

15

16   Dated: October 20, 2011

                                    _____
17                                  Hon. Robert B. Freedman
                                    Judge of the Superior Court
18

19

20

21

22

23

24

25

26

27

28

LAW OFFICES
COTCHETT, PITRE
& MCCARTHY, LLP

ORDER DESIGNATING DOCUMENTS TO BE UNSEALED AND
DOCUMENTS TO REMAIN UNDER SEAL; Case No. RG09480749                    1

# CONFIDENTIAL

MC-060

ATTORNEY (Name, state bar number, and address):

Lexi J. Hazam (California Bar No. 224457)
LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA 94111

TELEPHONE NO.: 415-956-1000   FAX NO. (Optional): 415-956-1008
E-MAIL ADDRESS (Optional): lhazam@lchb.com

ATTORNEY FOR: [✓] PLAINTIFF [ ] OTHER (specify):

FOR COURT USE ONLY

SUPERIOR COURT OF CALIFORNIA, COUNTY OF ALAMEDA

STREET ADDRESS: 1225 Fallon Street
MAILING ADDRESS: 1225 Fallon Street
CITY AND ZIP CODE: Oakland, CA 94612
BRANCH NAME: René C. Davidson / Alameda County Courthouse

PLAINTIFF:   [UNDER SEAL]

DEFENDANT:   [UNDER SEAL]

CONFIDENTIAL COVER SHEET–FALSE CLAIMS ACTION

CASE NUMBER:
RG09480749

INSTRUCTIONS: This civil action is brought under the False Claims Act, Government Code section 12650 et seq. The documents filed in this case are under seal and are confidential pursuant to Government Code section 12652(c).

This Confidential Cover Sheet must be affixed to the caption page of the complaint and to any other paper filed in this case until the seal is lifted.

You should check with the court to determine whether papers filed in False Claims Act cases must be filed at a particular location.

Seal to expire on (date):
July 15, 2010
UNLESS:
(1) Motion to extend time is pending; or
(2) Extended by court order

1. The document to which this cover sheet is affixed is:
   a. [ ] Complaint for damages for violation of the False Claims Act
   b. [ ] Civil Case Cover Sheet (form 982.2(b)(1))
   c. [ ] Motion for an extension of time to intervene
   d. [ ] Affidavit or other document in support of the motion for an extension of time
   e. [ ] Order extending time to intervene (specify date order expires):
   f. [✓] Other order (describe):

      Order Granting Plaintiff/Relator's Application to Amend Complaint

   g. [ ] Notice from the Attorney General of additional prosecuting authority that may have access to the file
   h. [ ] Other (describe):

2. This Confidential Cover Sheet and the attached document must each be separately file-stamped by the clerk of the court.

Date: April 5, 2010

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
MC-060 [Rev. January 1, 2007]

CONFIDENTIAL COVER SHEET
FALSE CLAIMS ACTION

Gov. Code, § 12652(c);
Cal. Rules of Court, rules 2.570-2.573
www.courtinfo.ca.gov

www.accesslaw.com

1   Richard M. Heimann (State Bar No. 063607)
    Lexi J. Hazam (State Bar No. 224457)
2   Robert L. Lieff (State Bar No. 037568) (Of Counsel)
    LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP
3   Embarcadero Center West
    275 Battery Street, 29th Floor
4   San Francisco, CA 94111-3339
    Telephone: (415) 956-1000
5   Facsimile: (415) 956-1008

6   Steven E. Fineman (State Bar No. 140335)
    Daniel P. Chiplock
7   LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP
    250 Hudson Street, 8th Floor
8   New York, NY 10013-1413
    Telephone: (212) 355-9500
9   Facsimile: (212) 355-9592

10   Philip R. Michael
    MICHAEL LAW GROUP
11   326 West 246th Street
    Riverdale, NY 10471
12   Telephone: (917) 689-1734
    Facsimile: (718) 601-4052
13   prmpjab@gmail.com

14   Michael P. Thornton
    Michael A. Lesser
15   THORNTON & NAUMES LLP
    100 Summer Street, 30th Floor
16   Boston, MA 02110
    Telephone: (617) 720-1333
17   Facsimile: (617) 720-2445

18   Attorneys for Plaintiff/Relator

19           SUPERIOR COURT OF THE STATE OF CALIFORNIA

20                COUNTY OF ALAMEDA

| | |
|---|---|
| 21  THE CITY OF OAKLAND and the OAKLAND POLICE AND FIRE | Case No. RG09480749 |
| 22  RETIREMENT SYSTEM FUND et al., *Ex rel.* FX ANALYTICS, | Assigned to: Hon. Robert B. Freedman Dept. 20 |
| 23             Plaintiff/Relator, | |
| 24 | **PROOF OF SERVICE OF *EX. REL. SECOND AMENDED COMPLAINT FOR VIOLATION OF THE STATE FALSE CLAIMS ACT*** |
| 25       v. | |
| 26  THE BANK OF NEW YORK MELLON CORPORATION, and DOES 1 through 100, inclusive, | Complaint filed: November 2, 2009 (under seal) Trial Date: None |
| 27 | |
| 28         Defendants. | |

864642.1

PROOF OF SERVICE VIA U.S. MAIL

1        I am a citizen of the United States and employed in San Francisco County, California. I

2    am over the age of eighteen years and not a party to the within-entitled action. My business

3    address is 275 Battery Street, 29th Floor, San Francisco, California, 94111-3339.

4        On April 5, 2010, I served the attached document described as *EX. REL.* SECOND

5    AMENDED COMPLAINT FOR VIOLATION OF THE STATE FALSE CLAIMS ACT on the

6    interested parties in this action BY MAIL, by placing true copies enclosed in a sealed envelope

7    addressed to each addressee as listed below.

8        I am readily familiar with Lieff, Cabraser, Heimann & Bernstein, LLP's practice for

9    collection and processing of documents for mailing with the United States Postal Service, and that

10   practice is that the documents are deposited with the United States Postal Service with postage

11   fully prepaid the same day as the day of collection in the ordinary course of business.

12       On April 5, 2010, I served copies the following documents entitled:

13       1)    **EX. REL. SECOND AMENDED COMPLAINT FOR VIOLATION
14   OF THE STATE FALSE CLAIMS ACT**

15       2)    **and this PROOF OF SERVICE VIA U.S. MAIL**

16   via U.S. Mail on:

17           Jeffrey L. Simpton
             Deputy Attorney General
18           Office of the Attorney General
             1300 I Street, Suite 125
19           Sacramento, CA 95814

20   COPIES TO:

21
             Please see attached service list.
22

23       I declare under penalty of perjury that the foregoing is true and correct. Executed in San

24   Francisco, California on April 5, 2010.

25

26

27                                Anthony McDaniel

28

864642.1                - 1 -

1

## SERVICE LIST

2
John R. Russo
Barbara J. Parker
3
Tracy A. Chriss
Oakland City Attorney's Office
4
1 Frank H. Ogawa Plaza, 6th Floor
Oakland, CA 94612
5

Fred A. Silva
6
Clinton P. Walker
Damrell, Nelson, Schrimp,
7
   Pallios, Pacher & Silva
1601 I Street, Fifth Floor
8
Modesto, CA 95354

9
Carmen A. Trutanich
Alan L. Manning
10
Brian I. Cheng
Office of the City Attorney
11
360 E. Second Street, Suite 400
Los Angeles, CA 90012
12

Jeanine B. Nadel
13
County Counsel
County of Mendocino Administration Center
14
501 Lo Gap Road, Room 1030
Ukiah, CA 95482
15

James N. Fincer
16
County Counsel
County of Merced
17
222 M Street, Room 309
Merced, CA 95340
18

John Sansone
19
County Counsel
County of San Diego
20
County Administration Center
1600 Pacific Highway, Room 355
21
San Diego, CA 92101

22
Johanna M. Fontenot
Senior Staff Counsel
23
LACERA
300 N. Lake Avenue, Suite 620
24
Pasadena, CA 91101

25
Larry G. Raskin
Supervising Deputy Attorney General
26
California Attorney General
P.O. Box 944255
27
Sacramento, CA 94244-2550

28

Michael A. Lesser
Thornton & Naumes, LLP
100 Summer Street, 30th Floor
Boston, MA 02110

Philip R. Michael
Michael Law Group
405 Lexington Avenue, 7th Floor
New York, NY 10174-0700

Warren J. Jensen
County Counsel
County of San Luis Obispo
County Government Center, Room D320
1055 Monterey Street
San Luis Obispo, CA 93408

Kathleen Bates-Lange
County Counsel
Judith D. Chapman
Deputy County Counsel
County of Tulare
2900 West Burrell Avenue
Visalia, CA 93291

Alan A. Blakeboro
Counsel for SBCERS
Reicker, Pfau, Pyle & McRoy, LLP
1421 State Street, Suite B
P.O. Box 1470
Santa Barbara, CA 93101

864642.1



U.S. POSTAGE PAID
BURLINGAME, CA
94010
OCT 26, 11
AMOUNT
$0.00
0007684-09

$08.050
OCT 26 2011
0004277114 2
MAILED FROM ZIPCODE 94010

17101

1000

CERTIFIED MAIL

7011 1150 0001 8628 1459

**COTCHETT, PITRE & McCARTHY, LLP**
SAN FRANCISCO AIRPORT OFFICE CENTER
840 MALCOLM ROAD
BURLINGAME, CA 94010

Bank of New York Mellon
C/o CT Corporation Systems
116 Pine Street
Suite 320
Harrisburg, PA 17101

RETURN RECEIPT
REQUESTED